1 | JUSTIN N. OWENS, State Bar No. 254733
    jowens@stradlinglaw.com
2 | SEAN T. LOBB, State Bar No. 324213
    stlobb@stradlinglaw.com
3 | STRADLING YOCCA CARLSON & RAUTH, APC
    660 Newport Center Drive, Suite 1600
4 | Newport Beach, CA 92660-6422
    Telephone: (949) 725-4000
5 | Facsimile: (949) 725-4100

6 | Christian Ellis (*Pro Hac Vice* Application Forthcoming)
    Christian@bondsellis.com
7 | BONDS ELLIS EPPICH SCHAFER JONES LLP
    420 Throckmorton Street, Suite 1000
8 | Fort Worth, TX 76102
    Telephone: (817) 405-6916
9 | Facsimile: (817) 405-6902

10 | Attorneys for Plaintiff
     DAIRY, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| vs. | 1. **VIOLATION OF DEFEND TRADE SECRETS ACT OF 2016** |
| MILK MOOVEMENT, INC., a/k/a/ Milk Moovement, LLC, a foreign Corporation, | 2. **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT** |
| Defendant. | **JURY TRIAL DEMANDED** |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

COMPLAINT

4885-7896-2949v2/106972-0001

Plaintiff Dairy, LLC ("Dairy" and "Dairy.com"), for its Complaint against Milk Moovement, Inc. a/k/a Milk Moovement, LLC ("MMI") hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trade secrets misappropriation brought under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade Secrets Act, California Civil Code § 3426.1 *et. seq*.

2. This lawsuit pertains to MMI's misappropriation of Dairy's trade secrets by requesting and obtaining them from one of Dairy's customers.

3. Dairy seeks both monetary damages from MMI and injunctive relief.

## PARTIES

4. Dairy is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 3801 Parkwood Boulevard, Suite 300, Frisco, Texas 75034.

5. Upon information and belief, Defendant MMI, is, and at all times mentioned herein was, a Canadian corporation organized under the Canada Business Corporations Act, with its Canadian principal place of business being 1505 Barrington Street, Suite 0100, Halifax, Nova Scotia. MMI has filed a Certificate of Authority to do business in Minnesota and is seeking authority to do business in Arizona. Upon information and belief, MMI's Certificate of Authority to do business in the State of Minnesota incorrectly refers to MMI as "Milk Moovement, LLC," thus giving rise to Dairy's allegation that MMI is also known as "Milk Moovement, LLC".

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Dairy, a Delaware entity with its principal place of business in Texas, and MMI, a corporation that is deemed by law to be the citizen of a foreign country, specifically, Canada.

7. Additionally, this Court has federal question jurisdiction over this action under 28 U.S.C. §1331, as the actions alleged here violate a federal statute, the Defend Trade Secrets Act

of 2016, 18 U.S.C. § 1836. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367 as those claims arise from the same case and controversy.

8. This Court has personal jurisdiction over non-resident and Canadian-based MMI because MMI purposefully directed activities to California, conducting business with a California-based company, in order to misappropriate Dairy's trade secrets in California.

9. Specifically, in September 2021, MMI purposefully contacted and transacted business with agents of California Dairies, Inc. ("CDI") in California.  California-based CDI was at that time, and remains, Dairy's customer. During these contacts with CDI in California, MMI acquired and misappropriated Dairy's confidential trade secret information from CDI, as a part of its efforts to transition CDI from being a customer of Dairy to being a customer of MMI. In doing so, MMI performed acts by which it purposefully availed itself to the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws. Dairy's trade secret misappropriation claims arise out of, or relate to, MMI's activities in California.

10. Venue is proper in this District under 28 USC § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**Description of Dairy's Trade Secrets**

11. Dairy, by and through its trade name of Dairy.com, is the leading provider of technology, services, and intelligence platforms to the dairy industry in the United States. Its products are designed to connect the dairy supply chain at all levels, from the farm to the end consumer. Dairy.com's proprietary software platform enables dairy industry businesses to accurately manage all the complexities of paying producers and haulers, capture milk manifest data in real-time, designate loads for trading partners, and notify haulers.

12. Dairy.com has worked for two decades, and spent tens of millions of dollars, to develop its proprietary software platform. Dairy's proprietary software platform is its primary distinctive in the marketplace. Having such a robust proprietary software platform is of tremendous competitive advantage to Dairy. The necessity of such a platform provides

significant barriers to entry for any company that may wish to engage in Dairy.com's business space.

13. Dairy.com's proprietary software platform generates proprietary and confidential reports that are quite revealing as to the nature, functionality, scope, and performance of Dairy.com's proprietary software. For example, the reports reveal software architecture and design decisions, painstakingly made over many years, at great expense, to arrive at Dairy's customers receiving processing benefits and efficiencies for milk payroll processing. By MMI obtaining these reports, it has received a significant amount of Dairy's proprietary information, which MMI should in no way have any access.

14. Dairy's trade secrets are intended to be and are used in multiple operations, and are used throughout the country for customers engaging interstate commerce.

**Dairy Shares its Trade Secrets under a Confidentiality Agreement with its Customer, CDI**

15. CDI is a customer of Dairy.com. On information and belief, CDI is a milk marketing and processing cooperative in California. As such, CDI is a manufacturer of butter, milk powder, nutritional milk powder, and fluid milk products that are distributed throughout the United States. CDI is a valued customer of Dairy.com.

16. As part of its suite of software services, Dairy.com provides to CDI proprietary reports, developed over the course of twenty years, including the following: (1) Balancing reports; (2) Production Pooling reports; (3) Payroll reports; (4) Quality management reports; (5) List producers reports; and (6) Membership reports (collectively, the "Trade Secrets"). These reports are incredibly complex and reveal a tremendous amount of information, necessary for Dairy.com's customers to comply with various operational challenges and federal regulations.

17. For instance, the Production Pooling reports include many confidential, proprietary reports, constituting trade secrets, such as the following:

- Consolidated Destination Summary report – reveals a design scheme that shows milk volume and component totals by destination and federal order designation.
- Delivery by Plant and FO report – used to support clients' pooling activities; shows producer totals by customer along with federal order designation.

- Producer Hauling Summary report – shows typical hauling metrics and how Dairy software handles the complexities of milk hauling.
- Producer Under Quota Pounds report – reveals internal calculations related to the California federal order and quota program.

18. The Payroll reports also include confidential, proprietary, trade secret information, such as the following:

- Assign Detail report and Assignee Payment Summary report – combined, these reports reveal and introduce the concept of "assignments" in U. S. Payroll applications.
- Payment Register reports – this reveals key functionality of Dairy.com payroll software.
- Payroll Summary report – a key operational report necessary to successfully executed milk payroll in the United States.

19. The Balancing reports also include confidential, proprietary, trade secret information, such as the following:

- Producer Weights and Test report – provides daily and pay period operational benefits unique to the United States payroll system.
- Pickups for Date Range report – mimics the underlying data structure and data requirements to operationalize a milk payroll software in the United States.

20. The Trade Secrets shared with CDI are confidential, proprietary, trade secrets that are protected under law and should be further protected by this Court.

**Dairy Works to Protect its Trade Secrets**

21. Dairy takes reasonable measures to protect the secrecy and confidentiality of its valuable Trade Secrets and related information. Such measures are common within the technology industry. For example, Dairy does the following:

(a) implements and maintains security measures to protect data from disclosure through customized logins and unique passwords;

(b) routes all new user set-ups through Dairy's customer support team to ensure proper identity and user integrity;

(c) conducts yearly penetration tests to make sure no one can get into the site or access Dairy's code;

(d) protects source code by restricting access to customers and employees on a need-to-know basis;

(e) enforces Terms of Service and a Privacy Policy for its customers, along with execution of binding provisions to ensure that Confidential Information is not distributed to third parties;

(f) ensures that all Dairy employees who receive confidential information execute an Employee Proprietary Information and Inventions Agreement and a Confidentiality, Non-Solicit, Non-Compete, and Arbitration Agreement, the terms of which obligate the employee to keep in confidence Dairy's proprietary information, both during and after employment with Dairy.

22. CDI signed an agreement with Dairy that included robust terms protecting Dairy's Trade Secrets and requiring that CDI not provide Dairy's Trade Secrets to third parties. The agreement even contains specific language prohibiting CDI from providing Dairy's Trade Secrets to Dairy's competitors. The Trade Secrets protected by this agreement include the type of information discussed in Paragraphs 15 through 19 above.

23. Such agreements are common in the industry, and those operating in the dairy supply chain and logistics software industry understand that the reports generated by such software are Trade Secrets and are not to be disclosed absent authorization from the software provider.

**MMIs Misappropriation of Dairy's Trade Secrets**

24. MMI is a relatively new, agri-tech startup founded in 2018. MMI is headquartered in Nova Scotia, Canada, and utilizes a software platform focused on the Canadian dairy industry. In April 2021, MMI issued a press release, stating that it had raised $3.1 million in seed funding and planned to expand its business across the United States.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-
COMPLAINT
4885-7896-2949v2/106972-0001

25. On information and belief, prior to misappropriating Dairy's trade secrets, MMI did not have software that was compliant or workable for use within the United States dairy industry. For instance, upon information and belief, prior to misappropriating Dairy's Trade Secrets, MMI had not yet developed a payroll platform workable for the United States dairy industry.

26. On information and belief, on or around September 23, 2021, an officer of MMI in Canada sent an email to CDI representatives in California requesting that CDI provide it Dairy's Trade Secrets by providing MMI with over 20 reports from Dairy's supply chain software. The list of requested reports compromised a large portion of the entire software suite solution offered by Dairy to its customers, and are themselves valuable Trade Secrets belonging to Dairy. On or about September 27, 2021 CDI personnel in California sent by email many of the requested reports to MMI. On information and belief, the remaining requested reports were sent in October 2021.

27. On information and belief, MMI knew or had a reasonable expectation that CDI was not authorized to share Dairy's proprietary, confidential, Trade Secrets with MMI, yet MMI requested the proprietary reports from CDI, individually by name, to gain advantage in its pursuit of growth in the United States market.

28. The type of reports requested and received by MMI is known throughout the dairy supply chain and logistics industry as information that is proprietary and confidential to the software company generating the reports. MMI knew or had reasonable expectation that Dairy.com's reports were proprietary and confidential trade secrets, but MMI requested and received them anyway.

29. On information and belief, MMI knew that it could not compete in the United States without the information requested from CDI, and rather than develop its software over decades, as Dairy did, or acquire that proprietary knowledge through a transaction, as Dairy did, MMI took a "shortcut" by simply obtaining the fruits of Dairy's labors, in one fell swoop, by requesting and obtaining the Trade Secrets from CDI.

30. Creating software of its own for pooling, payroll, and balancing at the high levels of efficiency achieved by Dairy.com would have taken years for MMI to develop, but on information and belief, MMI did not have that kind of time.

31. On information and belief, MMI, as a part of its cash infusion from new investors, was set on expanding into the United States dairy market on a short time frame. On information and belief, MMI had until December 2021 to launch a parallel roll-out of its logistics and payroll software for CDI, with the goal of full implementation and roll-out in January 2022.

32. On information and belief, given the timeframe, MMI decided to take a shortcut by taking Dairy.com's information, in hopes of reaching the implementation deadline set by CDI.

33. Rather than work for years and spend tens of millions on its own to develop this software, on information and belief, MMI has reached across the privacy, terms of use, and confidentiality agreements between Dairy and CDI to seize this information for itself. This "smash and grab" action should not be allowed to unjustly enrich MMI to the detriment of Dairy, who put in the time and money to create the Trade Secrets.

## COUNT ONE

### Misappropriation of Dairy.com's Trade Secrets in Violation of the Defend Trade Secrets Act of 2016

34. Dairy.com reasserts and incorporates herein by reference the allegations set forth in Paragraphs 11 through 33 of this *Complaint* as if fully set forth herein.

35. Dairy.com is the owner of certain trade secrets, including the Trade Secrets described in Paragraphs 16 through 19 above.

36. These non-public Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

37. The Trade Secrets are not known or made available to the public, nor are they readily ascertainable through independent development.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-
COMPLAINT
4885-7896-2949v2/106972-0001

38. Dairy.com takes reasonable measures to protect the secrecy and confidentiality of the Trade Secrets and information related thereto.

39. Dairy.com's Trade Secrets are intended for and are used in interstate commerce.

40. MMI has misappropriated Dairy.com's Trade Secrets knowing or having reason to know that the Trade Secrets were acquired by improper means.

41. On information and belief, MMI has used Dairy.com's Trade Secrets without express or implied consent from Dairy.com.

42. On information and belief, MMI used improper means to acquire Dairy.com's Trade Secrets.

43. On information and belief, at the time that MMI acquired or used the Trade Secrets of Dairy.com, MMI knew or had reason to know that the knowledge of Dairy.com's Trade Secrets was either:

- acquired under circumstances giving rise to a duty to maintain the secrecy of Dairy.com's Trade Secrets or limit the use of Dairy.com's Trade Secrets; or
- derived from or through a person who owed a duty to Dairy.com to maintain the secrecy of the Dairy.com's Trade Secrets or limit the use of Dairy.com's Trade Secrets.

44. MMI's acquisition and/or use of Dairy.com's Trade Secrets has been willful and malicious and is continuing.

45. Under 18 U.S.C. §1837, this Act applies to MMI's conduct occurring outside of the United States because an act in furtherance of the offense was committed in the United States, including but not limited to: soliciting and accessing Dairy.com's Trade Secrets located in the United States.

46. Dairy has suffered, is suffering, and will continue to suffer irreparable harm as a result of MMI's ongoing acquisition and use of Dairy's Trade Secrets, has no adequate remedy at law, and is entitled to an injunction requiring return of and prohibiting any further use or disclosure of Dairy's Trade Secrets or any information derived therefrom, pursuant to 18 U.S.C. § 1836(b)(3)(A).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-
COMPLAINT
4885-7896-2949v2/106972-0001

47. Dairy.com is entitled to recover the actual loss suffered by Dairy.com, including but not limited to any lost market share, licensing revenue, and profits pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I).

48. Dairy.com is entitled to recover amounts not already computed with actual loss that was received by MMI as a result of MMI's unauthorized disclosure and/or use of Dairy's Trade Secrets to account for MMI's unjust enrichment pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(II).

49. Because MMI willfully and maliciously misappropriated Dairy's Trade Secrets, Dairy.com is entitled to recover an award of exemplary damages up to two times the sum of actual loss and unjust enrichment damages and an award of Dairy.com's attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(C)-(D).

## COUNT TWO

## Misappropriation of Trade Secrets in Violation of
## the California Uniform Trade Secrets Act

50. Dairy.com reasserts and incorporates herein by reference the allegations set forth in Paragraphs 11 through 49 of this *Complaint* as if fully set forth herein.

51. MMI misappropriated Trade Secrets owned by Dairy, causing Dairy damages and necessitating injunctive relief. Cal. Civ. Code § 3426.1 *et. seq*.

52. Dairy owns Trade Secrets as defined in Paragraphs 16 through 19 above.

53. Dairy took reasonable efforts to protect and keep secret the Trade Secrets.

54. The Trade Secrets have economic value derived from not being known the public or Dairy's competitors. This value includes the time, money, and effort that Dairy spent learning, producing, and acquiring the know-how to generate and coordinate together the various Trade Secrets. That value would be saved by a competitor, such as MMI, acquiring the information. This value also includes the damage Dairy would incur in losing the exclusive advantage of its Trade Secrets.

55. The Trade Secrets are not generally known and not readily ascertainable through proper means.

56. Upon information and belief, MMI acquired the Trade Secrets by improper means, including inducement of a breach of a duty to maintain secrecy.

57. Upon information and belief, MMI used the Trade Secrets without Dairy's express or implied consent.

58. Upon information and belief, at the time of acquisition and use of the Trade Secrets, MMI knew or had reason to know the Trade Secrets were derived from a person who owed a duty to Dairy to maintain secrecy.

59. MMI's misappropriation of the Trade Secrets caused Dairy's harm and Defendant MMI's unjust enrichment.

60. Further, injunctive relief is necessary to prevent the MMI's actual or threatened misappropriation and use of the Trade Secrets.

61. MMI's conduct was willful and malicious, permitting exemplary damages and an award of Dairy's reasonable attorneys' fees and costs.

62. Dairy respectfully requests that this Court preserve the secrecy of the Trade Secrets by all reasonable means, including protective orders, in-camera hearings, sealing records, and ordering any person involved not to disclose information without prior Court approval.

## LITIGATION HOLD NOTICE

This Litigation Hold Notice puts MMI on notice of the following requirements for document collection and retention:

**1.   Retention/Collection of Documents**

You are instructed to take all steps necessary to preserve all documents related to the above-referenced dispute; or, in other words, place a "litigation hold" against the destruction, loss, or deletion of all documents related to the above-described dispute, no matter how remotely related. This written notice is to ensure that all documents and electronic information related to the above-referenced dispute will be preserved.

Please review the description of records set forth below, and if you have possession or control of, or know of the existence of, any responsive records, whether in hard copy or electronic form, please follow the instructions provided below for preservation of same.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-
COMPLAINT
4885-7896-2949v2/106972-0001

You have a legal obligation to maintain all documents and records, including electronic information, such as e-mails, text messages, social media messaging, and other communications relating to the possible dispute between the parties.  Please, therefore, locate and retain all records and files and documents that relate to the dispute.

THIS NOTICE SUPERCEDES ANY AND ALL EXISTING COMPANY DOCUMENT RETENTION POLICIES.  DOCUMENTS IN ANY WAY RELEVANT TO THIS CASE MUST BE RETAINED.

**2.    Records**

At the present time, we do not know all of the documents and records that may exist that must be maintained for this dispute. However, at a minimum, please search for and maintain the following items pertaining in any way to Dairy.com; your request for any reports generated by any Dairy.com software; your receipt of any reports generated by any Dairy.com software; your request or receipt of any Dairy.com software or source code; your solicitation of current or former Dairy.com customers; your solicitation of current or former Dairy.com employees; your communications with CDI; your communications with any of Dairy.com's customers; your communications with any prospective or actual customers in the United States; and your development of any software for use in the United States:

- Letters
- E-mails
- Text Messages
- Messaging through social media, such as Twitter, Facebook, LinkedIn and Instagram
- Posts on any social media, such as Twitter, Facebook, LinkedIn and Instagram
- Cloud-based programs or accounts
- Cloud-based software or platforms
- Notes
- Contracts and drafts of contracts
- Photographs

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-
COMPLAINT
4885-7896-2949v2/106972-0001

- Videotapes
- Recordings
- Source Code, wherever stored or developed
- UI and Back-End Code, wherever stored or developed

**3.    Collection Guidelines**

When collecting documents, please observe the following instructions:

- Please review the files and records over which you have control to identify the existence of electronic documents and paper documents to preserve. Each and every likely location should be searched, including:

    File drawers

    Desk and office drawers

    Personal files at home

    Computers and laptops

    Cell phones

    Smart devices

    I-pads or similar "pad" devices

    Emails, whether personal or business emails

    Emails in print form

    Web-based emails

    Attachments to emails

    Documents on hard drives

    Documents on portable media, including floppy disks, CD's, DVD's, flash drives, portable drives, or memory sticks.

    Servers

    Cloud-based accounts

    Cloud-based platforms

    LAN's

- If you have relevant hard copy documents, please preserve them in the folders in which the documents are maintained.
- Please preserve electronic documents in electronic form. A print-out may be made but is not an acceptable substitute for the actual electronic record. If you have relevant electronic documents on the hard drive of your personal computers, phones, pad devices, smart devices, desktop computers, laptops, or servers, please take steps to preserve those electronic hardware items, even in the event of a "crash" to those devices.
- No files should be deleted or disposed of (paper, electronic, or otherwise).
- No electronic files should be overwritten.
- No social media accounts should be edited or canceled and no social media postings should be deleted

**Should you fail to preserve records as detailed above, you will be subject to spoliation charges and court sanction. In this litigation, you will be asked to produce all of these records and verify your preservation and production of same under oath and subject to penalty of perjury.**

## RELIEF REQUESTED

WHEREFORE, Dairy respectfully requests that the Court enter judgment in Dairy's favor against MMI, granting the following relief:

A. Entry of a preliminary injunction, to be effective throughout the pendency of this action, enjoining Defendant MMI, its employees, agents, officers, successors, and assigns, or others in privy therewith or under its control, and any and all persons acting by or under the authority of Defendant or in privity with it from:

  i. any further misappropriation, gathering, receiving, transmitting, use, or review of Dairy.com's Trade Secrets;

  ii. development or use of software for CDI or any other person or entity which uses, copies, or refers to the Trade Secrets;

        iii.    development or use of software for CDI or any other person or entity that has already incorporated any aspect of any of the Trade Secrets;

        iv.    competing with Dairy.com in the business of dairy logistics, payroll, mobile data collection, support, supply chain management, or any other aspect of Dairy.com's business while using Dairy.com's Trade Secrets or any software derived, in whole or in part, with Dairy.com's Trade Secrets;

        v.    interfering with business relationships of Dairy.com by requesting Dairy.com's Trade Secrets, including any reports of any kind generated by any Dairy.com software;

        vi.    inducing or requesting any current or former customer or employee of Dairy.com to in any way reveal, communicate, transmit, or otherwise disclose Trade Secrets of Dairy.com, including but not limited to any reports of any kind generated by any Dairy.com software;

        vii.    accessing, reviewing, using, transferring, transmitting, deleting, erasing, or otherwise disposing of any of Dairy.com's Trade Secrets from any of MMI's computers, handheld devices, tablets, mobile phones, hard-drives, cloud-based data backup services, databases, networks, or any other place it may be stored; and

        viii.    disclosing any of Dairy.com's Trade Secrets to any third party.

    B.    Entry of a permanent injunction perpetually enjoining Defendant MMI, its employees, agents, officers, successors, and assigns, or others in privy therewith or under its control, and any and all persons acting by or under the authority of Defendant or in privity with it, from:

        i.    Any further possession, misappropriation, gathering, receiving, transmitting, use, or review of Dairy.com's Trade Secrets;

        ii.    development or use of software for CDI or any other person or entity which uses, copies, or refers to the Trade Secrets;

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
4885-7896-2949v2/106972-0001

   iii. development or use of software for CDI or any other person or entity that has already incorporated any aspect of any of the Trade Secrets;

   iv. competing with Dairy.com in the business of dairy logistics, payroll, mobile data collection, support, supply chain management, or any other aspect of Dairy.com's business while using Dairy.com's Trade Secrets or any software derived, in whole or in part, with Dairy.com's Trade Secrets;

   v. interfering with business relationships of Dairy.com by requesting Dairy.com's Trade Secrets, including any reports of any kind generated by any Dairy.com software;

   vi. inducing or requesting any current or former customer or employee of Dairy.com to in any way reveal, communicate, transmit, or otherwise disclose Trade Secrets of Dairy.com, including but not limited to any reports of any kind generated by any Dairy.com software;

   vii. disclosing any of Dairy.com's Trade Secrets to any third party.

  C. A judgment in favor of Dairy.com that the Defendant misappropriated Dairy.com's trade secrets under 18 U.S.C. § 1836(b) and/or Cal. Civ. Code § 3426.1 *et. seq.*

  D. A judgment and order for damages under 18 U.S.C. § 1836(b)(3)(B) and/or Cal. Civ. Code § 3426.1 *et. seq.*

  E. A judgment that declares that Dairy.com's trade secrets was willfully and maliciously misappropriated and awards exemplary double damages and attorney's fee pursuant to 18 U.S.C. § 1836(b)(3)(C) and/or Cal. Civ. Code § 3426.1 *et. seq.*

  F. All pre-judgment interest and post-judgment interest due and owing;

  G. All Dairy's costs incurred in this action;

  H. Any additional injunctive relief or other provisional remedies, as appropriate; and

///

///

///

///

I. Such other further relief as this Court deems to be just and equitable.

Dated: December 2, 2021

By: /s/ Justin N. Owens
Justin N. Owens
Sean T. Lobb
STRADLING YOCCA CARLSON & RAUTH, APC

Christian Ellis *(Pro Hac Vice* Application Forthcoming)
BONDS ELLIS EPPICH SCHAFER JONES LLP

Attorneys for PLAINTIFF DAIRY, LLC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-
COMPLAINT

4885-7896-2949v2/106972-0001

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Dairy, LLC respectfully requests a trial by jury of all issues so triable.

Dated:  December 2, 2021            By:   /s/ Justin N. Owens
                                          Justin N. Owens
                                          Sean T. Lobb
                                    STRADLING YOCCA CARLSON & RAUTH, APC

                                    Christian Ellis *(Pro Hac Vice* Application Forthcoming)
                                    BONDS ELLIS EPPICH SCHAFER JONES LLP

                                    Attorneys for PLAINTIFF DAIRY, LLC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-
COMPLAINT

4885-7896-2949v2/106972-0001