1   MORGAN, LEWIS & BOCKIUS LLP
    Carla B. Oakley, Bar No. 130092
2   One Market, Spear Street Tower
    San Francisco, CA  94105-1126
3   carla.oakley@morganlewis.com
    Tel: 415.442.1000
4   Fax: 415.442.1001

5   Ehsun Forghany, Bar No. 302984
    1400 Page Mill Road
6   Palo Alto, CA  94304-1124
    ehsun.forghany@morganlewis.com
7   Tel: 650.843.4000
    Fax: 650.843.4001
8
    Benjamin Hand, Bar No. 320307
9   300 South Grand, Twenty-Second Floor
    Los Angeles, CA 90071-3132
10  benjamin.hand@morganlewis.com
    Tel: 213.612.2500
11  Fax: 213.612.2501

12

13  Attorneys for Defendant
    Milk Moovement, Inc.

14

15              **UNITED STATES DISTRICT COURT**

16            **EASTERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18  DAIRY, LLC, a Delaware Limited Liability Company, | Case No. 2:21-cv-02233-WBS-AC |
| 19 | The Honorable William B. Shubb |
| 20              Plaintiff, | |
| 21         vs. | **DEFENDANT MILK MOOVEMENT, INC.'S NOTICE OF MOTION AND** |
| 22  MILK MOOVEMENT, INC., a/k/a/ Milk Moovement, LLC, a foreign Corporation, | **MOTION TO DISMISS THE COMPLAINT AND STRIKE ALLEGATIONS** |
| 23 | |
| 24              Defendant. | Date:   February 22, 2022 Time:   1:30 PM |

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**NOTICE OF MOTION**

2      PLEASE TAKE NOTICE that on February 22, 2022, at 1:30 p.m.,

3 or as soon thereafter as counsel may be heard in Courtroom 5,

4 14th Floor of the above-entitled court, located at 501 I Street,

5 Sacramento, CA 95814, before the Honorable William B. Shubb,

6 Defendant Milk Moovement, Inc. ("MMI" or "Defendant") will and

7 hereby does move to (1) dismiss Plaintiff's Complaint

8 ("Complaint") pursuant to Federal Rule of Civil Procedure

9 ("Rule") 12(b)(6), and (2) strike certain portions of the

10 Complaint pursuant to Rule 12(f), based upon the pleadings, this

11 Notice, the attached Memorandum of Points and Authorities,

12 Declaration of Benjamin Hand, the proposed order, and upon such

13 further oral and written argument as may be presented at or

14 before the hearing on this matter.

15

**MOTION AND RELIEF REQUESTED**

16      Pursuant to Rule 12(b)(6) and Rule 12(f), MMI hereby moves

17 to strike the litigation hold notice from the Complaint and to

18 dismiss Counts I and II of the Complaint with prejudice.

19

20

21  Dated:     January 18, 2022      MORGAN, LEWIS & BOCKIUS LLP

22

23                                  By _____

24                                     CARLA B. OAKLEY

25                                     Attorneys for Defendant
                                       Milk Moovement, Inc.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42413294.1

2

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT 2:21-CV-02233-WBS-AC

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 1

I.   INTRODUCTION ............................................... 1

II.  BACKGROUND ................................................. 2

    A.   Dairy's Conclusory Allegations of Trade Secret Misappropriation ..................................... 2

    B.   Documents Incorporated by Reference in the Complaint ........................................... 5

    C.   Procedural History .................................. 6

    D.   Dairy Improperly Seeks Expedited Discovery to Fish for Evidence of Potential Claims .................... 7

III. THE TRADE SECRET CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............................................. 8

    A.   Legal Standard Governing 12(b)(6) Motions ........... 9

    B.   The Complaint Does Not Adequately Describe Any Protectable Trade Secrets .......................... 10

    C.   The Complaint Does Not Adequately Plead Any Acts of Misappropriation ............................... 18

    D.   Leave to Amend Would Be Futile ..................... 25

IV.  THE HOLD NOTICE SHOULD BE STRICKEN FROM THE COMPLAINT .... 26

V.   CONCLUSION ............................................... 27

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42413294.1

i

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT 2:21-CV-02233-WBS-AC

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alta Devices, Inc. v. LG Elec., Inc.*
343 F. Supp. 3d 868 (N.D. Cal. 2018)................. 8, 10, 14

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*
301 FRD 487 (C.D. Cal. 2014)................................ 27

*Aqua Connect, Inc. v. Code Rebel, LLC*
2012 WL 469737 (C.D. Cal. Feb. 13, 2012)................ 21, 26

*Ashcroft v. Iqbal*
556 U.S. 662 (2009).................................... 9, 10

*Bell Atl. Corp. v. Twombly*
550 U.S. 554 (2007)........................................ 9

*BladeRoom Grp. Ltd. v. Facebook, Inc.*
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015).................... 13

*Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*
2019 WL 11499334 (N.D. Cal. Nov. 13, 2019).................. 14

*Cherokee Chem. Co., Inc. v. Frazier*
2020 WL 8410432 (C.D. Cal. Dec. 14, 2020)........... 9, 14, 17

*Chicago Lock Co. v. Fanberg*
676 F.2d 400 (9th Cir. 1982)............................... 20

*Cleanfish, LLC v. Dale Sims, et al*
2020 WL 4732192 (N.D. Cal. Aug. 14, 2020).................. 23

*Convolve Inc. v. Compaq Computer Corp.*
527 Fed. App'x 910 (Fed. Cir. 2013)........................ 23

*DVD Copy Control Ass'n, Inc. v. Bunner*
31 Cal. 4th 864 (2003)..................................... 21

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*
2018 WL 2463869 (E.D. Cal. June 1, 2018)................. 8, 11

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014)............................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT WM. BOLTHOUSE FARMS,
INC.'S MOTION TO DISMISS
COMPLAINT 1:21-CV-00318-DAD-JLT

*Farhang v. Indian Inst. of Tech.*
    2010 WL 2228936 (N.D. Cal. June 1, 2010)................ 11, 14

*Genentech, Inc. v. JHL Biotech, Inc.*
    2019 WL 1045911 (N.D. Cal. Mar. 5, 2019)................... 24

*Groves v. Kaiser Found. Health Plan, Inc.*
    32 F. Supp. 3d 1074 (N.D. Cal. 2014)....................... 10

*Jobscience, Inc. v. CVPartners, Inc.*
    2014 U.S. Dist. LEXIS 26371 (N.D. Cal. Feb. 28, 2014).... 8, 26

*Johnson v. Fed. Home Loan Mortg. Corp.*
    793 F.3d 1005 (9th Cir. 2015)........................... 10, 19

*MediStrem, Inc. v. Microsoft Corp.*
    869 F. Supp. 2d 1095 (N.D. Cal. 2012)................... 21, 22

*Navigation Holdings, LLC v. Molavi*
    445 F. Supp. 3d 69 (N.D. Cal. 2020)..................... 22, 23

*Neveu v. City of Fresno*
    392 F.Supp.2d 1159 (E.D. Cal. 2005)....................... 27

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.*
    521 F.Supp.3d 929 (S.D. Cal. 2021)..................... 11, 24

*Sun Life Assur. Co. of Canada v. Great Lakes Business Credit LLC*
    968 F. Supp. 2d 898 (N.D. Ill. 2013)...................... 27

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003).............................. 10

*Veronica Foods Co. v. Ecklin*
    2017 WL 2806706 (N.D. Cal. June 29, 2017)................. 20

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S.
    Dist. LEXIS 48637, at *9 (N.D. Cal. Mar. 23, 2018) ........ 13

*Wang v. Palo Alto Networks, Inc.*
    2013 WL 415615 (N.D. Cal. Jan. 31, 2013)................. 24

*Zoom Imaging Solutions, Inc. v. Roe*
    2019 WL 5862594 (E.D. Cal. Nov. 8, 2019)............... 11, 12

**FEDERAL STATUTES**

18 U.S.C. § 1839 ....................................... 18, 21

Defend Trade Secret Act of 2016 ...................... 8, 21, 26

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

**CALIFORNIA STATUTES**

Cal. Civ. Code § 3426.1(b)(1)-(2) ............................... 18

California Uniform Trade Secrets Act ....................... 8, 26

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ......................................... 8, 9

Fed. R. Civ. P. 12 .................................... 8, 10, 26

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3      Plaintiff Dairy, LLC ("Dairy") brought this case to disrupt

4 and prevent the transition of a dissatisfied customer —

5 California Dairies Inc. ("CDI") — to Defendant Milk Moovement,

6 Inc. ("MMI").  Dairy seeks to tramp down a competitor offering a

7 software platform used in the dairy industry supply chain.  Dairy

8 strains to assert two identical trade secret misappropriation

9 claims against MMI based on vague and conclusory allegations

10 regarding industry standard reports that CDI generated using the

11 Dairy software platform, modified to meet its individual needs,

12 and provided to MMI.  Dairy's allegations are contradicted by the

13 documents incorporated by reference in the Complaint (including

14 the so-called trade secret reports) and by Dairy's own

15 allegations and admissions.  The Complaint is fatally deficient

16 in two key respects.

17      ***First***, Dairy fails to identify a protectable trade secret.

18 The alleged trade secrets are only identified as some unspecified

19 reports generated using Dairy's software platform.  But the

20 Complaint and documents this Court may consider on a motion to

21 dismiss establish that (i) the reports are not marked as "Trade

22 Secret" or even as "Confidential," and there are no facts alleged

23 to establish adequate measures to maintain secrecy; (ii) at least

24 some of the reports are provided, with Dairy's knowledge, to

25 third parties with no secrecy obligations; and (iii) the reports

26 are comprised of information that is readily ascertainable, as

27 they reflect CDI's data, government pricing data, and other

28 industry standard information.  The alleged trade secrets also

DEFENDANT WM. BOLTHOUSE FARMS,
INC.'S MOTION TO DISMISS
COMPLAINT 1:21-CV-00318-DAD-JLT

1    are not identified with sufficient particularity for MMI or this

2    Court to know exactly what is or is not at issue.

3         **Second**, Dairy fails to allege facts to establish that MMI

4    misappropriated its alleged trade secrets.  Dairy does not and

5    cannot plead any facts showing that (i) MMI knew or should have

6    known that the reports contained any Dairy trade secret

7    information; (ii) MMI knew or should have known CDI was

8    contractually obligated to maintain the secrecy of any or all of

9    those reports; or (iii) MMI ever used any of the alleged trade

10   secret information.

11        Dairy's trade secret claims warrant dismissal with

12   prejudice, as Dairy's allegations and the documents incorporated

13   by reference in the Complaint demonstrate the futility of any

14   amendment.  Recognizing the fatal flaws in its claims, Dairy is

15   seeking expedited discovery to try to find a new theory of relief

16   and to further disrupt MMI's business.

17        The Complaint also devotes an entire section of to a

18   "Litigation Hold Notice," which is irrelevant to either trade

19   secret misappropriation claim and should be stricken.

20   **II.   BACKGROUND**

21        A.   <u>**Dairy's Conclusory Allegations of Trade Secret**</u>

22             <u>**Misappropriation**</u>

23        The Complaint alleges two parallel claims for relief:  trade

24   secret misappropriation under federal law and trade secret

25   misappropriation under state law.

26        Dairy alleges that it is a provider of "technology, service,

27   and intelligence platforms to the dairy industry."  Compl. ¶ 11.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1   Dairy further alleges that its "proprietary software platform
2   generates proprietary and confidential reports that are quite
3   revealing as to the nature, functionality, scope and performance
4   of Dairy.com's proprietary software."  Compl. ¶ 13.  Dairy
5   alleges that when MMI received "these reports," MMI "received a
6   significant amount of Dairy's proprietary information, which MMI
7   should in no way have any access."  *Id*.

8        The alleged trade secrets at issue in this case are
9   identified in paragraph 16 of the Complaint.  Dairy alleges that
10  it provides its customer, CDI, with "proprietary reports,
11  developed over the course of twenty years, *including the*
12  *following*: (1) Balancing reports; (2) Production Pooling reports;
13  (3) Payroll reports; (4) Quality management reports; (5) List
14  producers reports; and (6) Membership reports (collectively, the
15  'Trade Secrets').  *Id.* ¶ 16 (emphasis added).

16       For three of these six categories of reports, Dairy alleges
17  that the reports "include many confidential, proprietary reports,
18  constituting trade secrets, *such as the following*," and then
19  lists two or three specific reports.  *Id*. ¶¶ 17-19 (emphasis
20  added).

21       Dairy admits that the reports include the kinds of
22  information one would expect to track the volume of milk picked
23  up from a farm and delivered to a milk product manufacturer, the
24  milk products delivered to retailers, and to pay parties involved
25  in the process.  For example, the reports show milk volume,
26  amounts of the components of the milk (*e.g.,* butter fat, milk
27  solids, etc.), producer totals, and "typical hauling metrics."

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  Compl. ¶ 17.

2      While Dairy purports to identify steps it takes to protect

3  the alleged trade secrets (*id*. ¶¶ 21-23), none of these have

4  anything to do with MMI.  For example, Dairy alleges that it

5  requires the use of customized logins and unique passwords,

6  routes new user set-ups through its customer support team,

7  conducts yearly penetration tests, enforces Terms of Service and

8  a Privacy Policy with its customers, and ensures that its

9  employees satisfy various requirements.  *Id*. 21.  Dairy alleges

10  that its customer CDI executed an agreement that somehow protects

11  the alleged Trade Secrets (*id*. ¶ 22), but does not attach the

12  agreement itself to the Complaint.  Dairy does not allege and

13  cannot allege that MMI ever had access to the alleged agreement

14  or was aware of its alleged confidentiality terms before Dairy

15  filed this lawsuit.

16      Dairy alleges that "an officer of MMI" on September 23,

17  2021, requested that CDI provide "over 20 reports from Dairy's

18  supply chain software" and that unidentified CDI personnel in

19  California sent by email "many of the requested reports to MMI"

20  on September 27, 2021.  *Id*. ¶ 26.  Dairy further alleges, on

21  information and belief, that the remaining requested reports were

22  sent in October 2021.  Without providing any facts, Dairy further

23  alleges – again on information and belief – that MMI somehow

24  should have known that Dairy considered reports, which are

25  populated solely with CDI's data and government pricing data and

26  are not marked as confidential, to be Dairy trade secrets,

27  including unspecified reports that Dairy admits are routinely

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

provided to third parties.  Compl. ¶ 26-27; Dkt. No. 8-2 at ¶ 8
(Declaration of Dairy Chief Operating Officer Duane Banderob,
stating that "some of these reports are not always kept in CDI's
sole possession, as they are sometimes shared with CDI's
customers").

Dairy admits that it was aware that CDI would be
transitioning to MMI's software platform in December 2021, "with
the goal of full implementation and roll-out in January 2022."
*Id.* ¶ 31.  It would, of course, be absurd for CDI to have engaged
MMI to fully replace Dairy's software platform in a few months if
MMI did not already have a fully functioning platform that met
CDI's needs well before receiving the reports at issue in this
case on September 27, 2021, and sometime in October 2021.

B.  **Documents Incorporated by Reference in the Complaint**

The following table identifies the documents incorporated by
reference in the Complaint:

| Ex. # | Document | Reference by Compl. ¶ |
|-------|----------|----------------------|
| 1 | California Federal Order and Quota Program | Compl., ¶ 19 |
| 2 | Dairy's Terms of Use | Compl., ¶ 21 |
| 3 | Dairy's Privacy Policy | Compl., ¶ 21 |
| 4 | Sept. 23, 2021 Email from MMI to CDI | Compl., ¶ 26 |
| 5 | Sept. 27, 2021 Email from CDI to MMI | Compl., ¶ 26 |
| 6 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Intransit Pounds" | Compl., ¶ 26 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

| 7 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Loads by Plant" | Compl., ¶ 26 |
|---|---|---|
| 8 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Pickups for Date Range" (PDF) | Compl., ¶ 26 |
| 9 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Pickups for Date Range" (xlsx) | Compl., ¶ 26 |
| 10 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Producer Weights and Tests (Pickup Date)" | Compl., ¶ 26 |
| 11 | Attachment to Sept. 27, 2021 Email titled "Balancing_Reports – Scale vs Manifest" | Compl., ¶ 26 |

## C.    Procedural History

On December 2, 2021, Dairy filed its Complaint alleging two counts of trade secret misappropriation against MMI — one count of trade secret misappropriation under the Defend Trade Secret Act of 2016 ("DTSA"), and another count of trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA").  On Friday, December 10, 2021, Dairy filed an *Ex Parte* Application for Temporary Restraining Order ("TRO") (Dkt. No. 8), and purported to serve MMI by email late that afternoon (nearly 8 p.m. local time for MMI, which is based in Nova Scotia, Canada). MMI filed its opposition to the TRO on Tuesday, December 14, 2021 (Dkt. No. 15).  This Court denied the TRO on December 15, 2021,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1   stating that Dairy had not demonstrated that it had taken

2   "reasonable measures" to keep the allegedly trade secret reports

3   a secret.  TRO Order, Dkt. No. 17.  Dairy provided "no facts

4   detailing how, if at all, plaintiff instructed California

5   Dairies, Inc. to keep this information confidential or that the

6   reports were at the least labeled confidential."  TRO Order at 3.

7   This Court also ruled that Dairy had failed to show "specific

8   facts demonstrating that immediate and irreparable injury will

9   result before the court could hear a motion for preliminary

10  injunction."  TRO Order at 5.

11       Pursuant to this Court's Order denying the TRO, the parties

12  negotiated a regular briefing schedule for Dairy's preliminary

13  injunction motion, with the opening brief due January 18, 2022,

14  and a hearing on February 22, 2022.  Dkt. No. 24.  The parties

15  also stipulated to an extension of the time for MMI to respond to

16  the Complaint, and agreed that if MMI filed a motion to dismiss,

17  it could be briefed and heard on the same agreed upon schedule as

18  the preliminary injunction motion.  *Id.*  The Court approved the

19  stipulated schedule on January 3, 2022.  Dkt. No. 25.

20       **D.**   **Dairy Improperly Seeks Expedited Discovery to Fish for**

21            **Evidence of Potential Claims**

22       Notwithstanding the negotiated and court-approved schedule,

23  and fully aware of MMI's plan to file a motion to dismiss, Dairy

24  advised MMI on Friday, January 14, 2022, that it now plans to

25  file a motion requesting expedited discovery, supposedly because

26  it now thinks discovery would be helpful to the Court in

27  addressing its motion for preliminary injunction.  This is a

28

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

brazen attempt to circumvent the pleading obligations imposed by
Rule 8 and to avoid the resulting consequences under Rule
12(b)(6).  Dairy should not need and is not entitled to any
discovery from MMI to adequately plead a trade secret claim.  "A
true trade secret plaintiff ought to be able to identify, up
front, and with specificity the particulars of the trade secrets
without any discovery."  *Jobscience, Inc. v. CVPartners, Inc.*,
2014 U.S. Dist. LEXIS 26371, at *14-15 (N.D. Cal. February 28,
2014).  Taken together, Dairy's inability to describe the subject
matter of its trade secrets with sufficient particularity and its
eleventh-hour request for expedited discovery evidences an intent
to play the "old trick of vague pleading with the blanks to be
artfully filled in only after discovery."  *Id.*

**III.  THE TRADE SECRET CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**

To state a valid trade secret misappropriation claim under
either the DTSA or CUTSA, a "plaintiff must allege that (1) the
plaintiff owned a trade secret, (2) the defendant acquired,
disclosed, or used the plaintiff's trade secret through improper
means, and (3) the defendant's actions damaged the plaintiff." *E.
& J. Gallo Winery v. Instituut Voor Landbouw-En
Visserijonderzoek*, 2018 WL 2463869, at *3 (E.D. Cal. June 1,
2018); *Alta Devices, Inc. v. LG Elec., Inc.*, 343 F. Supp. 3d 868,
877 (N.D. Cal. 2018) ("The elements of misappropriation under the
DTSA are similar to those under the CUTSA.").  To be a trade
secret, (1) the information cannot be "readily ascertainable
through proper means," (2) the information must derive
"independent economic value," and (3) the plaintiff must take

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1 "reasonable measures to keep such information a secret."

2 *Cherokee Chem. Co., Inc. v. Frazier*, 2020 WL 8410432, at *3 (C.D.

3 Cal. Dec. 14, 2020).

4      Dairy's trade secret claims warrant dismissal for two

5 separate and independent reasons. *First*, Dairy failed to

6 identify protectable trade secrets as the subject matter is

7 readily ascertainable and not secret, and also failed to identify

8 the alleged trade secrets with sufficient particularity. *Second*,

9 Dairy failed to plead any facts show a plausible act of

10 misappropriation by MMI.

11      **A.   Legal Standard Governing 12(b)(6) Motions**

12      "To survive a motion to dismiss, a complaint must contain

13 sufficient factual matter, accepted as true, to state a claim to

14 relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

15 U.S. 662, 678 (2009).  The Complaint must show "more than a

16 sheer possibility that a defendant has acted unlawfully."  *Id.*

17 "A claim has facial plausibility when the plaintiff pleads

18 factual content that allows the court to draw the reasonable

19 inference that the defendant is liable for the misconduct

20 alleged."  *Id*.  Rule 8(a) "contemplate[s] the statement of

21 circumstances, occurrences, and events in support of the claim

22 presented and does not authorize a pleader's bare averment that

23 he wants relief and is entitled to relief."  *Bell Atl. Corp. v.*

24 *Twombly*, 550 U.S. 554, 555 n.3 (2007).  "A pleading that offers

25 'labels and conclusions' and formulaic recitation of the

26 elements of a cause of action will not do.'  Nor does a

27 complaint suffice if it tenders 'naked assertion[s]' devoid of

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1    'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting

2    *Twombly*, 550 U.S. at 555, 557).

3        "Though a court generally is obligated to regard the well-

4    pleaded facts of a complaint as true when deciding a Rule

5    12(b)(6) motion, that principle gives way when the allegations

6    contradict documents attached to the complaint or incorporated by

7    reference." *Groves v. Kaiser Found. Health Plan, Inc.*, 32 F.

8    Supp. 3d 1074, 1079-80 n.4 (N.D. Cal. 2014); *United States v.*

9    *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (documents

10    incorporated by reference are considered "part of the complaint,

11    and thus may assume that its content are true for purposes of a

12    motion to dismiss under Rule 12(b)(6)."). For this reason, the

13    Court "need not accept as true allegations contradicting

14    documents made in a pleading or motion, including concessions

15    made in plaintiff's response to the motion to dismiss as well as

16    in response to any other pleading or motion." *Johnson v. Fed.*

17    *Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-08 (9th Cir. 2015).

18        **B.**    **The Complaint Does Not Adequately Describe Any**

19              **Protectable Trade Secrets**

20        Dairy fails to allege the most fundamental element of its

21    trade secret claims — a protectable trade secret. Although "a

22    plaintiff need not 'spell out the details of the trade secret" at

23    the pleading stage, it must "describe the subject matter of the

24    trade secret with sufficient particularity … to permit the

25    defendant to ascertain at least the boundaries within which the

26    secret lies." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.

27    Supp. 3d 868, 881 (N.D. Cal. 2018) (quoting *Autodesk, Inc. v.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

*ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015)); *E. & J. Gallo*, 2018 WL 2463869, at *3 (same); *see also Farhang v. Indian Inst. of Tech.*, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) ("Before a defendant is compelled to respond to a complaint upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity").

Dairy fails to offer any details about the alleged trade secrets and fails to allege facts to establish it took reasonable measures to maintain their secrecy. Instead, Dairy merely alleges the trade secrets are part of the "proprietary reports" that "Dairy.com provides to CDI, developed over the course of twenty years, including the following: (1) Balancing reports, (2) Production Pooling reports, (3) Payroll reports, (4) Quality Management reports, (5) List Producers reports, and (6) Membership reports (collectively, the 'Trade Secrets')." Compl., ¶16. Neither this nor any other of Dairy's allegations identifies a trade secret that is not readily ascertainable, describes the subject matter of the trade secrets with the necessary particularity, or establishes reasonable measures to maintain secrecy.

**First**, Dairy's allegations fail to notify MMI of the "boundaries within which the trade secrets lie" because "the trade secrets are an unknown subset" of its undefined "proprietary reports." *Zoom Imaging Solutions, Inc. v. Roe*, 2019 WL 5862594, at *3-5 (E.D. Cal. Nov. 8, 2019); *Soil Retention*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1   *Products, Inc. v. Brentwood Industries, Inc.*, 521 F.Supp.3d 929,

2   966 (S.D. Cal. 2021) (dismissing trade secrets misappropriation

3   claims — "From the allegations pled, it is unclear whether

4   Plaintiff's trade secret covers the product itself, its

5   components, or just the manufacturing process.").

6       This Court's decision in *Zoom Imaging* is directly on point.

7   Just as Dairy alleges it developed certain "proprietary reports"

8   and that the purported trade secrets are part of these reports,

9   the plaintiff in that case alleged that it had developed certain

10  "Confidential Information" and that "the trade secrets at issue

11  were part of this Confidential Information." *Id*. at *4

12  ("Plaintiff does not claim, however, that all of this

13  Confidential Information constitutes trade secrets.  Rather,

14  plaintiff alleged that the trade secrets at issue were part of

15  this Confidential Information.").  And just as Dairy's

16  allegations fail to distinguish between the "proprietary reports"

17  and the "trade secrets," the plaintiff's allegations similarly

18  "fail[ed] to distinguish between the Confidential Information and

19  the trade secrets." *Id*.  This Court dismissed the trade secret

20  claims in *Zoom Imaging* "[b]ecause the list of Confidential

21  Information is not exhaustive, and because the trade secrets are

22  an unknown subset of the indefinite Confidential Information,"

23  recognizing that "plaintiff does not sufficiently identify

24  anything." *Id*. at *5.  Like the complaint in *Zoom Imaging*, here

25  Dairy's "Complaint gives [MMI] no clue whatsoever about what

26  information forms the basis of [Dairy's] misappropriation claim."

27  *Id*.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

*Second*, Dairy's allegations purportedly identifying the trade secrets are "vague and conclusory" because they "consist of a generic list of <u>categories</u> of various types of information." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (emphasis added).  Even if Dairy amended the Complaint to differentiate properly between the "proprietary reports" and purported "Trade Secrets," Dairy's trade secret claims would still fail because it identifies the "Trade Secrets" by listing six generic categories of reports — namely, (1) Balancing reports, (2) Production Pooling reports, (3) Payroll reports, (4) Quality Management reports, (5) List Producers reports, and (6) Membership reports.  The law requires that Dairy do more than just plead "broad, categorical terms, [that are] more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS 48637, at *9 (N.D. Cal. Mar. 23, 2018).  Dairy's allegations are akin to those that other courts have deemed too vague. *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *9 (N.D. Cal. Dec. 7, 2015) (dismissing trade secret claims where the plaintiff identified the trade secrets as a "generic list of categories of various types of information"); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same where the plaintiff described the trade secrets as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

It is of no consequence that Dairy's reports allegedly reveal "a tremendous amount of data" concerning "various operational challenges and federal regulations."  Compl., ¶16. That is precisely the language that has been found insufficient. *Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc*. 2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) (dismissing complaint that defined trade secrets as "various types of information" that is "(a) related to the development and commercialization of CZMI's ODx Products," and (b) "related to the sales and marketing-related aspects of CZMI's ODx Products." ); *Farhang*, 2010 WL 2228936 at *3 (same where trade secrets described as "business models and implementations," including "specifics regarding the actual implementation of the global railways and Indian Railways project").  Dairy's vague descriptions fall well short of the reasonable particularity required to state a valid claim for trade secret misappropriation.

**Third**, Dairy's allegations fail to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Alta Devices*, 343 F. Supp. 3d at 881.  Dairy likewise fails to allege facts sufficient to establish that the so-called trade secrets would not be ascertainable through proper means. *Cherokee Chem. Co.*, 2020 WL 8410432, at *3.  This is particularly problematic here because the alleged trade secrets *admittedly* include generally-known and publicly-available information.  For example, after identifying the "Production Pooling Reports" as

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

one category of the alleged "Trade Secrets," Dairy admits that those reports include information collected and provided to it by customers like CDI, such as "milk volume and component totals," while certain other information was collected and published by the U.S. Department of Agriculture, such as "federal order designation(s)."  Compl. at ¶ 17.  These concessions are consistent with Dairy's Privacy Policy and Terms of Use, which are incorporated by reference in the Complaint.  *See* Compl., ¶ 21; Ex. 2 (Terms of Use) at § 1 (defining data collected and provided by client as "Farm Data"—"Farm Data shall mean information, data and other content, in any form or medium, that is collected, downloaded or otherwise received, directly or indirectly from you by or through the Software."); § 5 (agreeing that Dairy's customers retain ownership of the Farm Data—"We each agree that any Farm Data collected through the Software is owned by you."); *see also* Ex. 3 (Privacy Policy) (sets forth terms for providing any third-party access to the Farm Data).  Dairy likewise admits that those reports include common measurements and calculations, including "typical hauling metrics" and "calculations related to the California federal order and quota program."  *Id.*  This too is confirmed by the referenced document. Ex. 1 (California Federal Order and Quota Program) at Article 10, §1003 ("Handlers shall deduct a fee from payments made to producers for all milk received or diverted each month in an amount calculated by multiplying the pounds of solids not fat handled for the producer by the quota revenue assessment rate.").

    The same is true for the categories labelled as the "Payroll

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

Reports" and "Balancing Reports." Compl. at ¶¶ 18 and 19. Despite identifying both as "Trade Secrets," Dairy admits that the "Payroll Reports" include well-known *concepts*, such as "the concept of 'assignments' in U.S. payroll software" (Compl. at ¶ 18), and that the "Balancing Reports" include standard ways to *structure* data collected by customers like CDI, like the "data structure" used to report "Pickups for Date Range"—*i.e.*, organizing the pickups by date and reporting only those within the requested date range (Compl. at ¶ 19). Once again, the California Federal Order and Quota Program not only discloses — but **mandates** — both the specific assignments and the data structures for these reports. Ex. 1 (California Federal Order and Quota Program) at Article 8, §800 (identifying and organizing assignments by the county — *e.g.*, "A negative 27 cents (-$0.27) per hundredweight, (-$.031034) per pound of quota solids not fat, is assigned to dairy farms located within the counties of: Fresno, Kings, and Tulare"); *id*. at Article 10, §1000 ("The report shall include the following: (a) The amount of milk, milk fat, and solids not fat received from the producer or diverted; (b) The amount of product paid for as quota solids not fat and the revenue; (c) The dollar value and applicable rate of quota assessment deducted from the producer; and (d) The rate and amount of Regional Quota Adjuster deducted from the producer.").

Dairy also admits that certain of the allegedly trade secret reports are routinely provided to third parties without any steps to maintain their secrecy (Dkt. No. 8-2 at ¶ 8), but does not identify which of the reports are freely provided or explain how

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  MMI would be able to discern which reports Dairy considers to be

2  trade secrets and which can be freely provided to third parties.

3  The reports themselves are not marked as "Trade Secret" or even

4  as "Confidential" (Exs. 6-11) and there are no facts alleged

5  establishing steps to maintain the secrecy of the reports *vis a*

6  *vis* MMI.  *See Cherokee Chem. Co.*, 2020 WL 8410432, *3 (plaintiff

7  must take reasonable measures to maintain information as secret).

8  Documents incorporated by reference in the Complaint belie

9  Dairy's secrecy claims.  Ex. 2 (Terms of Use) at § 1.2 (providing

10 Dairy's customers with the right to authorize "any individual" to

11 "access the Software via any web enabled device.").

12      Dairy acknowledges this tension in the Complaint but fails

13 to plead any facts to reconcile it.  Unable to allege that the

14 entirety of each report is a trade secret, Dairy alleges that

15 "many" unspecified portions of each report still constitute a

16 trade secret.  Compl. at ¶ 17 ("The Production Pooling Reports

17 contain many confidential, proprietary reports, constituting

18 trade secrets"), ¶ 18 (same for Payroll Reports), ¶ 19 (same for

19 Balancing Reports).  Dairy's failure to describe those portions

20 with sufficient particularity is fatal to its claims.  Indeed,

21 courts routinely hold that a plaintiff pleading trade secrets

22 that overlap with public information or general knowledge must do

23 more to distinguish between that which is known versus that which

24 is secret, or face dismissal. *Space Data*, 2017 U.S. Dist. LEXIS

25 22571, at *4-6 (dismissing trade secret claim where plaintiff had

26 "not made clear which aspects of its technology and other

27 information are 'part of patents and pending patent

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  applications,' if any, and which are secret.").

2      Dairy's failure to plead any protectable trade secret with

3  sufficient particularity and failure to allege reasonable

4  measures to maintain secrecy warrants dismissal of its trade

5  secret claims.

6      **C.**   **The Complaint Does Not Adequately Plead Any Acts of**

7          **Misappropriation**

8      As a second, independent ground for dismissal, Dairy's trade

9  secret claims fail adequately to plead misappropriation — *i.e.*,

10  the improper acquisition, disclosure, or use of the alleged trade

11  secret.  *See* 18 U.S.C. § 1839(5)(A)-(B); Cal. Civ. Code §

12  3426.1(b)(1)-(2).

13      ***First***, Dairy fails to plead misappropriation through

14  improper acquisition.  The Complaint states that both of "Dairy's

15  trade secret misappropriation claims arise out of, or relate to,

16  MMI's activities in California."  Compl., ¶ 9.  Yet the only

17  alleged MMI conduct that concerns California involves an email

18  exchange between an MMI "officer" in Canada and CDI

19  representatives in California:

20          On or around September 23, 2021, an officer of
           MMI in Canada sent an email to CDI
21          representatives in California requesting that
           CDI provide it Dairy's Trade Secrets by
22          providing MMI with over 20 reports from
           Dairy's supply chain software. …
23

24          On or about September 27, 2021, CDI personnel
           in California sent by email many of the
25          requested reports to MMI.  On information and
           belief, the remaining reports were sent in
26          October 2021.

27
   Compl., ¶26.  Dairy pleads only conclusory allegations, no *facts*
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

showing that MMI knew or had reason to know that the reports used by CDI were generated by Dairy.  The two emails incorporated by reference in the Complaint — attached hereto as Ex. 4 (the Sept. 23, 2021 email) and Ex. 5 (the Sept. 27, 2021 email) — do not even mention Dairy, let alone show that MMI specifically requested "reports from Dairy's supply chain software."  *Compare* Compl., ¶26 *with* Ex. 4 & 5.  Nor does the Complaint plead any *facts* suggesting that MMI knew or had any reason to know that the requested reports contained confidential information, let alone trade secrets.  Dairy admits at least some of the reports are provided to third parties, without obligations of secrecy.  Dkt. No. 8-2 at ¶ 8.  As this Court stated in denying the TRO (Dkt. No. 17), the reports themselves were not marked confidential (or as trade secrets), which is the most rudimentary tool used to maintain secrecy.  TRO Order at 3; Exs. 6-11.

Worse yet, the three referenced emails contradict Dairy's bald allegations, including MMI's alleged motive for requesting the reports — namely, to reverse engineer the Dairy software responsible for generating the reports.  Compl. ¶¶ 27-29; *Johnson*, 793 F.3d at 1007-08 ("The court need not accept as true allegations contradicting documents made in a pleading.").  MMI's email made clear to CDI that the reports should include "any modifications that you make to them manually."  Ex. 4 (emphasis added).  The fact that MMI requested reports with CDI's custom modifications contradicts Dairy's allegations further supports MMI's lawful intentions in making the request.  The email reflects that MMI only requested to see the reported information

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1   *in the manner specifically used by CDI* to demonstrate that MMI's

2   "reporting capabilities" could meet CDI's current reporting

3   needs.  *Id*.  Dairy's failure to plead facts "tending to exclude"

4   this "theory of innocent market entry" renders its allegations of

5   misappropriation implausible.  *See, e.g., Veronica Foods Co. v.*

6   *Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *8 (N.D. Cal.

7   June 29, 2017) (plaintiff must allege facts that are not "merely

8   consistent with' both a theory of innocent market entry and the

9   theory that Defendants used [Plaintiff's]confidential customer

10  list, but rather 'tend[] to exclude' an innocent explanation.");

11  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d

12  990, 996-97 (9th Cir. 2014) ("[P]laintiffs cannot offer

13  allegations that are merely consistent with their favored

14  explanation but are also consistent with the alternative

15  explanation.  Something more is needed, such as facts tending to

16  exclude the possibility that the alternative explanation is true,

17  in order to render plaintiffs' allegations plausible").

18      There is and could be no allegation that MMI has ever had

19  access to anything that would allow it to reverse engineer the

20  software platform used to generate the reports at issue.[1]  Even

21  if that were the case (which it is not), reverse engineering is

22  allowed under trade secret law.  *See Chicago Lock Co. v. Fanberg*,

23  676 F.2d 400, 405 (9th Cir. 1982) (individual's reverse

24  engineering of a lock he purchased "… is an example of the

25

26  _____

    [1] As a technical matter, it is well-known that it would not be
27  feasible to reverse engineer Dairy's software code solely from
    the type of reports that CDI is alleged to have provided to MMI.
28  The reports do not reveal algorithms, and do not provide a means
    to discern underlying code.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  independent invention and reverse engineering expressly allowed

2  by trade secret doctrine."). The DTSA explicitly states that

3  reverse engineering is not an improper means of acquiring a trade

4  secret. 18 U.S.C. § 1839(6)(B) ("the term improper means … does

5  not include reverse engineering"). No contract can change the

6  statutory definition of "improper means" to include reverse

7  engineering. *See Aqua Connect, Inc. v. Code Rebel, LLC*, 2012 WL

8  469737, at *2-3 (C.D. Cal. Feb. 13, 2012) (dismissing trade

9  secret misappropriation claim with prejudice because violating a

10  user agreement may support a breach of contract claim, but "does

11  not convert reverse engineering into an improper means" in

12  California trade secret law; *DVD Copy Control Ass'n, Inc. v.*

13  *Bunner*, 31 Cal. 4th 864, 901 n.5, (2003) (Moreno, J., concurring)

14  ("federal patent law alone grants universal protection for a

15  limited time against the right to reverse engineer").

16      ***Second***, Dairy fails to sufficiently plead the knowledge

17  requirement for an indirect trade secret misappropriation claim —

18  namely, that MMI either "(a) knew or had reason to know before

19  the use or disclosure that the information was a trade secret and

20  knew or had reason to know that the disclosing party had acquired

21  it through improper means or was breaching a duty of

22  confidentiality by disclosing it; or (b) knew or had reason to

23  know it was a trade secret and that the disclosure was a mistake.

24  *MediStrem, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114

25  (N.D. Cal. 2012). Dairy alleges that, "on information and

26  belief, MMI knew or had a reasonable expectation that CDI was not

27  authorized to share Dairy's proprietary, confidential, Trade

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

Secrets with MMI." Compl., ¶27. Once again, Dairy fails to plead the necessary *facts* to support its naked allegation. *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79-80 (N.D. Cal. 2020) (dismiss trade secret misappropriation claims — "Plaintiffs make a conclusory assertion that Defendants 'had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use.' But this assertion is devoid of any factual substantiation of Defendants' knowledge.").

Despite alleging that "CDI signed an agreement with Dairy that included … specific language prohibiting CDI from providing Dairy's Trade Secrets to Competitors" (Compl., ¶22), Dairy never pleads any facts showing that MMI knew or had reason to know that CDI was contractually obligated to keep those reports confidential. MMI is neither alleged to have been a party to that agreement nor have been made aware of those contractual obligations by CDI or any other party to that agreement. *MediStrem, Inc. v. Microsoft Corp.*, 869 F.Supp.2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade secret claims because the complaint "fails to include facts demonstrating that it knew or had reason to know that any information it allegedly acquired from [third party] was improperly acquired or disclosed" — "the FAC does not assert that at the time [defendant] allegedly began obtaining such technology from [third party], [defendant] had any knowledge that [plaintiff's contractual relationship with [third party] had soured, or that [third party] was not authorized to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

supply VR technology similar to that developed by [plaintiff]");

*Cleanfish, LLC v. Dale Sims, et al*, 2020 WL 4732192, at *6-7

(N.D. Cal. Aug. 14, 2020) (dismissing trade secret claim where

plaintiff's allegation that defendant "was never privy" to

plaintiff's trade secret means that [defendant] would not

plausibly have any reason to know that the customer list it

received was supposedly stolen from plaintiff").

Dairy does not even allege that MMI became aware of CDI's

contractual obligations once it obtained the purportedly

"confidential information" in Dairy's reports.  Nor could it.

The reports themselves were never designated confidential.

Exs. 6-11.  Dairy cannot impose upon MMI the confidentiality

obligations of another, especially when MMI could not reasonably

have known that those obligations existed, let alone the scope of

those obligations.  *Convolve Inc. v. Compaq Computer Corp.*, 527

Fed. App'x 910, 924-25 (Fed. Cir. 2013) (no misappropriation

where the alleged trade secrets were not designated by the

plaintiff as confidential because, "consistent with general

principles of California contract law" and "common sense," one

cannot "circumvent its contractual obligations or impose new ones

. . . via some implied duty of confidentiality."); *Navigation

Holdings*, 445 F. Supp. 3d at 79-80 (dismissing trade secret

claims—"Plaintiffs argue that '[Defendant] knew that Molavi owed

duties to [Plaintiff],' and that [Defendant] hired Molavi,

'intending that [Molavi] would take and utilize Plaintiffs' trade

secrets.'  Yet Plaintiffs do not actually allege that [Defendant]

itself actually used the trade secrets, and [Defendant's] alleged

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  conduct largely states other claims, such as breach of contract,

2  not trade secret misappropriation.").

3      Dairy does not and cannot allege facts to establish the

4  requisite level of knowledge, as courts regularly require.  For

5  example, in stark contrast to the allegations here, in *Genentech*,

6  the plaintiff alleged that the defendant received a report

7  "clearly labeled" with the plaintiff's name and "clearly marked

8  'Confidential' and 'Internal Only.'"  *Genentech, Inc. v. JHL*

9  *Biotech, Inc.*, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019).

10 Similarly, in *Wang*, the plaintiff alleged that defendant had been

11 told during a meeting that the information was the subject of a

12 pending patent application, which the court noted was "usually

13 confidential until published." *Wang v. Palo Alto Networks, Inc.*,

14 No. C 12-05579 WHA, 2013 WL 415615, at *3 (N.D. Cal. Jan. 31,

15 2013).

16     ***Third***, Dairy fails sufficiently to plead misappropriation by

17 improper use.  *Soil Retention*, 521 F. Supp. 3d at 960 ("Just as

18 the *Pellerin* Court held that 'mere possession of trade secrets is

19 not enough,' this Court likewise holds that Plaintiff's

20 allegations fail to allege any non-conclusory facts that

21 plausibly suggest Defendant used Plaintiff's alleged trade

22 secret").  Aside from reciting the same conclusory allegation

23 under each count of trade secret misappropriation — *i.e.*, "MMI

24 has used Dairy.com's Trade Secrets without express or implied

25 consent" (Compl., ¶¶ 41, 57) — the Complaint never alleges that

26 MMI "used" the reports it received from CDI.  Dairy fails to

27 plead any facts showing that MMI incorporated into its reports

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

… 

1    any of Dairy's purported trade secrets that it received from CDI.

2    *Agency Solutions.Com, LLC*, 819 F.Supp.2d, 1029.  ("[A] trade

3    secret embodied in the product of a misappropriating party is

4    'used' if it is incorporated as such in the resulting product.").

5    Nor does Dairy plead any facts (nor could it) showing that MMI

6    employed any Dairy trade secret information from those reports to

7    improve the software it uses to generate its own reports.  *See*

8    *id.* at 1030 (finding generalized knowledge of architecture being

9    used in similar software by competing companies did not

10   constitute "use" of trade secrets).

11       Dairy's failure to plead any act of misappropriation by MMI

12   provides a separate and independent basis for dismissal of its

13   trade secret claims.

14       D.    **Leave to Amend Would Be Futile.**

15       Dairy's allegations of trade secret misappropriation are

16   implausible on their face.  The reports only contain information

17   from CDI or the government, the reports themselves (which the

18   Court can review for this motion as they are referenced in the

19   Complaint) are industry standard and reveal the generic nature of

20   the reports (such as listing the names of farms, volumes of milk,

21   milk content data, hauling metrics, pricing, and who gets paid

22   what) and the reports are not marked as trade secrets or even as

23   confidential.  *See, infra,* at Ex. 6-11.  Moreover, Dairy's

24   allegation the MMI obtained the reports to create a competitive

25   platform defies logic as Dairy admits that MMI did not even

26   receive the bulk of them until the eve of a transition to the MMI

27   platform.  Dairy therefore cannot allege any further facts to

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1  adequately plead a trade secret misappropriation claim under

2  either the DTSA or CUTSA.

3      Dairy already has filed two complaints, and still come up

4  far short of a viable claim.  It first filed a complaint against

5  MMI alleging trade secret claims on November 29, 2021, in the

6  Central District of California.  Case No. 2:21-cv-09279.  Dairy

7  voluntarily dismissed that complaint and filed the Complaint at

8  issue here on December 2, 2021.  MMI advised Dairy of the

9  pleading deficiencies and that it would be filing a motion to

10  dismiss, but Dairy declined to amend its claims.  Dairy has had

11  sufficient time between the discovery of the alleged

12  misappropriation and the filing of the Complaint at issue here to

13  develop and plead the factual bases for its misappropriation

14  claims, which it has not done.  It likewise should not be allowed

15  time to take expedited discovery under the guise of its

16  preliminary injunction motion to try to craft a viable claim.

17  *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS

18  26371, at *14-15 (N.D. Cal. February 28, 2014).

19      For these reasons, both of Dairy's trade secret

20  misappropriation claims should be dismissed with prejudice.  *Aqua*

21  *Connect,* 2012 WL 469737, at *2-3.

22  **IV.   THE HOLD NOTICE SHOULD BE STRICKEN FROM THE COMPLAINT**

23      The Complaint contains a generic "Litigation Hold Notice"

24  that purportedly "puts MMI on *notice* of [various] requirements

25  for document collection and retention."  The Court should strike

26  the litigation hold notice because it is "immaterial" to the

27  pleadings. Fed. R. Civ. P. 12(f).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1   Although motions to strike are "generally disfavored," they
2   should be granted where, as here, "the matter to be stricken
3   could have no possible bearing on the subject matter of the
4   litigation." *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1170
5   (E.D. Cal. 2005) (citation and quotation marks omitted).
6   Striking the litigation hold notice would also remove
7   "unnecessary clutter" from litigation. *Sun Life Assur. Co. of*
8   *Canada v. Great Lakes Business Credit LLC*, 968 F. Supp. 2d 898,
9   902 (N.D. Ill. 2013); *Amini Innovation Corp. v. McFerran Home*
10  *Furnishings, Inc*. 301 FRD 487, 490 (C.D. Cal. 2014) (striking
11  references to allegations from a different complaint filed by the
12  same plaintiff against the same defendant).  The litigation hold
13  notice is similarly immaterial and should be struck from the
14  Complaint.

15  **V.    CONCLUSION**

16  The Complaint and early tactics in this litigation confirm
17  that Dairy filed this action to disrupt and prevent the
18  transition of one of its dissatisfied customers to a competitor.
19  Dairy has not alleged facts to establish the required elements of
20  its trade secret claims, nor are such claims plausible.  MMI
21  respectfully requests that the Court dismiss Dairy's trade secret
22  claims with prejudice and strike the litigation hold notice from
23  the Complaint.

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC

1    Dated:     January 18, 2022        MORGAN, LEWIS & BOCKIUS LLP

2

3
                                        By /s/ Carla B. Oakley
4                                          CARLA B. OAKLEY

5                                          Attorneys for Defendant
                                           Milk Moovement, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

DEFENDANT MILK MOOVEMENT,
INC.'S MOTION TO DISMISS
COMPLAINT
2:21-CV-02233 WBS AC