UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>          Plaintiff,<br><br>     v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign Corporation,<br><br>          Defendant. | No. 2:21-cv-02233 WBS AC<br><br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |

----oo0oo----

Plaintiff has moved for a preliminary injunction requiring defendant to: "(i) preserve all potentially relevant evidence and submit electronic devices, accounts, and files to forensic examination, (ii) refrain from using or disclosing any of the stolen trade secrets or confidential information, (iii) return everything they stole and destroy any copies, and (iv) refrain from soliciting Dairy's customers to reveal Dairy's trade secrets." (Docket No. 31.)

1

In order to obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Humane Society of the U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009).

Because the court finds that plaintiff has made an insufficient showing of a likelihood of success on the merits, its motion will be denied. Plaintiff's first amended complaint ("FAC") (Docket No. 48) is based upon allegations of misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.1; and its request for a preliminary injunction is based upon defendant's alleged use of its trade secrets.[1]

Courts typically analyze DTSA and CUTSA claims together as the elements for trade secret misappropriation and the definitions of those elements are substantially similar under both acts: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. See ExamWorks v. Baldini, 2:20-cv-00920-KJM, 2020 WL 3127928, *5 (E.D. Cal. June 11, 2020) (vacated in part on other grounds); Waymo, LLC v. Uber Techs., Inc., No. C 17-00939 WHA, 2017 WL 2123560, * 7 (N.D. Cal. May 15,

---

[1] The complaint also contains a claim for intentional interference with contractual relations, which is not part of the basis for the pending motion for preliminary injunction.

1   2017).  Plaintiff has not made a sufficient showing that the
2   information it seeks to enjoin defendant from using either
3   constitutes a trade secret or was obtained by misappropriation.
4               Plaintiff claims as a trade secret:

> Dairy's producer payroll application enables its clients to easily and efficiently maximize the benefits of FMMO pool participation. This is accomplished by supporting the pool versus non-pool decisions that dairy handlers make each month around FMMO participation. Dairy's software includes and implements a methodology for handling FMMO pooling that is unique in the industry and is Dairy's trade secret.
>
> The proprietary pooling functionality in Dairy's software enables Dairy's clients to maximize the benefits of FMMO pooling participation by enabling them to make more economically advantageous pooling decisions and accurately document those decisions for reporting purposes.

13              (FAC ¶¶ 23-24.)
14               In order to establish this as a trade secret,
15  plaintiff must demonstrate that it is the subject of reasonable
16  efforts to maintain its secrecy.  See ExamWorks, 2020 WL 3127928,
17  at *6; 18 U.S.C. § 1839(3)(A); Cal. Civ. Code § 3426.1(d)(2).
18  While the court acknowledges that plaintiff has described
19  measures it took to keep access to its actual software limited,
20  at this stage plaintiff has not shown a likelihood that can
21  establish it took reasonable measures under the circumstances to
22  maintain secrecy over the information in reports plaintiff
23  alleges are trade secrets.
24              For example, plaintiff's former employee who informed
25  plaintiff that plaintiff's customer, California Dairies Inc.
26  ("CDI"), had shared reports with defendant, himself sent a report
27  generated by plaintiff's software to defendant while working for
28  CDI.  (Decl. of Jon King ("King Decl.") Ex. 3 (Docket No. 50-

2).); (Decl. of Jon King ISO of TRO Opp'n ("King TRO Decl.") ¶ 35 (Docket No. 15-1).) The report he sent contained similar information to the reports later shared. (King Decl., Ex. 3.); (King TRO Decl. ¶ 35.) Though the former employee claims that the reports shared by CDI with defendant are known in the industry to be confidential, his action of sharing a similar report was not consistent with that proposition.

Plaintiff argues that the reports show the "structure and organization" and "data inputs" its software tracks, which the defendant could allegedly use to create its own software. (Req. to Seal, Mem. ISO of Pl.'s Mot. ("Pl.'s Mot.") at 7.) However, plaintiff has posted screenshots of its software on its own website that include placeholders for data input, like those in the at issue reports, for users to fill out. (King Decl. ¶ 62-63.) If plaintiff wanted to keep secret the data inputs its software requires to prevent reverse engineering, it can be assumed that it would take the reasonable measure to not place that information on its website.[2]

Moreover, even if plaintiff could show that it took reasonable steps to maintain secrecy of the information and therefore that it qualifies as a trade secret, plaintiff has not shown a likelihood of establishing that the information was misappropriated, meaning defendant improperly acquired, disclosed or used plaintiff's trade secrets. See Cal. Civ. Code §

---

[2] Plaintiff argues that the screenshots of the software do not show any of the "pooling-related features of the producer payroll application," but the data inputs appear similar to those shown on reports. It is thus unclear how the reports would be indicative of the pooling-feature and payroll producer application but the screenshots of the software would not.

3426.1(b); 18 U.S.C § 1839(5). Plaintiff has established that the user agreement it had with its clients restricted them from sharing confidential information, which included the reports, freely with third parties. However, plaintiff must show that defendant "knew or had reason to know" about CDI's agreement with plaintiff. See Cal. Civ. Code § 3426.1(b); 18 U.S.C. 1839(B). Plaintiff provides no evidence to that effect.

Further, plaintiff's misappropriation claims rest on the theory that defendant took the reports given to it by CDI "for purpose of reverse engineering" plaintiff's software, specifically the pickup-level pooling method. (Pl.'s Mot. at 12.) However, defendant's Chief Product Officer and the Senior Vice President and Chief Financial Officer of CDI describe that the software defendant has created for CDI does not make pickup-level pooling decisions for CDI. (King Decl. ¶ 21); (Decl. of Carla Oakley, Ex. 1, Decl. of Philip Girard ISO of PI ¶ 9 (Docket No. 50-1).) Defendant's function for logging quantities of milk is also different from plaintiff's, which shows that it is unlikely that defendant reverse engineered plaintiff's software to make its own.

Even if defendant was able to or did reverse engineer the reports to obtain plaintiff's alleged trade secret payroll producer application methodology and pickup-level pooling feature, the DTSA and the CUTSA allow for reverse engineering. See Cal. Civ. Code § 3426.1(a) ("Reverse engineering . . . alone shall not be considered improper means"); 18 U.S.C. 1839(6)(B) ("the term 'improper means' does not include reverse engineering").

5

             In sum, plaintiff has not demonstrated a likelihood of success on either element of the DTSA and the CUTSA claims. Plaintiff "must make a showing on all four prongs to obtain a preliminary injunction." Woman's Friend Pregnancy Res. Clinic v. Becerra, 901 F.3d 1166, 1167 (9th Cir. 2018) (internal quotation marks and citations omitted).  Plaintiff has failed to meet the first prong, and therefore, plaintiff's motion for a preliminary injunction must be denied.

             IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (Docket No. 31) be, and the same hereby, is DENIED.

Dated:  February 25, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE