UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>            Plaintiff,<br><br>     v.<br><br>MILK MOOVEMENT, INC., a foreign Corporation, and MILK MOOVEMENT LLC, a Delaware Limited Liability Company,<br><br>            Defendants. | No. 2:21-cv-02233 WBS AC<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>DEFENDANTS' MOTION TO DISMISS</u> |

----oo0oo----

Plaintiff Dairy, LLC filed this action against defendants Milk Moovement, Inc. and Milk Moovement, LLC alleging trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.1, and intentional interference with contractual relations. (First Am. Compl. ("FAC") (Docket No. 48).) Defendants move to dismiss all claims of the FAC. (Docket No. 55.)

1

I.  Factual and Procedural Background

Plaintiff provides software to clients, including milk processors and dairy cooperatives, in the United States dairy industry.  (FAC ¶¶ 2, 16.)  Part of plaintiff's software, called the "producer payroll application," allows users to comply with Federal Milk Marketing Orders that regulate minimum milk prices paid to dairy producers.  (Id. ¶¶ 3-4.)  Plaintiff's software also generates reports to enable clients to determine whether to participate in the federal "pool" which sets a minimum price for different classes of milk.  (Id. ¶¶ 18-22.)

California Dairies Inc. ("CDI") was one of plaintiff's customers commencing in 2014 and used plaintiff's producer payroll application.  (Id. ¶¶ 32-33, 36.)  Defendants provide cloud-based software to the dairy industry.  (Id. ¶ 5.)  Plaintiff alleges that in April 2021, defendants and CDI engaged in discussions, resulting in CDI entering into a software and services agreement with defendants in September 2021.  (Id. ¶¶ 37, 40-41.)  CDI then gave notice to plaintiff that it was terminating all software subscriptions with plaintiff as of February 1, 2022.  (Id. ¶ 41.)

Plaintiff alleges that shortly thereafter, CDI and defendants had a call in which they discussed "confidential and trade secret information regarding [plaintiff's] producer payroll application and reporting capabilities."  (Id. ¶ 42.)  After the call, employees at CDI allegedly shared with defendants fifteen reports that were generated from plaintiff's software.  (Id.)  Plaintiff alleges that the user agreement it had with CDI restricted CDI from sharing such information.  (Id. ¶¶ 57, 66.)

2

The court previously denied plaintiff's requests for a temporary restraining order and preliminary injunction. (Docket Nos. 17, 59.)[1] The court now considers defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III. Misappropriation of Trade Secrets

The court will analyze the DTSA and CUTSA claims together as the "elements are substantially similar." See InteliClear, LLC v. ETC Global Holdings, Inc., 978 F. 3d 653, 657 (9th Cir. 2020). Defendants argue that the FAC fails to: (1) identify plaintiff's trade secrets with sufficient particularity; (2) allege facts establishing reasonable measures to maintain

---

[1] The temporary restraining order and preliminary injunction were denied because plaintiff did not show a likelihood of success on the merits. Specifically, plaintiff's evidence at the preliminary injunction phase did not sufficiently show that it took reasonable measures to keep the information secret and that defendant misappropriated the alleged trade secret.

3

secrecy; and (3) allege facts establishing misappropriation. (Def.'s Mot. at 2.)  The court analyzes each argument below.

    A.    <u>Particularity</u>

Plaintiff is required to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." <u>Imax Corp. v. Cinema Tech., Inc.</u>, 152 F. 3d 1161, 1164-65 (9th Cir. 1998) (quotations and citation omitted).

The FAC includes a section titled "Description of Dairy's Trade Secret." (<u>See</u> FAC at 5.)  Within this section, the FAC first outlines the federal regulations that plaintiff's software attempts to comply with through its "producer payroll application." (<u>See</u> <u>id.</u> ¶¶ 15-22.)  Next, the FAC lists the features of the "producer payroll application" that help clients comply with the federal regulations and make decisions about whether to "pool" their milk purchases. (<u>See</u> <u>id.</u> ¶ 22.)  Then, the FAC explicitly states the alleged trade secret that is within the "producer payroll application." The FAC states: "Dairy's software includes and implements a methodology for handling FMMO pooling that is unique in the industry and is Dairy's trade secret."  (<u>Id.</u> ¶ 23.)

Further, the FAC summarizes the "Nature of the Action" at the beginning of the FAC and identifies as the alleged trade secret "[t]he elements of Dairy's producer payroll application that enable Dairy's clients to easily and efficiently make decisions about what milk to pool, designate milk for pooling, and generate accurate reports and invoices to comply with

4

[federal regulations]." (Id. ¶ 4.)  The FAC repeats the identification of this alleged trade secret when describing "count one" and "count two." (See id. ¶¶ 55, 65.)

These repeated descriptions of the alleged trade secret all sufficiently "identify at least one trade secret with particularity" and "permit[] the defendant[s] to ascertain at least the boundaries within which the secret lies." InteliClear, 978 F. 3d at 659; Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).

The FAC does more than describe the trade secret in "broad, categorial terms." See Albert's Organics, Inc. v. Holzman, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020) (holding that trade secrets were not pled with sufficient particularity because categories such as "supplier information, pricing, [and] financing" were too broad).  The FAC does not broadly state that plaintiff's software is its trade secret, but rather the "description pertains to a single, distinct system and the components therein," specifically the pooling methodology within the "producer payroll application."  See Inteliclear LLC v. ETC Global Holdings, No. 2:18-v-10342, 2019 WL 3000648, at *2 (C.D. Cal. Apr. 5, 2019) (trade secret was defined with sufficient particularity as the "unique design and concepts and the unique software, formulas, processes, programs . . . by which the system components interrelate and process data"); (FAC ¶¶ 23, 55, 65.)

Defendants argue the alleged trade secret "lacks boundaries" because the FAC states that the trade secret information is "including, but not limited to" the pooling methodology and the pooling methodology is "amongst Dairy's trade

5

secrets." (See FAC ¶¶ 4, 55, 65.) However, that language is used differently here than the hedging language was used in the complaint in Cutera, Inc. v. Lutronic Aesthetics, Inc., No. 2:20-cv-00235-KJM-DB, 2020 WL 4937129, at *5 (E.D. Cal. Aug. 24, 2020). In Cutera, the complaint included "a non-exhaustive list of trade secrets" and alleged the defendant had misappropriated "any number of undefined trade secrets." Id. at *5. Here, the FAC specifically identifies the pooling methodology as a trade secret and does not include a "non-exhaustive list." Further, at the pleading stage, "it is not fatal" that plaintiff's "hedging language left open the possibility of expanding its identifications later." See InteliClear, 978 F. 3d at 659.[2]

Zoom Imaging Solutions, Inc. v. Roe, No. 2:19-cv-01544-WBS-KJN, 2019 WL 658 WL 5862594 (E.D. Cal. Nov. 8, 2019), cited by defendants, is distinguishable, in that this court in that case granted the motion to dismiss because the complaint did not "distinguish between the [c]onfidential [i]nformation and the trade secrets." See id. at *5. Specifically, the complaint there simply alleged that the trade secrets were part of the confidential information categories the complaint listed. See id. at *4. In contrast, the FAC here identifies the pooling methodology as the alleged trade secret, and therefore, distinguishes between the confidential information and the trade

---

[2] Though InteliClear examined whether a trade secret was defined with sufficient particularity at the motion for summary judgment phase and examined the "hedging language" in a declaration, its proposition is instructive here because even less particularity is necessary at the pleading stage where no discovery has occurred.

6

secret.

For these reasons, the court concludes that the FAC sufficiently identifies the trade secret with particularity without spelling "out the details of the trade secret" as doing so "would mean that the complainant would have to destroy the very thing for which [it seeks] protection." See TMX Funding, Inc. v. Impero Techs. Inc., No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010). Defendants can ascertain that the trade secret is the pooling methodology used in the "producer payroll application" within plaintiff's software.

B. Reasonable Measures to Maintain Secrecy

The FAC spends three pages discussing numerous ways in which plaintiff attempts to protect its trade secrets, including the producer payroll application containing the pooling methodology. (FAC ¶¶ 26-31 ("requires clients . . . to agree to confidentially terms," "restrictions on access to and use of its producer payroll application," and "engages a nationally recognized third-party security auditor").) These allegations, accepted as true, are sufficient to meet the plausibility standard required at the pleading stage. See Ashcroft, 556 U.S. at 678. Defendants' arguments on this element, including their interpretation of plaintiff's user agreement, are better suited for a later stage of this action, as they pertain to disputed facts which will determine the "reasonableness" of the alleged secrecy measures.

C. Misappropriation

The FAC must allege facts demonstrating that

7

1  plaintiff's trade secrets were misappropriated, meaning
2  defendants improperly acquired, disclosed or used plaintiff's
3  trade secrets.  See Cal. Civ. Code § 3426.1(b); 18 U.S.C §
4  1839(5).  Plaintiff's theory of misappropriation rests on
5  defendants improperly acquiring the trade secrets and then using
6  them.  (FAC ¶¶ 47-50, 59, 68.)  Specifically, the FAC alleges
7  that defendants received the trade secret information from CDI
8  via emailed reports from plaintiff's software and conversations
9  with CDI, and then defendants used plaintiff's pooling
10 methodology in their own software.  (FAC ¶¶ 42, 49.)
11          Defendants argue that the FAC's allegations regarding
12 an email from CDI sending reports to defendants are insufficient
13 because the email does not clearly indicate that any of
14 plaintiff's trade secrets were discussed.  (Defs.' Mot. at 25.)
15 Whether the email exchange indicates that conversations were had
16 between CDI and defendants regarding the alleged trade secrets is
17 a dispute not to be resolved at the pleading stage.  At this
18 stage of the proceedings, the court must "accept as true" the
19 allegations contained in the FAC.  See Ashcroft, 556 U.S. at 678.
20          The FAC alleges that the user agreement restricts CDI
21 from sharing the reports freely, and contains sufficient factual
22 allegations from which it is plausible to conclude that
23 defendants "knew or had reason to know" about the confidentiality
24 agreement between CDI and plaintiff and that the information
25 being shared was a trade secret.  (FAC ¶¶ 31, 43.)  Specifically,
26 the FAC alleges that restricting access to the software and its
27 outputs is common in the dairy supply chain industry, and
28 therefore, defendants would know that plaintiff's alleged trade

8

secrets are not publicly available.  (Id. ¶ 43.)

Defendants note that the FAC pleads facts regarding misappropriation, including how defendants implemented the alleged trade secrets into their software, "on information and belief" and argues that these allegations should be ignored. (See Defs.' Mot. at 9; FAC ¶¶ 47, 49-50.)  However, "the Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."  Soo Park v. Thompson, 851 F. 3d 910, 928 (9th Cir. 2017) (citations and quotations omitted); see also Autodesk, Inc. v. ZWCAD Software Co., Ltd., No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) ("[I]t it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used their trade secrets given that Defendants are the only ones who possess such information") (quotations omitted).

Here, the FAC provides more than "naked assertions made upon information and belief" and includes "further factual enhancement" about defendants' need for the trade secret information given their recent launch in the United States.  See Ashcroft, 556 U.S. at 678; (FAC ¶¶ 39, 47-48, 50.)  The FAC sufficiently alleges misappropriation at the pleading stage.

For the foregoing reasons, defendants' motion to dismiss the DTSA and CUTSA claims will be denied.

IV.  Intentional Interference with Contractual Relations

The elements "for the tort of intentional interference

with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." United Nat. Maint., Inc. v. San Diego Convention Center, Inc., 766 F. 3d 1002, 1006 (9th Cir. 2014) (citations and quotations omitted).

The FAC plausibly alleges each of the elements of an intentional interference with contractual relationship claim. First, plaintiff alleges plaintiff and CDI "entered into a user agreement in 2014" for CDI to access plaintiff's software and other services. (See FAC ¶ 33.) Second, plaintiff alleges that defendants knew of the contract between CDI and plaintiff as defendants discussed CDI's use of plaintiff's software and CDI shared reports from plaintiff's software with defendants. (See id. ¶¶ 40, 42, 74.) Third, plaintiff alleges in multiple paragraphs that defendants intentionally requested non-trade secret information about plaintiff's software which CDI was not allowed to share per its contract with plaintiff and used that information to create their own software for CDI in place of plaintiff's software. (See id. ¶¶ 42-43, 49-50, 53, 75-76.) Fourth, plaintiff alleges that CDI did share confidential information, in breach of the agreement between plaintiff and CDI, with defendants via email and verbal conversations and terminated its contract with plaintiff. (See id. ¶¶ 31, 42.) Fifth, plaintiff alleges that plaintiff "has suffered and will continue to suffer substantial damages in an amount to be proven

1 at trial" resulting from defendants' interference. (Id. ¶ 78.)
2 Accepting these allegations as true and drawing reasonable
3 inferences, the FAC states a plausible claim to relief for
4 intentional interference with contractual relations.
5 See Ashcroft, 556 U.S. at 678.

6 Though plaintiff has plausibly alleged its claim for
7 intentional interference with contractual relations, the court
8 must determine if CUTSA supersedes the claim. CUTSA provides the
9 exclusive civil remedy for trade secret misappropriation under
10 California law. Cal. Civ. Code § 3426.7. "[O]ther civil
11 remedies that are not based upon misappropriation of a trade
12 secret" and contractual or criminal remedies are not superseded.[3]
13 Cal. Civ. Code § 3426.7(b). CUTSA supersedes claims that are
14 based on the same "nucleus of facts as trade secret
15 misappropriation." See Waymo LLC v. Uber Techs., Inc., 256 F.
16 Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citing K.C. Multimedia,
17 Inc. v. Bank of America Tech. & Operations, 171 Cal. App. 4th
18 939, 958 (6d. Dist. 2009)).

19 Here, the FAC's intentional interference with
20 contractual relations claim alleges defendants induced CDI to
21 breach its confidentiality obligations and terminate its

---

[3] Courts use both the terms "preempt" and "supersede" to describe the displacement of causes of action by CUTSA. The California Supreme Court has noted that "the doctrine of preemption concerns whether a federal law has superseded a state law or a state law has superseded a local law," and therefore, "preempt" is not the proper term to use where "one provision of state law has displaced other provisions of state law." See Zengen, Inc. v, Comercia Bank, 41 Cal. 4th 239, 244 n.5 (2007). Hence, the court will use the term "supersede."

11

agreement with plaintiff "by requesting that CDI provide confidential, non-trade secret, information about the structure, functionality, and operation of [plaintiff's] software." (FAC ¶ 75.) Plaintiff's intentional interference with contractual relations claim focuses on "non-trade secret" information which is different than the "trade secret" upon which plaintiff's CUTSA claim relies. Whether CUTSA supersedes a claim when "non-trade secret" information is received by the defendants is a question that has yet to be determined in any court decision that is binding upon this court. Therefore, this court relies on decisions by the California Court of Appeal and an unpublished Ninth Circuit decision to determine this issue.[4]

Like the non-CUTSA claim in Silvaco Data Systems v. Intel Corporation, 184 Cal. App. 4th 210, 241-42 (6th Dist. 2010), the intentional interference with contractual relations claim "does not depend on the existence of a trade secret, but on" defendants intentionally inducing a breach or disruption of the contract between CDI and plaintiff. Id. "[T]he legal consequences of that act are not affected by the status of the information as a trade secret. Indeed, it may not, and need not, be a trade secret." Id. at 242 (emphasis in original).

The California Court of Appeal in Angelica Textile

---

[4] "A federal court applying California law must apply the law as it believes the California Supreme Court would apply it . . . . In the absence of a controlling California Supreme Court decision, the panel must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." Gravquick A/S v. Trimble Navigation Intern. Ltd., 323 F. 3d 1219, 1222 (9th Cir. 2003).

1  Services, Inc. v. Park, 220 Cal. App. 4th 495, 506-07 (4th Dist.
2  2013), adopted Silvaco's reasoning, and the Ninth Circuit cited
3  Angelica in an unpublished opinion when determining that a breach
4  of fiduciary duty claim based on an employee "sharing
5  confidential information with a competitor . . . does not require
6  that the confidential information qualify as a 'trade secret.'"
7  See Integral Dev. Corp. v. Tolat, 675 F. App'x 700, 704 (9th Cir.
8  2017) (determining supersession did not apply).
9           Interpreting the California Court of Appeal and Ninth
10 Circuit decisions, this court determines it is plausible for
11 defendants to have interfered with the contract between CDI and
12 plaintiff without it involving the "misappropriation of trade
13 secrets" as the claim is focused on "non-trade secret"
14 information.  See Cal. Civ. Code § 3426.7(b); (FAC ¶ 75.)
15 Therefore, CUTSA does not supersede plaintiff's intentional
16 interference with contractual relations claim and will not be
17 dismissed.
18          IT IS THEREFORE ORDERED that defendants' motion to
19 dismiss (Docket No. 55) be, and the same hereby is, DENIED.
20 Dated:  April 13, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE