UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>   Plaintiff,<br><br>  v.<br><br>MILK MOOVEMENT, INC., a foreign Corporation, and MILK MOOVEMENT LLC, a Delaware Limited Liability Company,<br><br>   Defendants. | No. 2:21-cv-02233 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS & MOTION TO STRIKE MILK MOOVEMENT, INC.'S COUNTERCLAIMS |

----oo0oo----

Dairy, LLC ("Dairy") initiated this action against Milk Moovement, Inc. and Milk Moovement, LLC alleging trade secret misappropriation under federal and California law, and intentional interference with contractual relations. (First Am. Compl. ("FAC") (Docket No. 48).) Defendant-counterclaimant Milk Moovement, Inc.[1] alleges the following counterclaims against

---

[1] The counterclaims are brought only by Milk Moovement, Inc., which is herein referred to as "Milk Moovement."

1

plaintiff-counterdefendant Dairy: (1) declaratory judgment of no protectable trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) declaratory judgment of no misappropriation under the Defend Trade Secrets Act, id.; (3) declaratory judgment of no protectable trade secret under the California Uniform Trade Secrets Act, California Civil Code § 3426.1; (4) declaratory judgment of no misappropriation under the California Uniform Trade Secrets Act, id.; (5) sham litigation in violation of the Sherman Act, 15 U.S.C. § 2; (6) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (7) false advertising under the California Business and Professions Code § 17500; (8) intentional interference with prospective economic advantage; (9) unfair competition, California Business and Professions Code § 17200; and (10) unjust enrichment.  (Countercls. (Docket No. 79).)

Dairy now moves to (1) strike Milk Moovement's first through fourth counterclaims for declaratory judgment; (2) dismiss Milk Moovement's fifth through tenth counterclaims; and (3) strike Milk Moovement's eighth counterclaim for intentional interference with prospective economic advantage via special motion under California's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, Cal. Civ. Proc. Code § 425.16.  (Dairy's Mem. ISO Mot. ("Dairy's Mot.") at 2 (Docket No. 83-1).)  The court analyzes each claim below.

I.   Declaratory Judgment (Counterclaims 1-4)

Dairy moves to strike Milk Moovement's first through fourth counterclaims for declaratory judgment pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)").  See Fed. R. Civ. P. 12(f).  Rule 12(f) authorizes the court to "strike from a

2

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Id.  Dairy argues the declaratory judgment counterclaims are redundant of Dairy's trade secret claims under federal and California law, and Milk Moovement's affirmative defenses.  (Dairy's Mot. at 33.)

"[A] dismissal of counterclaims [for declaratory relief] as redundant is not warranted simply because they concern the same subject matter or arise from the same transaction as the complaint."  Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange, No. 2:14-cv-00676-WBS, 2014 WL 3837434, at *6 (E.D. Cal. July 20, 2014) (citing City of Lindsay v. Sociedad Quimica y Minera de Chile S.A., No. 11-cv-0046-LJO, 2011 WL 2516159, at *3 (E.D. Cal. June 21, 2011)).  "A court should consider whether the counterclaims serve any useful purpose, and should strike a counterclaim "only when it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." Id. (quotation marks omitted).

Although Milk Moovement's counterclaims substantially mirror Dairy's claims, they are broader in scope.  For example, Dairy pleads that Milk Moovement misappropriated its pooling methodology which is allegedly a trade secret.  (FAC ¶¶ 55, 65.) In contrast, Milk Moovement seeks declaratory judgment that it did not receive or misappropriate "any Dairy trade secrets or confidential Dairy information."  (Countercls. ¶¶ 105-06, 116-17 (emphasis added).)  As a leading treatise explains, "it is very difficult to determine whether the declaratory-judgment counterclaim really is redundant prior to trial" and "the safer course . . . is to deny a request to dismiss a counterclaim for

3

declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." 6 Charles A. Wright, et al., Fed. Prac. & Proc. § 1406 (3d ed. 2022).

Because motions to strike are "often used as delaying tactics," they are "generally disfavored" and are rarely granted in the absence of prejudice to the moving party. Rosales v. Citibank, FSB, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); see also N.Y.C. Emps.' Ret. Sys. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) ("Where the moving party cannot adequately demonstrate . . . prejudice, courts frequently deny a motion to strike even though the offending matter was literally within one or more of the categories set forth in Rule 12(f).") (citation and internal quotation marks omitted).

Dairy has not shown it has or will suffer any real prejudice from Milk Moovement's declaratory judgment counterclaims. For example, there is no showing that the counterclaims "may confuse the jury." See J & J Sports Prods., Inc. v. Luhn, No. 2:10-cv-3229-JAM, 2011 WL 5040709, at *1 (E.D. Cal. Oct. 24, 2011) (citations omitted). Nor is there a showing that "a party may be required to engage in burdensome discovery around frivolous matters," as the parties will already be conducting discovery related to Dairy's trade secret claims. See id. Neither is there any indication that this is an extraordinary situation where the court should grant a motion to strike in the absence of prejudice to Dairy. Accordingly, the court will deny Dairy's motion to strike Milk Moovement's first through fourth counterclaims for declaratory judgment.

II. Sham Litigation under the Sherman Act (Counterclaim 5)

In order to state a claim for monopolization under the Sherman Act, 15 U.S.C. § 2, a plaintiff must prove that: (1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (citations omitted).

Milk Moovement's antitrust counterclaim under the Sherman Act is based upon its allegation that "Dairy has engaged in exclusionary and predatory conduct, including without limitation the filing and maintenance of sham litigation" -- Dairy's lawsuit in front of this court against defendants. (Countercls. ¶ 123.) Other than the initiation of this lawsuit, no other exclusionary or predatory conduct is specified in that counterclaim.

The Noerr-Pennington doctrine[2] "provides that those who petition any department of the government for redress," including the judicial branch, "are generally immune from statutory liability for their petitioning conduct." See B&G Foods N. Am., Inc. v. Embry, 29 F.4th 527, 535 (9th Cir. 2022). Under the Noerr-Pennington doctrine, an entity is immune from antitrust liability premised on the entity's litigation-related conduct unless the litigation-related conduct falls within the "sham" exception to the doctrine. See Kaiser Found. Health Plan,

---

[2] The doctrine takes its name from the first two cases that the Supreme Court considered in this jurisprudential line. See E. R.R. Presidents' Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).

Inc. v. Abbott Labs., Inc., 552 F.3d 1033, 1044 (9th Cir. 2009).

To fall under the sham exception, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). Only if the lawsuit is objectively baseless "may [the] court examine the litigant's subjective motivation" and "focus on whether the lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use of the governmental process -- as opposed to the outcome of the process." Id. at 60-61.

Milk Moovement alleges that (1) Dairy has a history of acquiring similar companies, (2) it unsuccessfully attempted to acquire Milk Moovement, and (3) when Dairy lost a customer, California Dairies, Inc., to Milk Moovement, it initiated a frivolous lawsuit. (Countercls. ¶¶ 19-24, 49.)

Specifically, Milk Moovement alleges that Dairy's lawsuit is a sham because after Dairy's customer, California Dairies, Inc., terminated its relationship with Dairy and signed an agreement with Milk Moovement, Dairy (1) "asserted meritless [trade secret misappropriation] claims . . . in bad faith, with no objective or subjective basis," and (2) "Dairy's tortious interference claim is likewise objectively baseless, and brought with the intention . . . to harm" Milk Moovement and "limit competition generally." (Id. ¶ 123.) Milk Moovement alleges that Dairy "knew it could not prove" its trade secret claims and that "Dairy's reasons for initiating this lawsuit are evidenced by its vexatious litigation tactics and continued prosecution of

6

1 | meritless" claims.  (Id. ¶ 131.)

2 | However, Milk Moovement's allegations do not sufficiently "detail[] the deficient bases for" the claims.  See In Re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 383 F. Supp. 3d 187, 231-32 (S.D.N.Y. Apr. 29, 2019) (finding that defendant's litigation was objectively baseless based on detailed allegations about the patents in defendant's previously unsuccessful patent lawsuits.)  Milk Moovement's slew of allegations about the "meritless" claims, (countercls. ¶¶ 62-81), are all arguments substantially similar to those made when Milk Moovement moved to dismiss Dairy's claims, which the court rejected when allowing Dairy's claims to proceed.  (See Order on Defs.' Mot. to Dismiss (Docket No. 76).)

Milk Moovement pleads that as a result of Dairy's lawsuit Milk Moovement's business has suffered.  (Countercls. ¶¶ 129-31.)  Even though a lawsuit by a competitor may result in harm to Milk Moovement's business, that does not inevitably render the lawsuit objectively baseless.

As the court already determined, Dairy has plead plausible facts to supports all three of its claims against Milk Moovement.  (See Order on Defs.' Mot. to Dismiss.)  Further, the timeline of events does not support that Dairy initiated this lawsuit without any realistic expectation of success on the merits.  (See FAC ¶ 41; Compl. (Docket No. 1).)  Dairy's representation that it did not initiate a lawsuit until a former employee of California Dairies, Inc. informed Dairy that reports from its software were sent to Milk Moovement is plausible.  (FAC ¶ 42; Dairy's Reply at 9 n.5 (Docket No. 98).)

Milk Moovement relies on Meridian Project Systems, Inc. v. Hardin Construction Company, LLC, 404 F. Supp. 2d 1213 (E.D. Cal. 2005) to support its argument that it has sufficiently alleged sham litigation. In that case, the court considered whether the filing of a complaint by plaintiff-counterdefendant was protected by the Noerr-Pennington doctrine or fell into the sham exception. Id. at 1221. The court concluded only one of the alleged eight claims "appeared to be" objectively baseless. Id. Because the entire lawsuit needed to be objectively baseless to fall into the sham exception, Noerr-Pennington immunity applied. Id. at 1221-22. The one claim "appeared to be" objectively baseless to Judge Damrell in that case because the counterclaimant alleged that the counterdefendant "and its officers knew and know that the claim is objectively baseless" and "brought this action for the purpose of interfering with [counterclaimant's] business rather than the purpose of obtaining the relief requested." Id. at 1221.

However, the court is not bound by another district judge's opinion on the sufficiency of allegations in a different case. This court does not find Meridian to be persuasive as applied to this action. The allegations by Milk Moovement are conclusory and do not sufficiently allege that Dairy's lawsuit is objectively baseless. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

For the foregoing reasons, Dairy's motion to dismiss Milk Moovement's sham litigation counterclaim under the Sherman

1 Act will be granted.

2 III. <u>False Advertising (Counterclaims 6-7)</u>

3    Milk Moovement's false advertising claims under the Lanham Act § 43(a)(1)(b) and California Business and Professions Code § 17500 may be analyzed together because the analysis under federal and state law is identical. See <u>SWKS Enters., Inc. v. Levonchuck</u>, No. CV 17-3327-R, 2018 WL 11351584, at *3 (C.D. Cal. Apr. 2, 2018) ("Where a claim for false advertising under § 17500 is premised on the same facts as a Lanham Act claim, the claims rise and fall together" (quotations and citations omitted)).

    To state a claim for false advertising, Milk Moovement must allege:

> "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products."

<u>Southland Sod Farms v. Stover Seed. Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997).

    Although the Ninth Circuit has not determined whether Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") applies to false advertising claims, this court will follow the lead of many district courts within the circuit which have applied the Rule

1  9(b) standard. See, e.g., SWKS Enters., Inc., 2018 WL 11351584
2  at *3; Factory Direct Wholesale, LLC v. iTouchless Housewares and
3  Prods., 411 F. Supp. 3d 905, 924 (N.D. Cal. Oct. 23, 2019). Milk
4  Moovement must "state with particularity the circumstances
5  constituting fraud or mistake." Fed. R. Civ. P. 9(b). Milk
6  Moovement must allege the "who, what, where, when, and how of the
7  misconduct charged" and "set forth what is false or misleading
8  about a statement, and why it is false." See Vess v. Ciba-Geigy
9  Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and
10 citations omitted).

11         Milk Moovement's false advertising counterclaims are
12 based upon two statements, "among others," on Dairy's website
13 that Dairy's platform is: (1) "trusted by over[3] 80% of the Dairy
14 Food's Top 100," and (2) "touches 100 billion pounds of milk each
15 year."[4] (Countercls. ¶¶ 83, 135, 144.) Milk Moovement alleges
16 these statements are false because it knows of at least one
17 customer in the Dairy Food's Top 100 List, California Dairies,
18 Inc., who has terminated its relationship with Dairy and that
19 Dairy is "double-counting the pounds of milk." (Id. ¶¶ 84, 88.)

---

[3] Milk Moovement at various points in its counterclaims quotes this allegedly false statement but does not always include the word "over" in the statement. (Compare Countercls. ¶ 83, with id. ¶¶ 135, 144.) However, the screenshot Milk Moovement includes in its counterclaims of the statement on Dairy's website contains "over." (Id. ¶ 83.) Therefore, the court will rely on the statement alleged as "trusted by over 80% of Dairy Food's Top 100," to conduct its analysis.

[4] Dairy requests that the court judicially notice a United States Department of Agriculture report on milk production in the United States in 2020. (Docket No. 84.) The court does not rely on the report at this stage in the proceedings, and therefore the request is denied as moot.

However, these allegations do not sufficiently plead "why" and "how" these statements are false under Rule 9(b). See Vess, 317 F.3d at 1106. Even if one customer on the Dairy Food's Top 100 list terminated its relationship with Dairy, it is not reasonable for the court to infer that the "over 80%" number in the statement is false. See Ashcroft, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, Milk Moovement's vague allegation about "double-counting," without any allegations to explain what the term is referring to, is insufficient to allege that the number of pounds of milk is inaccurate under Rule 9(b).

Further, the statements are mere puffery, and therefore non-actionable under the Lanham Act. "Whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion." Newcal Indus., Inc. v. Ikon Office Sol., 513 F.3d 1038, 1053 (9th Cir. 2008). Generally, "a statement that is quantifiable" and "specific" may be actionable, "while a general, subjective claim about a product is non-actionable puffery." Id. Here, the statements include the words "trusted" and "touch" which are vague and general words rendering the statements to be mere puffery. The statements "say nothing about the specific characteristics" of Dairy's software. Punian v. Gillette Co., No. 14-cv-05028-LHK, 2016 WL 1029607, * 9 (N.D. Cal. Mar. 15, 2016). These statements are similar to those which other courts have concluded are non-actionable puffery. See, e.g., L.A. Taxi

11

Coop., Inc. v. Uber Techs., 114 F. Supp. 3d 852, 862 (N.D. Cal. July 17, 2015) ("'BACKGROUND CHECKS YOU CAN TRUST'. . . is a general, subjective statement . . . [and] therefore non-actionable puffery"); Punian, 2016 WL 1029607 at *8-9 (defendant's statement of "A power solution consumers can trust" was nonactionable puffery).

      Accordingly, Dairy's motion to dismiss Milk Moovement's false advertising claims will be granted.

IV. Intentional Interference with Prospective Economic Advantage (Counterclaim 8)

      Dairy moves to dismiss and to strike Milk Moovement's counterclaim for intentional interference with prospective economic advantage. The court will first analyze whether the counterclaim will be dismissed, and will then determine whether the counterclaim will be stricken under California's anti-SLAPP statute.

    A. Motion to Dismiss

      Dairy argues the counterclaim for intentional interference with prospective economic advantage must be dismissed because it is based upon the filing of Dairy's lawsuit against defendants and is therefore barred by California's statutory litigation privilege. See Cal. Civ. Code § 47(b). The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990).

The filing of a legal action is "clearly protected by the litigation privilege" and cannot be the basis for Milk Moovement's intentional interference with prospective economic advantage claim.  Action Apartment Assn., Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1249 (2007).

Milk Moovement argues that the counterclaim is not barred because the litigation brought by Dairy is a sham.  (Milk Moovement's Opp'n at 31 (Docket No. 91).)  However, there is no "sham" exception to the California litigation privilege comparable to the exception for Noerr-Pennington immunity discussed above.  See Kane v. DeLong, No. C-12-5437, 2013 WL 1149801, at *12 n.5 (N.D. Cal. Mar. 19, 2013); see also NextG Networks, Inc. v. NewPath Networks, LLC, No. C 08-1565, 2008 WL 11399757, at *3 (N.D. Cal. Oct. 15, 2008) (determining that there is no sham exception to California's litigation privilege which is "unsurprising given the California Supreme Court's characterization of the privilege as absolute").

Milk Moovement heavily relies on Meridian, Catch Curve, Inc. v. Venali, Inc., 519 F. Supp. 2d 1028 (C.D. Cal. 2007), and Hi-Top Steel Corporation v. Lehrer, 24 Cal. App. 4th 570 (1994) in support of its argument.  However, none of those cases created or applied a sham exception to the California litigation privilege.

In Meridian, the counterclaimant alleged claims for intentional interference with prospective economic advantage and unfair business practices based on communications the counterdefendants had with counterclaimant's customers after the initial litigation was filed.  Meridian, 404 F. Supp. 2d at 1223.

1    The court considered whether those communications were protected
2    by the California litigation privilege and concluded that the
3    communications were not made "in the course of a judicial
4    proceeding to achieve the objects of litigation," but instead
5    "merely an effort to discourage the customers." Id.  Therefore,
6    the "anti-competitive conduct would not be privileged under §
7    47(b)." Id.  The court did not make a determination regarding a
8    sham exception to the California litigation privilege.  See id.
9    Whether a communication falls within the definition of what is
10   protected by the California litigation privilege is a different
11   inquiry than what the scope of the California litigation
12   privilege is when it does protect the communication.  Here, the
13   filing of a complaint is clearly a protected communication made
14   in a judicial proceeding, and therefore, Meridian is
15   inapplicable.  Silberg, 50 Cal. 3d at 212.
16             In Catch Curve, plaintiff-counterdefendant initiated a
17   patent infringement action against defendant-counterclaimant.
18   Catch Curve, 519 F. Supp. 2d at 1032.  The counterclaimant
19   alleged tortious interference claims based on the
20   counterdefendant's conduct of sending cease-and-desist letters to
21   counterclaimant's customers.  Id. at 1034.  The counterdefendants
22   in that case moved to strike the claims under anti-SLAPP and
23   argued that the cease-and-desist letters were protected by the
24   California litigation privilege.  Id.  Judge Pregerson stated in
25   dicta that "after the claim construction hearing" on the patents,
26   if the court decided the counterdefendant's patent infringement
27   action "meets the requirement for sham litigation, the related
28   conduct of sending cease-and-desist letters . . . will not be

14

protected as an act in furtherance of the [counterdefendant's] right of petition or free speech . . . [and an] Anti-SLAPP motion to strike the tortious interference claims will fail." Id. However, the court did not determine in that case whether the California litigation privilege applied or if there was a sham exception to it. See id. The inquiry of whether conduct is "in furtherance of [one's] right to free speech under the United States or California Constitution" for the purposes of anti-SLAPP is different from the inquiry of whether a sham exception applies to the California litigation privilege. See Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003).

Finally, in Hi-Top the court determined that the sham exception to Noerr-Pennington immunity is not inconsistent with California's constitution. Hi-Top, 24 Cal. App. 4th at 579. The court did not state that there is a sham exception to the California litigation privilege, nor is the California litigation privilege even mentioned in that court's opinion.

None of Milk Moovement's cited cases create or apply a sham exception to the California litigation privilege. Even if there were a sham exception to the California litigation privilege, as the court stated above, Milk Moovement has not properly alleged that Dairy's lawsuit is a sham. Accordingly, Dairy's motion to dismiss Milk Moovement's counterclaim for intentional interference with prospective economic advantage will be granted.

B. Motion to Strike

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." Vess v. Ciba-

Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003).  Dairy must first show that Milk Moovement's "suit arises from an act by [Dairy] made in connection with a public issue in furtherance of [its] right to free speech under the United States or California Constitution."  Batzel, 333 F.3d at 1024.  "The burden then shifts to" Milk Moovement, id., who "must show a reasonable probability of prevailing on [its] claims for those claims to survive dismissal."  See Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress, 890 F.3d 828, 833 (9th Cir. 2018) (quotations omitted).

Where an anti-SLAPP motion is made at the pleading stage, challenging the legal sufficiency of a claim, the second part of the analysis is identical to the analysis performed in evaluating a motion to dismiss under Rule 12(b)(6).  Id. at 834.  Accordingly, where a court concludes that a plaintiff's complaint fails to satisfy the 12(b)(6) standard, the only remaining question is whether the suit arises from "an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech."

With respect to the first prong, an "'act in furtherance of a person's right of petition or free speech' includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ."  Cal. Civ. Proc. Code § 425.16(e).  Milk Moovement's counterclaim for intentional interference with prospective economic advantage is alleged based on Dairy filing its trade secret misappropriation claims.  (Countercls. ¶ 154.)  "A claim for relief filed in federal district court indisputably

16

is a 'statement or writing made before a . . . judicial proceeding.'" Navellier v. Sletten, 29 Cal. 4th 82, 90 (2002) (quoting Cal. Civ. Proc. Code § 425.16 (e)(1)). Therefore, Dairy's filing of its trade secret misappropriation claims is an act in furtherance of its right of petition or free speech and cannot be the basis of Milk Moovement's counterclaims against it. Accordingly, the first prong of the anti-SLAPP inquiry is met.

The second prong of the anti-SLAPP inquiry is also met because Milk Moovement could not show a likelihood of success on the merits as its intentional interference with prospective economic advantage counterclaim is barred by the California litigation privilege. See Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1263 n. 7 ("[While] 'the two statutes are not substantively the same,' . . . [i]f an allegedly defamatory statement is privileged under section 47, then a plaintiff could not show a likelihood of success on the merits, the second step in the anti-SLAPP inquiry.")

Accordingly, Dairy's anti-SLAPP motion to strike Milk Moovement's counterclaim for intentional interference with prospective economic advantage will be granted.

V. Unfair Competition Law (Counterclaim 9)

California's Unfair Competition Law ("UCL") "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Grp., Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, et seq.). Milk Moovement's UCL counterclaim is derivative of its sham litigation, false advertising, and tortious interference counterclaims and is also

1  based upon Dairy's "other unfair trade practices." (Countercls.
2  ¶ 159.) The underlying counterclaims have been dismissed, and
3  therefore, Milk Moovement's UCL counterclaim must also be
4  dismissed to the extent it is derivative of them.
5         For the "other unfair trade practices," Milk Moovement
6  must allege a practice which "offends an established public
7  policy or . . . is immoral, unethical, oppressive, unscrupulous
8  or substantially injurious to consumers." S.Bay Chevrolet v.
9  Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999).
10 Milk Moovement does not allege separate and apart from the
11 counterclaims dismissed above what the "other unfair trade
12 practices" are that its UCL counterclaim is based upon. Milk
13 Moovement argues that even if the conduct described within the
14 counterclaims is insufficient to state a violation of another
15 law, it may still be actionable under the UCL. (Milk Moovement's
16 Opp'n at 28-29.) However, the conduct alleged as part of the
17 other counterclaims does not sufficiently allege the type of
18 conduct defined to be an "unfair trade practice" for purposes of
19 the UCL. Accordingly, Dairy's motion to dismiss Milk Moovement's
20 UCL counterclaim will be granted.
21 VI. Unjust Enrichment (Counterclaim 10)
22         "There is not a standalone cause of action for 'unjust
23 enrichment' which is synonymous with restitution." Astiana v.
24 Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015).
25 Rather, it "describe[s] the theory underlying a claim that a
26 defendant has been unjustly conferred a benefit through mistake,
27 coercion, or request" and the "return of that benefit is
28 typically sought in a quasi-contract cause of action." Id.

"When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." Id. (citations and quotations omitted). "To allege unjust enrichment as an independent cause of action, [Milk Moovement] must show that [Dairy] received and unjustly retained a benefit at [Milk Moovement's] expense." ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016).

In Astiana, the Ninth Circuit determined that the plaintiff's allegation "that she was entitled to relief under a 'quasi-contract' cause of action because [defendant] had 'enticed' plaintiffs to purchase their product through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result," was sufficient. Astiana, 783 F.3d at 762. The relationship in Astiana upon which a quasi-contract claim was based was that of a manufacturer and consumer of a product. Id. at 756. However, unlike the plaintiff in Astiana, Milk Moovement does not sufficiently allege a quasi-contract claim because it does not allege a relationship between itself and Dairy "upon which a quasi-contract claim could be based . . . [like] a consumer buying an allegedly defective product or an employee providing services under the impression that they will accrue a reward." See Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc., No. 1:17-cv-01207 DAD BAM, 1:17-cv-01056 DAD BAM (consolidated), 2021 WL 2188138, at *14 (E.D. Cal. May 28, 2021) (a relationship between two competing companies upon which a quasi-contract claim could be based was not alleged). Nor does Milk Moovement allege any "mistake, coercion, or request" that led to a "benefit [Dairy] received and unjustly

19

1  retained" at Milk Moovement's detriment.  See Astiana, 783 F.3d
2  at 762; ESG Capital, 828 F.3d at 1038.  Milk Moovement merely
3  incorporates by reference all of its other allegations and
4  alleges in conclusory terms that "Dairy has been unjustly
5  enriched to [Milk Moovement] detriment."  (Countercls. ¶ 163.)
6          For those reasons, Dairy's motion to dismiss Milk
7  Moovement's counterclaim for unjust enrichment will be granted.
8          IT IS THEREFORE ORDERED that:
9          (1) Dairy's motion to strike Milk Moovement's first
10 through fourth counterclaims for declaratory judgment be, and the
11 same hereby is, DENIED.
12         (2) Dairy's motion to dismiss Milk Moovement's fifth
13 through tenth counterclaims be, and the same hereby is, GRANTED.
14         (3) Dairy's motion to strike under California's anti-
15 SLAPP statute Milk Moovement's eighth claim for intentional
16 interference with prospective economic advantage be, and the same
17 hereby is, GRANTED.
18         Milk Moovement has twenty days from the date of this
19 Order to file amended counterclaims, if it can do so consistent
20 with this Order.

Dated:  July 1, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE