UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign corporation,<br><br>Defendant. | No.  2:21-cv-02233 WBS AC<br><br><u>ORDER</u> |

Before the court is defendant Milk Moovement's motion for a protective order staying discovery (ECF No. 93) and an associated request to seal documents (ECF No. 110).  The joint statement is located at ECF No. 109.  For the reasons set forth below, the motion for a protective order is DENIED.  The request to seal is GRANTED.

**I.     RELEVANT BACKGROUND**

A.     <u>Factual Allegations of the First Amended Complaint</u>

Plaintiff brings this action for alleged trade secrets misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade Secrets Act, as well as a claim for intentional interference with contractual relations.  ECF No. 48 (First Amended Complaint).  The following factual allegations are taken from plaintiff's amended complaint, incorporated here for ease of reference.  ECF No. 48.

1

Plaintiff, by and through its trade name of Dairy.com, is the leading provider of technology, services, and intelligence platforms to the dairy industry in the United States. Id. at 2. Dairy.com's proprietary software platform enables dairy industry businesses to accurately manage all the complexities of paying dairy producers and haulers, capture milk manifest data in real-time, allocate loads of milk to customers, coordinate the movements of dairy haulers, and comply with federal regulations. Id. The company also provides consulting services on topics like milk marketing and processing, and dairy policy and pricing. Id.

The dairy market is heavily regulated and there are several Federal Milk Marketing Orders (FMMOs) that regulate minimum milk prices paid to dairy producers (i.e., dairy farmers) by milk handlers (e.g., processing plants). Id. Each month, the U.S. Department of Agriculture determines a single weighted average price to be paid to producers for their milk that is part of a milk "pool" under a particular region's marketing order. Id. FMMO pools are designed to attract an adequate milk supply to meet consumer fluid milk needs by allowing dairy farmers to receive a uniform price for their milk regardless of how it was used. Id. Dairy has software that allows users to determine the correct amounts to pay milk producers and generate reports in compliance with the various FMMOs, called its "producer payroll" application. Id. at 2-3. The elements of Dairy's producer payroll application that enable Dairy's clients to make decisions easily and efficiently about what milk to pool, designate milk for pooling, and generate accurate reports and invoices to comply with the FMMOs are amongst Dairy's trade secrets. Id. at 3.

Defendant Milk Moovement is a Canadian company founded in 2018 which utilizes a software platform focused on the Canadian dairy industry. Id. On plaintiff's information and belief, as of September 2021, Milk Moovement did not have its own fully functional producer payroll application capable of facilitating compliance with U.S. dairy regulations. Id. Dairy alleges that in September 2021, Milk Moovement induced one of Dairy's customers, California Dairies, Inc. ("CDI") to breach its agreement with Dairy and share with Milk Moovement confidential and proprietary information about the structure and functionality of Dairy's software, including copies of fifteen reports generated from Dairy's producer payroll application. Id. On information and belief, the reports and explanations that Milk Moovement received regarding the

operation of Dairy's software enabled Milk Moovement to misappropriate Dairy's trade secrets and create its own competitive producer payroll system that implements Dairy's unique pooling functionality. Id.

B. Description of Trade Secrets in First Amended Complaint

The following is taken from Dairy's first amended complaint, incorporated here for ease of reference. ECF No. 48. Dairy asserts that FMMOs have created one of the most complicated commodity pricing regimes in all of U.S. agriculture. ECF No. 48 at 5. FMMO "pools" are designed to harmonize milk prices for farmers across a similar geography. Id. Each month, some dairy handlers will have to pay into the pool and others will withdraw funds from the pool when they pay producers that month's uniform price for fluid milk. Id. In general, handlers look to avoid "paying into the pool" (while at the same time managing multiple other constraints) to avoid a direct cost and allow the handler to either (1) pay that money to their farms, or (2) keep that money to improve the profits of their operation. Id. Pursuant to the FMMO, all Class I milk must be pooled, but with other classes of milk, handlers can generally elect whether to participate in the pool. Id. Typically, handlers try to obtain the best price for their producer's milk and make pooling decisions based on whether the market price for a particular class of milk is higher or lower than the uniform price. Id.

Deciding what milk to pool requires tracking many different variables over the course of several months. The FMMOs impose an array of rules on whether, or under what conditions, handlers can pool milk. Whether milk can be pooled depends on, among other things, the type of plant processing the milk, how much milk the handler "pooled" in the previous month, and whether the handler diverted milk to other plants participating in the pool. Id. at 6. Dairy handlers must submit monthly reports to an FMMO market administrator detailing their total milk receipts by class and specifying how much milk was pooled. Handlers must also track and report to producers on a monthly basis (1) the total pounds of milk received from that producer by date, (2) the components (e.g., amount of butterfat and protein) contained in the producer's milk, (3) the minimum payments required to be made to the producer under the FMMO, (4) the rate used to make payments to the producer (if not the minimum rate), (5) the

amount and nature of any deductions made by the handler, and (6) the net amount of payments to the producer.  Id.

Dairy's producer payroll application helps dairy handlers comply with FMMOs by managing the entire process of scheduling, tracking, collecting relevant data, paying farmers, and billing customers for milk movements in a particular time period.  Id.  Additionally, the software generates key reports to enable handlers to make pooling decisions and report them to an FMMO market administrator.  Id.  This application enables Dairy's clients to easily and efficiently maximize the benefits of FMMO pool participation.  Id.  This is accomplished by supporting the pool versus non-pool decisions that dairy handlers make each month around FMMO participation.  Id.  Dairy's software includes and implements a methodology for handling FMMO pooling that is unique in the industry and is Dairy's trade secret.

The proprietary pooling functionality in Dairy's software enables Dairy's clients to maximize the benefits of FMMO pooling participation by enabling them to make more economically advantageous pooling decisions and accurately document those decisions for reporting purposes.  Id.  Dairy releases new versions of its producer payroll application every 6-8 weeks because it is constantly making improvements to its software based on customer feedback.  Id. at 7.  With respect to the pooling functionality of Dairy's software in particular, Dairy has made major revisions to its pooling features at least four times and regularly releases minor improvements and bug fixes.  Id.

C.  Procedural History

This case was filed on December 2, 2021.  ECF No. 1.  An early motion for a temporary restraining order and a preliminary injunction motion were denied.  ECF Nos. 8, 17, 31, 57.  Plaintiff filed a first amended complaint on February 8, 2022.  ECF No. 48.  Defendants moved to dismiss all claims in the amended complaint.  ECF No. 55.  The motion to dismiss was denied.  ECF No. 76.  In the order denying dismissal, U.S. District Judge William B. Shubb analyzed whether plaintiff met its obligation to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  Id. at 4 (quoting Imax Corp. v. Cinema

Tech., Inc., 152 F. 3d 1161, 1164–65 (9th Cir. 1998)).  Judge Shubb concluded that it did, reasoning:

> The FAC does more than describe the trade secret in "broad, categorial terms." See Albert's Organics, Inc. v. Holzman, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020) (holding that trade secrets were not pled with sufficient particularity because categories such as "supplier information, pricing, [and] financing" were too broad). The FAC does not broadly state that plaintiff's software is its trade secret, but rather the "description pertains to a single, distinct system and the components therein," specifically the pooling methodology within the "producer payroll application." See Inteliclear LLC v. ETC Global Holdings, No. 2:18-v-10342, 2019 WL 3000648, at *2 (C.D. Cal. Apr. 5, 2019).

ECF No. 76 at 5.  Judge Shubb concluded that "the FAC here identifies the pooling methodology as the alleged trade secret, and therefore, distinguishes between the confidential information and the trade . . . the court concludes that the FAC sufficiently identifies the trade secret with particularity without spelling 'out the details of the trade secret' as doing so 'would mean that the complainant would have to destroy the very thing for which [it seeks] protection.'" Id. at 7 (quoting TMX Funding, Inc. v. Impero Techs. Inc., No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010)).

On May 25, 2022, plaintiff filed a motion to compel discovery and for sanctions.  ECF No. 86.  On June 6, 2022, defendant filed the motion for a protective order staying all discovery at issue here.  ECF No. 93.  On June 8, 2022, plaintiff filed a second motion to compel.  ECF No. 96.  On July 21, 2022, defendant filed an answer with amended counterclaims.  ECF No. 111.  A motion to dismiss the amended counterclaims is now pending.  ECF No. 113.  On August 16, 2022, plaintiff filed a third motion to compel.  ECF No. 117.

## II.     LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, the method available to limit the breadth or use of a discovery request is a motion for a protective order under Fed. R. Civ. P. 26(c). This rule states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for

5

> good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c). Options available to the court include, in part, "forbidding the disclosure or discovery; [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Id. District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211–12 (9th Cir. 2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. In re Roman Catholic Archbishop of Portland, 661 F.3d 417, 424 (9th Cir. 2011) (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003)).

### III.   ANALYSIS

Defendant seeks a protective order staying discovery until such time as plaintiff properly defines its trade secrets. ECF No. 109 at 7. The court agrees with plaintiff that its trade secret claims are sufficiently particularized for discovery to proceed.

"[P]laintiffs must identify their alleged trade secrets with 'reasonable particularity' prior to commencing discovery." InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 658 n.1 (9th Cir. 2020) (citing Section 2019.210 and stating that federal courts apply the state provision in federal cases). California's trade secret law states:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal. Civ. Proc. Code § 2019.210). This requirement originated in a 1968 California Court of Appeals case, Diodes, Inc. v. Franzen, which recognized the conflict between a trade secret plaintiff's desire not to reveal the specifics of a trade secret in a complaint, and a trade secret defendant's concern that an insufficiently specific trade secret complaint could lead to overbroad

6

discovery. 260 Cal. App. 2d 244, 252 (1968). The Diodes court sought to split the difference and held that "[b]efore a defendant is compelled to respond to a complaint based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Id.

California courts have identified four main objectives underlying § 2019.210:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

Perlan Therapeutics v. Superior Court, 178 Cal. App. 4th 1333, 1343 (2009) (internal citations omitted).

Whether trade secrets are particularized enough to survive a motion to dismiss and whether they are particularized enough for discovery to commence are two separate questions. "A finding that allegations are sufficient to survive a motion to dismiss does not mean the trade secret allegations are sufficient under Section 2019.210." M/A-COM Tech. Sols., Inc. v. Litrinium, Inc., No. SA CV 19-00220-JVS (JDEx), 2019 WL 4284523, at *3 (C.D. Cal. June 11, 2019), see also Gatan, Inc. v. Nion Co., No. 15-CV-01862-PJH, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (surviving a motion to dismiss does "not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210"); Space Data Corp. v. X, No. 16-CV-03260-BLF, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017) (Section 2019.210 is a separate issue from pleading requirements, and plaintiff was not required to define every detail of its alleged trade secrets at the pleading stage).

Defendant argues it "is impossible to discern Dairy's alleged trade secrets: Dairy has not identified what the methodology is that constitutes its 'methodology for handing FMMO pooling'

(FAC at ¶ 23)." Id. at 11.  Because it is not sufficiently descriptive, according to defendant, the "FAC does not put Milk Moovement on notice of what Dairy's purportedly trade secret methodology actually is, and Dairy's description of the capability of its software does not separate it from what is already publicly known in the industry." Id. at 12.  In the order on the motion to dismiss, Judge Shubb concluded that "the FAC sufficiently identifies the trade secret with particularity without spelling 'out the details of the trade secret' as doing so 'would mean that the complainant would have to destroy the very thing for which [it seeks] protection. See TMX Funding, Inc. v. Impero Techs. Inc., No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010).  Defendants can ascertain that the trade secret is the pooling methodology used in the 'producer payroll application' within plaintiff's software." ECF No. 76 at 7.

      The undersigned finds that Judge Shubb's detailed analysis of the trade secret's particularity, though made at the motion to dismiss stage, also accounts for the boundaries of Section 2019.210.  Accordingly, while this discovery ruling is independent, Judge Shubb's analysis necessarily informs the outcome.  Judge Shubb held Dairy's "repeated descriptions of the alleged trade secret all sufficiently 'identify at least one trade secret with particularity' and 'permit[] the defendant[s] to ascertain at least the boundaries within which the secret lies.'" Id. at 5 (quoting InteliClear, 978 F. 3d at 659 and Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).  While defendant is correct that the standard at the motion to dismiss stage is less demanding than at the discovery stage, in this case Judge Shubb's thorough analysis also demonstrates that the discovery stage standard is satisfied.  ECF No. 76.  The court has reviewed defendant's contentions but finds no reason to further delay discovery.  The motion for a protective order is DENIED.

////
////
////
////
////

### IV.  CONCLUSION

The court finds that plaintiff has sufficiently stated its trade secrets for the purpose of commencing discovery and the motion for a protective order (ECF No. 93) is DENIED. The accompanying motion to seal (ECF No. 110) is GRANTED.

IT IS SO ORDERED.

DATED: August 19, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE