UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MILK MOOVEMENT, INC., a foreign Corporation, and MILK MOOVEMENT LLC, a Delaware Limited Liability Company,<br><br>　　　　Defendant. | No. 2:21-cv-02233 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS & MOTION TO STRIKE MILK MOOVEMENT, INC.'S FIRST AMENDED COUNTERCLAIMS</u> |

----oo0oo----

　　　Dairy, LLC ("Dairy") initiated this action against Milk Moovement, Inc. and Milk Moovement, LLC alleging trade secret misappropriation under federal and California law, and intentional interference with contractual relations.  (First Am. Compl. (Docket No. 48).)  Milk Moovement alleges the following counterclaims against plaintiff-counterdefendant Dairy: (1) declaratory judgment of no protectable trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) declaratory

judgment of no misappropriation under the Defend Trade Secrets Act, id.; (3) declaratory judgment of no protectable trade secret under the California Uniform Trade Secrets Act, California Civil Code § 3426.1; (4) declaratory judgment of no misappropriation under the California Uniform Trade Secrets Act, id.; and (5) sham litigation in violation of the Sherman Act, 15 U.S.C. § 2.  (Am. Countercls. (Docket No. 111).)[1]

Dairy again moves to dismiss Milk Moovement's fifth counterclaim: sham litigation under the Sherman Act.  Dairy argues Milk Moovement failed to amend its counterclaim consistent with the court's previous order and, instead, relies on allegations similar to those the court has already rejected. (Pl.'s Mot. to Dismiss Am. Countercls. (Docket No. 113).)

I.  Sham Litigation under the Sherman Act (Counterclaim 5)

Milk Moovement's antitrust counterclaim under the Sherman Act is based upon its allegation that the "purpose of Dairy's sham lawsuit [i]s to misuse the courts as a vehicle for carrying out its anticompetitive scheme[,] [including] impos[ing] substantial litigation costs on [Milk Moovement] . . . and [] spread[ing] unwarranted fear in the marketplace about [Milk Moovement] to dissuade customers."  (Am. Countercls. ¶ 117.)[2]

---

[1] In a previous order, this court denied Dairy's motion to strike Milk Moovement's first through fourth counterclaims for declaratory judgment.  (See Order on Pl.'s Mot. to Dismiss Countercls. (Docket No. 105).)  Dairy does not ask the court to reconsider that order.

[2] In order to state a claim for monopolization under the Sherman Act, 15 U.S.C. § 2, a plaintiff must prove that: (1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust

A. <u>Sham Exception to the Noerr-Pennington Doctrine</u>

The <u>Noerr-Pennington</u> doctrine[3] "provides that those who petition any department of the government for redress," including the judicial branch, "are generally immune from statutory liability for their petitioning conduct." See <u>B&G Foods N. Am., Inc. v. Embry</u>, 29 F.4th 527, 535 (9th Cir. 2022); see also <u>Cal. Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972) (explaining that "[t]he right of access to the courts is . . . one aspect of the right to petition). Under the <u>Noerr-Pennington</u> doctrine, an entity is immune from antitrust liability premised on the entity's litigation-related conduct unless the litigation-related conduct falls within the "sham" exception to the doctrine. See <u>Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.</u>, 552 F.3d 1033, 1044 (9th Cir. 2009).

To fall under the sham exception, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." <u>Prof. Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60 (1993). Only if the lawsuit is objectively baseless "may [the] court examine the litigant's subjective motivation" and "focus on whether the lawsuit conceals an attempt to interfere

---

injury. <u>SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.</u>, 88 F.3d 780, 783 (9th Cir. 1996) (citations omitted).

[3] The doctrine takes its name from the first two cases that the Supreme Court considered in this jurisprudential line. See <u>E. R.R. Presidents' Conf. v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), and <u>United Mine Workers of Am. v. Pennington</u>, 381 U.S. 657 (1965). The doctrine has expanded "to preclude claims other than those brought under antitrust laws." <u>Or. Nat. Res. Council v. Mohla</u>, 944 F.2d 531, 534 (9th Cir. 1991).

1  directly with the business relationships of a competitor . . .
2  through the use of the governmental process -- as opposed to the
3  outcome of the process." Id. at 60-61.
4       Previously Milk Moovement alleged that that (1) Dairy
5  has a history of acquiring similar companies, (2) it
6  unsuccessfully attempted to acquire Milk Moovement, and (3) when
7  Dairy lost a customer, California Dairies, Inc., to Milk
8  Moovement, it initiated a frivolous lawsuit. (Countercls. ¶¶ 19-
9  24, 49 (Docket No. 79).) The court found that those sham
10 litigation allegations were insufficient because the allegations
11 about the "meritless" claims were "substantially similar" to the
12 claims made when Milk Moovement moved to dismiss Dairy's claims,
13 which the court rejected when allowing Dairy's claims to proceed.
14 (See Order on Pl.'s Mot. to Dismiss Countercls. (Docket No.
15 105).) The court also found that the allegations by Milk
16 Moovement were "conclusory and d[id] not sufficiently allege that
17 Dairy's lawsuit [wa]s objectively baseless." (Id.)
18      In addition to the same prior allegations, Milk
19 Moovement now alleges that (1) Dairy timed the lawsuit to be most
20 disruptive to Milk Moovement's business, rather than protect
21 allegedly vulnerable trade secrets; (2) Dairy knew California
22 Dairies shared the reports with Milk Moovement for over a month
23 before filing the lawsuit, suggesting Dairy knew there was no
24 basis for their trade secrets claims and only brought the lawsuit
25 to advance their monopoly; and (3) the court's prior orders
26 denying Dairy's motions for a TRO and preliminary injunction
27 supports finding that Dairy's lawsuit is a sham. (Am.
28 Countercls. ¶¶ 21-26, 51, 118, 122-123.)

These new allegations fail to demonstrate that Dairy's allegations are "objectively baseless." See Prof. Real Estate Inv'rs, Inc., 508 U.S. at 60. Milk Moovement's allegation that Dairy's timing demonstrates that the lawsuit is a sham is not materially different from Milk Moovement's prior allegations which the court already found insufficient. (See Am. Countercls. ¶ 118; Def. Opp'n Mot. to Dismiss Am. Countercls. at 54:13-57:4 (Docket No. 119).)

Milk Moovement's allegation that Dairy initiated the lawsuit to "maintain monopoly power" only after "[Milk Moovement] rebuffed Dairy's attempts to continue to monopolize the market through an acquisition" may well be true. (Am. Countercls. ¶ 117.) However, the Supreme Court has repeatedly stated that anticompetitive intent "cannot affect the objective prong of Noerr's sham exception." See Prof. Real Estate Inv'rs, Inc., 508 U.S. at 63; E. R.R. Presidents' Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 140 (1961) (explaining that a petition "directed toward obtaining governmental action" is "not at all affected by any anticompetitive purpose [a party] may have had"); United Mine Workers of Am. v. Pennington, 381 U.S. 657, 670 (noting that genuine petitioning activities are "not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act").

Finally, Milk Moovement's argument that the court's previous orders denying Dairy's motions for a TRO and a preliminary injunction support their claim that Dairy's lawsuit is a sham is fallacious. (See Am. Countercls. ¶¶ 122-123.) The standard applied to motions for a temporary restraining order or

1  a preliminary injunction are not the same as those for the motion
2  that is now before this court.  The court denied both the motion
3  for a TRO and preliminary injunction because plaintiff had not
4  shown a likelihood of success on the merits.  (See Docket Nos.
5  17, 59.)  Specifically, plaintiff's evidence at the preliminary
6  injunction phase did not sufficiently show that it took
7  reasonable measures to keep the information secret and that
8  defendant misappropriated the alleged trade secret.  (See Docket
9  No. 59.)

10     Dairy has sufficiently plead that it could
11 "realistically expect to secure favorable relief," see Prof. Real
12 Estate Inv'rs, Inc., 508 U.S. at 53.  Sufficient pleading
13 "precludes a finding that an antitrust defendant has engaged in
14 sham litigation" because "an objectively reasonable effort to
15 litigate cannot be sham regardless of subjective intent."  See
16 id. at 62, 67.  The court has already found Dairy's complaint
17 sufficiently plausible.  (See Order on Def.s' Mot. to Dismiss
18 (Docket No. 76).)

19     B.   Heightened Pleading Standard

20     The Ninth Circuit applies a heightened pleading
21 standard "where a claim involves the right to petition
22 governmental bodies under Noerr-Pennington."  Or. Nat. Res.
23 Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991).  The
24 heightened pleading standard is "necessary to avoid a chilling
25 effect on the exercise of [one's] First Amendment right" to
26 petition.  Id. (quoting Franchise Realty Interstate Corp. v. S.F.
27 Local Joint Exec. Bd., 542 F.2d 1076, 1082 (9th Cir. 1976)).  As
28 the Ninth Circuit explained in Franchise Realty, antitrust

litigation poses a unique risk to the exercise of First Amendment rights.  See 542 F.2d at 1082 ("Particularly in antitrust litigation, the long drawn out process of discovery can be both harassing and expensive. . . . [Such] an action . . . can be . . . a most potent weapon to deter the exercise of First Amendment rights.").

"Normally, when ruling on a motion to dismiss, all factual allegations of the party against whom the motion is made must be accepted as true.  However, the heightened pleading standard . . . would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." Or. Nat. Res. Council, 944 F.2d at 536 (emphasis added).  "[A] complaint must include allegations of the specific activities which bring the defendant's conduct into one of the exceptions to Noerr-Pennington protection."  Id. at 533.  "Conclusory allegations are not sufficient to strip a defendant's activities of Noerr-Pennington protection."  Id. (citations omitted).

As this court discussed in a prior order, Milk Moovement's allegations that Dairy failed to take measures to protect its trade secrets "are better suited for a later stage of this action, as they pertain to disputed facts which will determine the 'reasonableness' of the alleged secrecy measures." (See Order on Def.s' Mot. to Dismiss.)  Milk Moovement's allegations that Dairy initiated its "frivolous lawsuit" in order "to eliminate MMI's competitive threat," (see Am. Countercls. ¶ 52), "simply recast[s]" Dairy's allegations as wrong.  See Or. Nat. Res. Council, 944 F.2d at 536.  Although these allegations

7

include specific dates and actions, that does not make the allegations sufficient to constitute "allegations of specific activities." See Or. Nat. Res. Council, 944 F.2d at 533. Rather, Milk Moovement merely concludes that their interpretation of Dairy's timeline is correct. Such conclusions are insufficient under the heightened pleading standard. See id. Accordingly, Milk Moovement's allegations are insufficient under the Ninth Circuit's heightened pleading standard to bring its counterclaim within the sham litigation exception to Noerr-Pennington protection.

IT IS THEREFORE ORDERED that Dairy's motion to dismiss (Docket No. 113) Milk Moovement's fifth counterclaim be, and the same hereby, is GRANTED. Because Milk Moovement was previously granted leave to amend and could not cure the deficiencies of its sham counterclaim, no further leave to amend is granted.

Dated: September 22, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

8