**WILLKIE FARR & GALLAGHER LLP**
SIMONA AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
JONATHAN A. PATCHEN (SBN 237346)
  jpatchen@willkie.com
DANIEL P. MARTIN (SBN 306794)
  dpmartin@willkie.com
ANN NIEHAUS (SBN 325474)
  aniehaus@willkie.com
ERICA S. MIRANDA (SBN 325188)
  emiranda@willkie.com
One Front Street, 34th Floor
San Francisco, California 94111
Telephone:  (415) 858-7400
Facsimile:  (415) 858-7599

Attorneys for Plaintiff
**Dairy, LLC**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Plaintiff/Counterdefendant,<br><br>　　vs.<br><br>MILK MOOVEMENT, INC., a foreign Corporation, and MILK MOOVEMENT, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Defendants/Counterclaimants. | Case No. 2:21-cv-02233-WBS-AC<br><br>Magistrate Judge Allison Claire<br><br>**STIPULATED [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Complaint Filed:  December 2, 2021<br>FAC Filed: February 8, 2022<br>Cross-Complaint Filed: April 27, 2022<br>FACC Filed:  July 21, 2022 |

**1.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith regarding discovery of ESI.

**3.    PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26[1]. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**4.    LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.    PRESERVATION**

The parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    **a)**    The parties have discussed the custodians whose ESI they believe should

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

be preserved. The parties shall add or remove custodians consistent with their obligations under the applicable rules and the principles of cooperation and proportionality discussed herein;

    **b)**    The parties agree that the following sources of data are not reasonably accessible and need not be searched, reviewed, or produced, absent a showing of good cause or court order:

1. voice messages
2. duplicative information from another preserved source;
3. automatically saved versions of documents and emails;
4. deleted, slack, fragmented, or other data accessible only by forensics;
5. systems, server and network logs;
6. random access memory (RAM), temporary files, or other ephemeral data;
7. on-line access data such as temporary internet files, history, cache, cookies, and the like;
8. dynamic fields of databases or log files that are not retained in the usual course of business;
9. data in metadata fields that are frequently updated automatically, such as last opened dates;
10. data stored on mobile devices and tablets that are neither issued by a Party nor primarily used for conducting business;
11. data stored on mobile devices and tablets issued by a Party (e.g., email, calendars, contact data, and notes) to the extent that such data is routinely saved elsewhere in another location that the issuing Party will be searching (e.g., on a server, laptop, desktop computer, or "cloud" storage); and

12. data maintained or duplicated for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other backup media, continuity of operations systems, and data or system mirrors or shadows.

c) In addition to the agreements above, the parties agree to meet and confer regarding data sources that may contain relevant information but, under the limits to discovery considered by Fed. R. Civ. P. 26, should not be preserved.

## 6. SEARCH

The parties have discussed methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Namely, the parties have exchanged proposed search terms to use for identifying potentially responsive ESI. The parties shall meet and confer regarding the addition or expansion of search terms consistent with their obligations under the applicable rules and the principles of cooperation and proportionality discussed herein, to the extent that the scope of discovery may change after the parties' prior meet-and-confer efforts on this topic.

## 7. THREADING

In order to reduce the volume of entirely duplicative content within email threads being produced, the Parties may use email threading analytics technology which shall permit a party to produce only the most inclusive email message(s) within an email thread. For purposes of this paragraph, an inclusive email message ("Inclusive") is one that contains all text and attachments in the segments of the email thread being produced (i.e., all unique content will be produced). Documents which are otherwise part of the review set, and which cannot be threaded, must be reviewed in their entirety.

## 8. PRODUCTION FORMATS

For all productions of documents to be made after the entry of this Order, the following production formats and requirements shall control. The parties agree to produce documents in

1  single page TIFF file format.  The parties agree to produce natives of Microsoft Excel, audio,
2  and video files.  No party is required to create or generate a written transcript of any audio or
3  video file for purposes of document productions in this action.  If particular documents warrant a
4  different format, the parties will cooperate to arrange for the mutually acceptable production of
5  such documents. The parties agree not to degrade the searchability of documents as part of the
6  document production process.  A party is required to produce only a single copy of a responsive
7  document, and a party may de-duplicate responsive ESI across Custodians so long as an ALL
8  CUSTODIAN metadata field is populated for such de-duplicated documents as provided for
9  below. The parties agree to produce the metadata fields identified in Table 1, where such field
10 information exists for the type of document being produced (e.g., email, non-email electronic
11 files, scanned hard copy).

        **a)**       **BATES NUMBERING**

Each Bates number will: (i) be unique across the entire document production; (ii) maintain a consistent length across the entire production (i.e., ABC00000001—with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter, production slipsheets, or production log accompanying the production.  Each production will be assigned a unique volume production number.

        **b)**       **PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN."  Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If a folder with hard copy documents is produced, the label of that folder, if any, shall be scanned and produced along with the documents in the folder. The foldering relationship among the documents in the folder should be produced, either by use of a parent-child relationship or otherwise. If any original hard copy document has attachments, the Parties will scan and produce copies of the attachments in the same manner as other documents. If any original hard copy document has notes affixed thereto, the Parties will scan the page(s) of the original hard copy document containing the notes both with the notes attached and with the notes removed, and produce copies of both versions unitized together but otherwise in the same manner as other documents.

Hard copy documents containing color need not be produced in color in the first instance. The receiving Party may make a reasonable request for the production of specific documents in color, by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The producing Party shall not unreasonably deny such requests.

### c) PRODUCTION OF ESI

Unless otherwise specifically stated and agreed to the contrary, the Parties agree that only reasonably accessible ESI will be reviewed and produced. Nothing in this protocol establishes any agreement as to either the temporal or subject matter scope of discovery in this action. Should a dispute arise among the Parties in determining and agreeing upon whether a particular population of ESI or entire ESI data source is inaccessible or needs to be produced, the Parties will make a good-faith effort to resolve such a dispute amongst themselves before any motion is filed with the Court.

#### 1. Format

The Parties will produce ESI in single-page, black-and-white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, source code, audio

and video files, which shall be produced in native format.  If an original document contains color and a reasonable request is made by the receiving Party for the production of specific documents in color, the receiving Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format.  The producing Party shall not unreasonably deny such requests.  The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages should include the BCC line.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided.  Each document should be named according to the Bates number it has been assigned (and, optionally, also with the document's confidentiality designation, if any) and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

### 2.     De-Duplication

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents is not acceptable.  De-duplication will be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field

will list each custodian, separated by a semicolon, who was a source of that document. Should the ALL CUSTODIAN metadata field produced become outdated due to collecting data from additional custodians, an overlay file providing all the custodians for the affected documents will be produced prior to substantial completion of the document production.

### 3.  Metadata

All ESI will be produced with a delimited, database load file that contains the Metadata fields listed in Table 1, attached hereto, to the extent such data exists, as kept in the ordinary course, for a particular document. The Metadata produced should have the correct encoding to enable preservation of the documents' original language.

### 4.  Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" Metadata field. The Parties agree that logos need not be extracted as separate documents as long as they are displayed in the parent document.

### 5.  Attachments

The Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. If a document in a family is fully privileged, but is part of a family that includes at least one other document that is not fully privileged, then the fully privileged document(s) shall be produced fully redacted so that the family is not broken. The Parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent email.

### 6.  Compressed File Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest-level document or file is extracted. To the extent that either Party believes that the

container files should be produced in native format, the Parties agree to meet and confer in good faith.

### 7. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

### 8. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing Party shall transmit the encryption key or password to the receiving Party under separate cover.

### 9. Redactions

For redacted documents, the producing Party may withhold only the following metadata (Subject, FileName, and MD5 Hash). OCR text of the redacted image shall be produced. For spreadsheets that the Parties have agreed to produce in native form, all redactions shall be made to the native form of the document, to the extent reasonably possible. If the native document (including its metadata) cannot be adequately redacted, a redacted image of the document may be produced as provided for herein.

### 10. Interpretation

If there is a conflict between the provisions of this protocol and any protective order entered in this action, the protective order shall control. Moreover, nothing in this protocol shall waive or limit any protections afforded the Parties under Federal Rule of Evidence 502.

Nothing in this protocol shall be interpreted to require the disclosure of any document that a Party contends is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this protocol require the production of ESI or other documents that are not discoverable under applicable law.

**9. TIMING**

The parties agree that ESI document productions will be made on a rolling basis starting on October 21, 2022. The parties agree that ESI document productions will be completed in accordance with any applicable case schedule set by the Court in this action.

**10. DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim. Information that contains privileged matter or attorney work product shall be returned immediately if such information appears on its face or if requested.

Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**11. PRIVILEGE LOG**

a) If a party reasonably determines that one or more responsive documents are not discoverable because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall use reasonable efforts to produce a log for each document or each category of documents withheld for privilege from that production.

      b)     Communications involving counsel, as well as experts retained for the purpose of this litigation, that post-date November 1, 2021 need not be placed on a privilege log.

      c)     Work product prepared by or at the direction of counsel for purposes of this litigation that post-dates November 1, 2021 need not be placed on a privilege log.

      d)     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      e)     for email communications, only the Inclusive emails must be logged.

      f)     The Parties shall exchange their respective privilege logs within thirty (30) days of completing document productions.

      g)     So long as the redaction language on the image indicates **Redacted – Privileged** and the document's metadata is produced without redaction (except for any redactions permitted by Paragraph 9), redaction logs shall not be required.  Redactions for personally-identifiable information shall be made with a black box and need not be logged.  On a document-by-document basis, a Party may request additional information about the redaction.  To avoid confusion, any privilege redactions shall not be made with a black box.

**12.**    **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

//

//

//

//

**IT IS SO STIPULATED**, through Counsel of Record.

           WILLKIE FARR & GALLAGHER LLP
           Simona A. Agnolucci
           Jonathan A. Patchen
           Daniel P. Martin
           Ann S. Niehaus
           Erica S. Miranda

By: */s/ Simona A. Agnolucci*
     Simona A. Agnolucci

Attorneys for Plaintiff
DAIRY, LLC

MORGAN, LEWIS & BOCKIUS, LLP
Carla B. Oakley
Lindsey M. Shinn
Geoffrey T. Holtz
Kevin M. Papay
Ehsun Forghany
Benjamin Hand

By: */s/ Kevin M. Papay*
     Kevin M. Papay

Attorneys for Defendant
MILK MOOVEMENT, INC. and
Defendant MILK MOOVEMENT LLC

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: November 2, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

**Table 1: Metadata Fields**

| Field | Description |
|---|---|
| BEGBATES | Beginning Bates Number |
| ENDBATES | Ending Bates Number |
| BEGATTACH | Beginning Bates number of the first document in an attachment range |
| ENDATTACH | Ending Bates number of the last document in attachment range |
| VOLUME | The production volume associated with the produced file |
| PAGES | The number of pages of the produced document |
| ALL CUSTODIAN | Names of all custodians, separated by semicolons, for whom the document was processed whether or not the file was removed upon de-duplication |
| RECORD TYPE | Populated with Email, Attachment, Paper, or Loose File |
| FILENAME | Filename of the original native file |
| FILEEXT | File extension of the original native file |
| FILESIZE | KB size of the original native file |
| APPLICATION | Indicates software application that generated the ESI item (e.g., Outlook, Word). |
| SORTDATE | Date populated at family level using parent set date propagated down through children. Stand-alone documents populated with last mod date |
| CREATEDATE | Date that a non-email document was created (yyyymmdd format) |
| CREATETIME | Time that a non-email document was created (hh:mm:ss format) |
| LASTMODDATE | Last date that a non-email document was modified (yyyymmdd format) |
| LASTMODTIME | Last time that a non-email document was modified (hh:mm:ss format) |
| SENTDATE | Sent date of an email message (yyyymmdd format) |
| SENTTIME | Sent time of an email message (hh:mm:ss format) |
| RECEIVEDDATE | Received date of an email message (yyyymmdd format) |
| RECEIVEDTIME | Received time of an email message (hh:mm:ss format) |
| SUBJECT | Subject line extracted from an email message |
| AUTHOR | Author field extracted from the metadata of a non-email document |
| FROM | From field extracted from an email message |
| TO | To or Recipient field extracted from an email message |

| CC | CC or Carbon Copy field extracted from an email message |
|---|---|
| BCC | BCC or Blind Carbon Copy field extracted from an email message |
| MD5HASH | MD5 (or SHA-1) hash value generated by creating a binary stream of the file |
| THREADID | Keeping Inclusives together as populated by the vendor's threading analytics. |
| Is Embedded | Populate "Yes" for embedded documents |
| DESIGNATION | All Confidentiality designations |
| REDACTED | Populate "Yes" for redacted documents |
| FULLTEXT | Relative path to document text/OCR file if provided in production |
| NATIVELINK | Relative path and filename to produced native file. |