UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br><br>  v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign corporation,<br><br>    Defendants. | No. 2:21-cv-02233 WBS-AC<br><br>ORDER |
| MILK MOOVEMENT, INC., a foreign corporation,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>DAIRY, LLC, a Delaware Limited Liability Company,<br><br>    Counterclaim-Defendant. | |

   Before the court is Milk Moovement Inc.'s ("Milk") motion to overrule Dairy, LLC's expert disclosure objection (ECF No. 139) and Dairy, LLC's ("Dairy") motion to compel (ECF No. 141). The joint statement on the motion to compel is located at ECF No. 147 and the joint

1

statement on the motion to overrule Dairy's expert disclosure objection is located at ECF No. 148.  For the reasons set forth below, the motion to compel is GRANTED in part and DENIED in part, and the motion to overrule Dairy's expert disclosure objection is GRANTED.

## I. RELEVANT BACKGROUND

### A. Factual Allegations of the First Amended Complaint

Dairy brought this action for alleged trade secrets misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade Secrets Act, as well as a claim for intentional interference with contractual relations.  ECF No. 48 (First Amended Complaint).  The following factual allegations are taken from plaintiff's amended complaint, incorporated here for ease of reference.  ECF No. 48.

Dairy, by and through its trade name of Dairy.com, is the leading provider of technology, services, and intelligence platforms to the dairy industry in the United States.  Id. at 2.  Dairy.com's proprietary software platform enables dairy industry businesses to accurately manage all the complexities of paying dairy producers and haulers, capture milk manifest data in real-time, allocate loads of milk to customers, coordinate the movements of dairy haulers, and comply with federal regulations.  Id.  The company also provides consulting services on topics like milk marketing and processing, and dairy policy and pricing.  Id.

The dairy market is heavily regulated and there are several Federal Milk Marketing Orders (FMMOs) that regulate minimum milk prices paid to dairy producers (i.e., dairy farmers) by milk handlers (e.g., processing plants).  Id.  Each month, the U.S. Department of Agriculture determines a single weighted average price to be paid to producers for their milk that is part of a milk "pool" under a particular region's marketing order.  Id.  FMMO pools are designed to attract an adequate milk supply to meet consumer fluid milk needs by allowing dairy farmers to receive a uniform price for their milk regardless of how it was used.  Id.  Dairy has software that allows users to determine the correct amounts to pay milk producers and generate reports in compliance with the various FMMOs, called its "producer payroll" application.  Id. at 2-3.  The elements of Dairy's producer payroll application that enable Dairy's clients to make decisions easily and

////

efficiently about what milk to pool, designate milk for pooling, and generate accurate reports and invoices to comply with the FMMOs are amongst Dairy's trade secrets. Id. at 3.

Milk Moovement is a Canadian company founded in 2018 which utilizes a software platform focused on the Canadian dairy industry. Id. On plaintiff's information and belief, as of September 2021, Milk did not have its own fully functional producer payroll application capable of facilitating compliance with U.S. dairy regulations. Id. Dairy alleges that in September 2021, Milk induced one of Dairy's customers, California Dairies, Inc. ("CDI") to breach its agreement with Dairy and share with Milk confidential and proprietary information about the structure and functionality of Dairy's software, including copies of fifteen reports generated from Dairy's producer payroll application. Id. On information and belief, the reports and explanations that Milk received regarding the operation of Dairy's software enabled Milk to misappropriate Dairy's trade secrets and create its own competitive producer payroll system that implements Dairy's unique pooling functionality. Id.

Dairy makes three claims against Milk: violation of the Defend Trade Secrets Act of 2016, violation of the California Uniform Trade Secrets Act, and Intentional Interference with Contractual Relations. ECF No. 48 at 1. Each of these claims survived a motion to dismiss. ECF No. 76.

B. Description of Trade Secrets in First Amended Complaint

The following is taken from Dairy's first amended complaint, incorporated here for ease of reference. ECF No. 48. Dairy asserts that FMMOs have created one of the most complicated commodity pricing regimes in all of U.S. agriculture. ECF No. 48 at 5. FMMO "pools" are designed to harmonize milk prices for farmers across a similar geography. Id. Each month, some dairy handlers will have to pay into the pool and others will withdraw funds from the pool when they pay producers that month's uniform price for fluid milk. Id. In general, handlers look to avoid "paying into the pool" (while at the same time managing multiple other constraints) to avoid a direct cost and allow the handler to either (1) pay that money to their farms, or (2) keep that money to improve the profits of their operation. Id. Pursuant to the FMMO, all Class I milk must be pooled, but with other classes of milk, handlers can generally elect whether to participate

3

in the pool. Id. Typically, handlers try to obtain the best price for their producer's milk and make pooling decisions based on whether the market price for a particular class of milk is higher or lower than the uniform price. Id.

Deciding what milk to pool requires tracking many different variables over the course of several months. The FMMOs impose an array of rules on whether, or under what conditions, handlers can pool milk. Whether milk can be pooled depends on, among other things, the type of plant processing the milk, how much milk the handler "pooled" in the previous month, and whether the handler diverted milk to other plants participating in the pool. Id. at 6. Dairy handlers must submit monthly reports to an FMMO market administrator detailing their total milk receipts by class and specifying how much milk was pooled. Handlers must also track and report to producers on a monthly basis (1) the total pounds of milk received from that producer by date, (2) the components (e.g., amount of butterfat and protein) contained in the producer's milk, (3) the minimum payments required to be made to the producer under the FMMO, (4) the rate used to make payments to the producer (if not the minimum rate), (5) the amount and nature of any deductions made by the handler, and (6) the net amount of payments to the producer. Id.

Dairy's producer payroll application helps dairy handlers comply with FMMOs by managing the entire process of scheduling, tracking, collecting relevant data, paying farmers, and billing customers for milk movements in a particular time period. Id. Additionally, the software generates key reports to enable handlers to make pooling decisions and report them to an FMMO market administrator. Id. This application enables Dairy's clients to easily and efficiently maximize the benefits of FMMO pool participation. Id. This is accomplished by supporting the pool versus non-pool decisions that dairy handlers make each month around FMMO participation. Id. Dairy's software includes and implements a methodology for handling FMMO pooling that is unique in the industry and is Dairy's trade secret.

The proprietary pooling functionality in Dairy's software enables Dairy's clients to maximize the benefits of FMMO pooling participation by enabling them to make more economically advantageous pooling decisions and accurately document those decisions for

reporting purposes. Id. Dairy releases new versions of its producer payroll application every 6-8 weeks because it is constantly making improvements to its software based on customer feedback. Id. at 7. With respect to the pooling functionality of Dairy's software in particular, Dairy has made major revisions to its pooling features at least four times and regularly releases minor improvements and bug fixes. Id.

### C. Procedural History

This case was filed on December 2, 2021. ECF No. 1. The parties entered a stipulated protective order on February 18, 2022, which was adopted on March 1, 2022. ECF Nos. 54 and 61. On May 25, 2022, Dairy filed a motion to compel discovery and for sanctions. ECF No. 86. On June 6, 2022, Milk filed a motion for a protective order staying all discovery. ECF No. 93 (denied at ECF No. 121). On June 8, 2022, Dairy filed a second motion to compel. ECF No. 96. Milk's motion for a protective order was denied (ECF No. 121), and the two motions to compel were subsequently resolved by stipulation. ECF No. 130. On July 21, 2022, Milk filed an answer with amended counterclaims. ECF No. 111. On August 16, 2022, plaintiff filed a third motion to compel ECF No. 117, which was later withdrawn (ECF No. 127).

Three discovery motions are currently pending. Milk's motion re: improper and late objection to expert (ECF No. 139) and Dairy's motion to compel (ECF No. 141) are ripe for decision, fully briefed, and resolved herein. Also pending is a motion for sanctions filed by Milk (ECF No. 151) set for hearing on the papers on December 14, 2022 (ECF No. 153) and not at issue here.

## II.     MOTION TO COMPEL

The motion to compel presents two key disputes impacting the responses to five requests for production ("RFPs"). Each dispute is presented below, including the full text and responses for the RFPs at issue.

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.

1  Civ. P. 26(b)(1).  Evidence is relevant if: (a) it has any tendency to make a fact more or less
2  probable than it would be without the evidence; and (b) the fact is of consequence in determining
3  the action.  Fed. R. Evid. 401.  Relevancy to the subject matter of the litigation "has been
4  construed broadly to encompass any matter that bears on, or that reasonably could lead to other
5  matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v.
6  Sanders, 437 U.S. 340, 351 (1978).  Relevance, however, does not establish discoverability; in
7  2015, a proportionality requirement was added to Rule 26.  Under the amended Rule 26,
8  relevance alone will not justify discovery; discovery must also be proportional to the needs of the
9  case.

10  Under Fed. R. Civ. P. 37(a), a party may move for an order compelling disclosure or
11  discovery if "a party fails to produce documents . . . as requested under Rule 34."  Rule
12  37(a)(3)(B)(iv).  "The party seeking to compel discovery has the burden of establishing that its
13  request satisfies the relevancy requirements of Rule 26(b)(1).  The party opposing discovery then
14  has the burden of showing that the discovery should be prohibited, and the burden of clarifying,
15  explaining or supporting its objections."  See Bryant v. Ochoa, 2009 U.S. Dist. LEXIS 42339 at
16  *3, 2009 WL 1390794, at *1 (S.D. Cal. 2009).  The party opposing discovery is "required to carry
17  a heavy burden of showing" why discovery should be denied.  Blankenship v. Hearst Corp., 519
18  F.2d 418, 429 (9th Cir. 1975).)).

19  B. Analysis: Production Regarding Software Updates

20  The first subject of the motion to compel is framed as: Milk's Limited Agreement to
21  Produce Documents Related to the "Pooling Methodology" (RFP Nos. 15 & 16).  The RFPs at
22  issue are reproduced here:

23  Request for Production No. 15:

24  DOCUMENTS sufficient to show changes made to YOUR software
   between April 2021 and February 2022, including release notes,
25  COMMUNICATIONS about new versions of YOUR software, and
   COMMUNICATIONS to YOUR customers regarding software
26  changes.

27  Response:

28  Milk Moovement incorporates by reference its General Objections

and its Objections to the Definitions and Instructions, as they apply to this Request. Milk Moovement further objects to the terms "COMMUNICATIONS," "DOCUMENTS," "YOU," and "YOUR" on the grounds set forth in its Objections to Definitions and General Instructions and construes those terms in accordance with those Objections. Milk Moovement also objects to this Request as vague and ambiguous with respect to the terms "changes made" and "software changes" as those terms are undefined and susceptible to differing interpretations. Milk Moovement further objects that this Request is unlimited in geographic scope. Milk Moovement further objects to this Request as seeking information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Milk Moovement further objects to this Request on the grounds that it is indefinite, overly broad, unduly burdensome, and not proportional to the needs of the case, at least as to temporal scope, because it seeks internal or external communications regarding "changes made" and "software changes" to all of MMI's software rather than changes specifically relevant to Plaintiff's claims, and because it seeks information and documents in a format or at a level of detail other than that which is ordinarily kept and maintained by Milk Moovement in its regular course of business because they are not easily searchable. Milk Moovement further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. Milk Moovement further objects to this Request to the extent it seeks information that is protected by the attorney client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest privilege, and/or any other applicable doctrine of privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Milk Moovement will produce non-privileged responsive pre-suit documents in its possession, custody or control sufficient to show new features or functionality in MMI's software, if any, between April 1, 2021 and December 1, 2021 (i.e., pre-lawsuit) related to the "pooling methodology" identified in the Dairy's First Amended Complaint and as defined in Dairy's response to Milk Moovement LLC's Interrogatory No. 1 (identified by Dairy as Interrogatory No. 8), dated September 12, 2022, to the extent such documents exist and can be located after a reasonable search.

Request for Production No. 16:

ALL of YOUR internal COMMUNICATIONS CONCERNING changes made to YOUR software between April 2021 and February 2022, INCLUDING COMMUNICATIONS RELATING TO new features or functionality.

Response:

Milk Moovement incorporates by reference its General Objections and its Objections to the Definitions and Instructions, as they apply to this Request. Milk Moovement further objects to

the terms "COMMUNICATIONS," "YOU," and "YOUR" on the

7

grounds set forth in its Objections to Definitions and General Instructions and construes those terms in accordance with those Objections. Milk Moovement also objects to this Request as vague and ambiguous with respect to the term "changes made" as that term is undefined and susceptible to differing interpretations. Milk Moovement further objects that this Request is unlimited in geographic scope. Milk Moovement further objects to this Request as seeking information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Milk Moovement further objects to this Request on the grounds that it is indefinite, overly broad, unduly burdensome, and not proportional to the needs of the case, at least as to temporal scope, because it seeks every internal communication regarding "changes made" to all of MMI's software rather than changes specifically relevant to Plaintiff's claims, and because it seeks information and documents in a format or at a level of detail other than that which is ordinarily kept and maintained by Milk Moovement in its regular course of business because they are not easily searchable. Milk Moovement further objects to this Request to the extent it seeks trade secrets or other confidential or proprietary research, development, commercial, or business information. Milk Moovement further objects to this Request to the extent it seeks information

that is protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest privilege, and/or any other applicable doctrine of privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Milk Moovement will produce non-privileged responsive pre-suit documents in its possession, custody or control sufficient to show new features or functionality in MMI's software, if any, between April 1, 2021 and December 1, 2021 (i.e., pre-lawsuit) related to the "pooling methodology" identified in the Dairy's First Amended Complaint and as defined in Dairy's response to Milk Moovement LLC's Interrogatory No. 1 (identified by Dairy as Interrogatory No. 8), dated September 12, 2022, to the extent such documents exist and can be located after a reasonable search.

Per Dairy's description, the above RFPs seek documents reflecting changes Milk "made to its software during the 11-month period of CDI's software transition—changes that are likely to prove that Milk Moovement incorporated Dairy's trade secret and confidential information into its software (or disprove those allegations, if Milk Moovement is innocent as it claims)." ECF No. 147 at 12. Dairy argues that Milk has improperly limited its response to documents related to Dairy's pooling methodology, leaving Dairy unable to determine if changes were made to Milk Moovement's software that replicate other features of Dairy's producer payroll application or other Dairy software modules that CDI shared with Milk (producer payroll being one of several

8

Dairy software modules that CDI used before switching to Milk). Dairy asserts that these RFPs go directly to its "intentional interference with contractual relations claim, which is separate from its pooling methodology and trade secret claim. Id. at 13. Dairy alleges Milk "intentionally requested non-trade secret information about [Dairy's] software which CDI was not allowed to share per its contract with [Dairy] and used that information to create [Milk Moovement's] own software for CDI in place of [Dairy's] software." ECF No. 76 at 10 (order by District Judge William B. Shubb declining to dismiss Dairy's intentional interference with contractual relations claim); id. at 10–13 (finding Dairy's interference claim plausible); see ECF No. 48 (FAC ¶¶ 51–53, 75).

Milk argues that the RFPs are overbroad because they seek any and all changes made to Milk's software, without restriction to changes that could be possibly related to information CDI disclosed to Milk about Dairy. ECF No. 147 at 20. The court agrees that RFPs 15 and 16 are overbroad as drafted. While there may be relevant documents that are responsive to these requests, there are surely many, many, many more responsive documents that are not relevant. In a software-based company there are likely many software updates happening within an 11-month period and a great number of these are likely completely unrelated to anything CDI could have disclosed. The court agrees with Milk that the inquiry with respect to relevance on the contractual interference claim "is what confidential information CDI is alleged to have disclosed to Milk Moovement about Dairy" that would be reflected by a software change. Id. at 18. Certainly not *every* software change is potentially related to information disclosed by CDI, and Milk should not be required to produce the entire haystack so that Dairy can search for the needle.

RFPs 15 and 16 are impermissibly overbroad in scope. Dairy must narrow these requests to changes that could be plausibly related to something CDI might have disclosed. The motion to compel is DENIED as to this dispute.

C. Analysis: Production of Communications Concerning Dairy

The second issue presented by the Motion to compel is framed as: Milk's Refusal to Produce Documents and Communications Concerning Dairy or Its Software (RFP Nos. 19, 20, 32). The RFPs at issue are reproduced here:

9

Request for Production No. 19

ALL DOCUMENTS CONCERNING any analysis of PLAINTIFF or DAIRY.COM, INCLUDING any competitive analysis.

Response:

Milk Moovement incorporates by reference its General Objections and its Objections to the Definitions and Instructions, as they apply to this Request. Milk Moovement further objects to the terms "DOCUMENTS," and "PLAINTIFF" on the grounds set forth in its Objections to Definitions and General Instructions and construes those terms in accordance with those Objections. Milk Moovement further objects to this Request as seeking information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Milk Moovement further objects to this Request on the grounds that it is indefinite, overly broad, unduly burdensome, and not proportional to the needs of the case, at least as to temporal scope, because it seeks every "analysis" of Milk Moovement's competitor, regardless of whether those analyses are related to Plaintiff's alleged trade secrets or unspecified non-trade secret confidential information. Milk Moovement further objects to this Request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest privilege, and/or any other applicable doctrine of privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Milk Moovement will meet and confer with Dairy to better understand the relevancy and scope of this request. In particular, the request, as phrased, is overbroad and on its face unrelated to any claim or defense.

Request for Production No. 20:

ALL DOCUMENTS CONCERNING YOUR knowledge or investigation of PLAINTIFF or DAIRY.COM.

Response:

Milk Moovement incorporates by reference its General Objections and its Objections to the Definitions and Instructions, as they apply to this Request. Milk Moovement further objects to the Request on the grounds that it is duplicative of Plaintiff's Request Nos. 1-7 and 19. Milk Moovement further objects to the terms "DOCUMENTS," "PLAINTIFF," and "YOUR" on the grounds set forth in its Objections to Definitions and General Instructions and construes those terms in accordance with those Objections. Milk Moovement further objects to this Request as seeking information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Milk Moovement further objects to this Request on the grounds that it is indefinite, overly broad, unduly burdensome, and not proportional to the needs of the case, at least as to temporal scope, because it seeks all analyses

10

of Milk Moovement's competitor, rather than those relevant to Plaintiff's alleged trade secrets or unspecified non-trade secret confidential information. Milk Moovement further objects to this Request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest privilege, and/or any other applicable doctrine of privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Milk Moovement will meet and confer with Dairy to better understand the relevancy and scope of this request. In particular, the request, as phrased, is overbroad and on its face unrelated to any claim or defense.

Request for Production No. 32:

All DOCUMENTS and COMMUNICATIONS containing descriptions of the structure, functionality, or organization of DAIRY.COM.

Response

Milk Moovement incorporates by reference its General Objections and its Objections to the Definitions and Instructions, as they apply to this Request. Milk Moovement further objects to the terms "COMMUNICATIONS" and "DOCUMENTS" on the grounds set forth in its Objections to Definitions and General Instructions and construes those terms in accordance with those Objections. Milk Moovement further objects to this Request as seeking information unrelated to any claim or defense of any party in this litigation and unrelated to the subject matter involved in this litigation. Milk Moovement further objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case, at least as to temporal scope, and because it seeks all documents discussing the structure, functionality, or organization

of Dairy.com, including publicly available information, rather than those relevant to Plaintiff's alleged trade secrets or unspecified non-trade secret confidential information. Milk Moovement further objects to this Request to the extent it seeks information that is protected by the attorney client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest privilege, and/or any other applicable doctrine of privilege or immunity.

Subject to and without waiver of the foregoing general and specific objections, Milk Moovement will meet and confer with Dairy to better understand the relevancy and scope of this request. In particular, the request, as phrased, is overbroad and on its face unrelated to any claim or defense.

The requests at issue in this portion of the dispute, RFP Nos. 19, 20, and 32, request Milk's internal documents referencing Dairy or its software, including (but not limited to) competitive analysis, as well as external communications with third parties about the same. Dairy

11

asserts that these requests are relevant and proportional for several reasons. First, Dairy asserts responsive documents go to the heart of its claims because they would reveal how Milk viewed it software relative to Dairy's, which goes to intent/absence of mistake. ECF No. 147 at 22. Dairy further contends that documents will likely also reflect what information was shared by CDI. Id. at 23.

Milk's counterargument is that these RFP are overboard, irrelevant, and disproportionate to the needs of the case. ECF No. 147 at 24. Milk contends that because these RFPs "demand every Milk Moovement document that references Dairy or reflects knowledge about Dairy, regardless of the source of that knowledge or whether it has anything to do with any alleged misappropriation of trade secrets or interference with Dairy's contract with CDI" they will capture publicly disclosed information which cannot be relevant to the claims, which relate to improperly disclosed information. Id. Milk would have the court require Dairy to limit its request by including "some qualification that such documents concern Milk Moovement's knowledge of any Dairy trade secrets alleged to be at issue or are based on information that CDI allegedly improperly provided to Milk." Id. at 25.

The court agrees with Dairy and does not find RFP Nos. 19, 20, or 32 overbroad; instead, they are reasonably calculated and sufficiently narrowly tailored to lead to relevant evidence because *any* documents from Milk referencing or analyzing Dairy could quite reasonably go to intent/absence of mistake and thus relate directly to Dairy's claims. Unlike the requests above seeking documents regarding *any* software updates which would almost certainly include an abundance of information entirely unrelated to this case, the requests seeking *any* reference to Dairy can be expected to produce documents related to Milk's intent, actions, and assessments with respect to Dairy. Accordingly, the court finds the RFPs are reasonably tailored to produce relevant evidence. The motion to compel on this issue is granted.

### III. MOTION RE: DISCLOSURE OBJECTION

Milk asks the court to overrule Dairy's "improper and untimely objection to Milk Moovement's disclosure of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information to its retained outside expert, Sara Dorland, in her capacity as an "Expert" under the

1 terms of the Stipulated Protective Order (Dkt. 54, 61) ("Protective Order"). ECF No. 148. Milk
2 argues "Dairy has no basis to object to Ms. Dorland because she is not a competitor of Dairy, nor
3 is her firm, and Dairy objected too late. Dairy seeks to deny Milk Moovement the opportunity to
4 present expert opinions regarding the dairy industry, which go to the heart of Dairy's claims." Id.

5 The parties agree that Milk disclosed Ms. Dorland as an expert to Dairy on June 15, 2022,
6 informing Dairy that it intended to disclose to Ms. Dorland in her capacity as an expert
7 documents Dairy designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or
8 "HIGHLY CONFIDENTIAL – SOURCE CODE" that relate to Dairy's trade secret and
9 intentional interference claims, as well as Milk's declaratory judgment claims. ECF No. 148 at 5,
10 7; Oakley Decl., Ex. 1 at 11-12. The parties also agree that on June 17, 2022, Dairy
11 communicated to Milk that it believed the disclosure was premature because no such confidential
12 documents had yet been produced. ECF No. 148 at 5, 8. Milk disagreed, arguing that it should
13 be able to notice preemptively the disclosure of highly confidential documents, even if that
14 category of documents is ultimately turns out to be a null set. Patchen Decl. Ex. 1 (L. Shinn Jun.
15 17, 2022 email) (ECF No. 148-4 at 15). The relevant email communications are located at ECF
16 No. 148-2 at 16-17. On June 21, 2022 Dairy produced its first documents designated highly
17 confidential, and on June 24, 2022, Dairy objected to Ms. Dorland receiving confidential
18 documents on the basis that Ms. Dorland is a competitor. ECF No. 148 at 5, 8. Milk argues that
19 Dairy's objection was untimely because it was made 9 days after the initial disclosure, and the
20 Stipulated Protective Order limits the parties to 7 days for objections unless otherwise agreed in
21 writing.

22 Timeliness is the threshold issue that must be addressed in this dispute; if Dairy's
23 objection was untimely, it was not valid per the terms of the parties' stipulation. The relevant
24 portion of the Stipulated Protective Order (ECF No. 54) is "Section 7.4 Procedures for Approving
25 or Objecting to Disclosure of 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' or
26 'HIGHLY CONFIDENTIAL – SOURCE CODE' Information or Items to Experts or Other
27 Outside Counsel." This section reads:
28 ////

>(a) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert or Other Outside Counsel (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies **the general categories** of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert or Outside Counsel, (2) with respect to Experts, sets forth the full name of the Expert and the city and state of his or her primary residence and with respect to Other Outside Counsel, sets forth their full name, (3) with respect to Experts, attaches a copy of the Expert's current resume, (4) identifies the Expert's or Other Outside Counsel's current employer(s), (5) with respect to Experts, identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) with respect to Experts, identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.
>
>(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert or Other Outside Counsel unless, **within 7 days of delivering the request, the Party receives a written objection from the Designating Party**. Any such objection must set forth in detail the grounds on which it is based.

ECF No. 45 at 12 (emphasis added).

Dairy's objection, 9 days after the disclosure, was not timely per the plain language of the Stipulated Protective Order and is therefore without effect. Per the terms of the protective order, Milk identified the "general categories" of confidential documents that would be disclosed. ECF No. 148-2 at 16-17. Dairy's prematurity objection asserts that "[i]f there is no material that you currently have that you would like to disclose to them, this disclosure notice is premature" because of the requirement that "categories of material" be disclosed. ECF No. 148-2 at 16. Dairy reads a requirement into the Stipulated Protective Order that simply isn't there; there is nothing in the stipulation that renders Milk's disclosure premature or prevents Milk from anticipating that confidential documents will be produced in identified categories. The parties

////

could have drafted a stipulated protective order that required identification of specific documents to be disclosed, but they did not.

Dairy, the holder of the pre-produced documents, certainly had enough information from the June 15, 2022 disclosure to make a timely objection. Further, on June 17, 2022, Milk confirmed to Dairy in writing that it did not believe its request to be premature and that it believed the objection clock to be ticking. ECF No. 148-2 at 15. Dairy had ample opportunity to object before the agreed deadline to object ran. The court agrees with Milk that Dairy's objection is untimely and therefore overrules the objection.

## IV. CONCLUSION

Dairy's Motion to Compel (ECF No. 141) is GRANTED in Part and Denied in Part as follows: the motion is DENIED as to RFPs 15 and 16. The motion is GRANTED as to RFPs 19, 20, and 31, and Milk shall produce all responsive documents within 14 days of this Order.

Milk's Motion regarding Dairy's objection regarding document disclosure to Milk's expert (ECF No. 139) is GRANTED and Dairy's objection is OVERRULED.

IT IS SO ORDERED.

DATED: November 16, 2022

*Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE