UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign corporation,<br><br>Defendant. | No. 2:21-cv-02233 WBS AC<br><br>ORDER |

Before the court is defendant Milk Moovement's motion for sanctions responsive to an inadvertent disclosure. ECF No. 151. Plaintiff Dairy's opposition is located at ECF No. 160. Milk Moovement's reply is located at ECF No. 173. For the reasons set forth below, the motion is GRANTED, but only monetary sanctions are awarded.

**I.   RELEVANT BACKGROUND**

Plaintiff brings this action for alleged trade secrets misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade Secrets Act, as well as a claim for intentional interference with contractual relations. ECF No. 48 (First Amended Complaint). The following factual allegations are taken from plaintiff's amended complaint, incorporated here for ease of reference. ECF No. 48.

////

1

Plaintiff, by and through its trade name of Dairy.com, is the leading provider of technology, services, and intelligence platforms to the dairy industry in the United States. Id. at 2. Dairy.com's proprietary software platform enables dairy industry businesses to accurately manage all the complexities of paying dairy producers and haulers, capture milk manifest data in real-time, allocate loads of milk to customers, coordinate the movements of dairy haulers, and comply with federal regulations. Id. The company also provides consulting services on topics like milk marketing and processing, and dairy policy and pricing. Id.

The dairy market is heavily regulated and there are several Federal Milk Marketing Orders (FMMOs) that regulate minimum milk prices paid to dairy producers (i.e., dairy farmers) by milk handlers (e.g., processing plants). Id. Each month, the U.S. Department of Agriculture determines a single weighted average price to be paid to producers for their milk that is part of a milk "pool" under a particular region's marketing order. Id. FMMO pools are designed to attract an adequate milk supply to meet consumer fluid milk needs by allowing dairy farmers to receive a uniform price for their milk regardless of how it was used. Id. Dairy has software that allows users to determine the correct amounts to pay milk producers and generate reports in compliance with the various FMMOs, called its "producer payroll" application. Id. at 2-3. The elements of Dairy's producer payroll application that enable Dairy's clients to make decisions easily and efficiently about what milk to pool, designate milk for pooling, and generate accurate reports and invoices to comply with the FMMOs are amongst Dairy's trade secrets. Id. at 3.

Defendant Milk Moovement is a Canadian company founded in 2018 which utilizes a software platform focused on the Canadian dairy industry. Id. On plaintiff's information and belief, as of September 2021, Milk Moovement did not have its own fully functional producer payroll application capable of facilitating compliance with U.S. dairy regulations. Id. Dairy alleges that in September 2021, Milk Moovement induced one of Dairy's customers, California Dairies, Inc. ("CDI") to breach its agreement with Dairy and share with Milk Moovement confidential and proprietary information about the structure and functionality of Dairy's software, including copies of fifteen reports generated from Dairy's producer payroll application. Id. On information and belief, the reports and explanations that Milk Moovement received regarding the

operation of Dairy's software enabled Milk Moovement to misappropriate Dairy's trade secrets and create its own competitive producer payroll system that implements Dairy's unique pooling functionality. Id.

## II.     MOTION FOR SANCTIONS

The parties entered a stipulated protective order regarding treatment of various levels of confidential documents. ECF Nos. 54 and 61. It is undisputed that the protective order was violated via an inadvertent disclosure: Dairy's COO, Duane Banderob, was given access to an agreement between Milk Moovement and CDI labeled "Attorneys' Eyes Only" ("AEO MMI/CDI Agreement"). ECF No. 151 at 10; ECF No. 177 at 5. At issue is whether discovery into the impact of the inadvertent disclosure is warranted, and whether monetary sanctions are warranted. Defendant seeks "[1] an expedited deposition of Mr. Banderob that does not count against merits discovery, and [2] production of targeted documents (with review in camera or by a special master if asserted to be privileged), including all mails, texts and voice messages related to the violation." ECF No. 173 at 5.

## III.     LEGAL STANDARDS

When a party violates a discovery order, including a stipulated protective order, Rule 37 authorizes district courts to issue "further just orders" as sanctions. Fed R. Civ. P. 37(b)(2)(A). This authority includes imposing a "sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 784 (9th Cir. 1983). "Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes," but "[t]he imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." Id. at 783–84. While Rule 37(b) authorizes "a wide range of sanctions" for violating a discovery order, any sanctions imposed "must be just" and "must specifically relate to the particular claim at issue." United States v. Nat'l Med. Enterprises, Inc., 792 F.2d 906, 910 (9th Cir. 1986). Per Rule 37(b)(2)(C), "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was

substantially justified or other circumstances make an award of expenses unjust." (emphasis added).

### IV.   ANALYSIS

Milk Moovement is entitled to monetary sanctions resulting from Dairy's admitted inadvertent disclosure in violation of the stipulated protective order, but additional discovery on this topic is not warranted.

Defendant argues that "Dairy does not dispute that it violated Section 7.3 of the Protective Order — [and this is] the only fact needed to obtain the narrow relief MMI seeks under Rule 37." ECF No. 173 at 4. The court agrees as to monetary sanctions: Fed. R. Civ. P. 37(b)(2)(C) makes clear that absent certain special circumstances, payment of reasonable expenses, including attorneys' fees, is mandatory. The court agrees that Dairy should pay the reasonable expenses and attorneys fees caused by its inadvertent disclosure; at the very least, Dairy's attorneys should have been more careful in screening documents provided to Mr. Banderob. The fees, of course, must be reasonable. They will be calculated at the Sacramento rate, as is the custom of this court, and claimed fees must be supported by timesheets and affidavits submitted by defense counsel. "The appropriate rate for reimbursement of fees in Sacramento is the Court's previously stated rate of $350 per hour for attorneys, and $75 per hour for paralegals." Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ., No. 2:11-CV-03471-KJM-AC, 2017 WL 2492850, at *1 (E.D. Cal. June 9, 2017).

As to additional discovery on the impact of the protective order violation, the court will not grant defendant's request. Mr. Banderob submitted a declaration under oath stating that he viewed five pages of the inadvertently disclosed document for less than five minutes before realizing he was not supposed to see the document, and he did not physically retain the information in any way. ECF No. 163 at 3. Mr. Banderob explained that before he reviewed documents provided to him, he was told many of the documents were mislabeled with respect to confidentiality because certain documents were being downgraded in confidentiality level. Id. at 2. He stated that while he saw confidential information, he has "never used or even disclosed the MMI-CDI pricing information for any purpose, much less for a competitive purpose. I reaffirm

my commitment to, and obligations under, Exhibit A to the Protective Order in this matter, attached as Exhibit 1 hereto." Id. at 6.  Counsel for Dairy submitted a declaration stating that Mr. Banderob accessed the data room on June 27 and 28, reported that he saw the document at issue on June 28, that he "did not study it," and within 10 minutes counsel pulled Mr. Banderob's credentials to the data room containing the document.  ECF No. 162 at 5-6.

Defendant argues that "contrary to Dairy's contentions, Milk Moovement's counsel previously identified to Dairy at least one fact showing that Milk has already been harmed by the protective order violation — namely, that "Dairy had offered lower prices to customers" after Mr. Banderob, who oversees Dairy's contract negotiations, reviewed MMI's competitive pricing terms in the AEO Agreement.  Niehaus Decl. (Dkt. 162) at ¶ 18."  ECF No. 173 at 7.  The relevant portion of the Ann Niehaus declaration states in full:

> In my contemporaneous notes from Dairy's September 12, 2022 meet-and-confer call with counsel for Milk Moovement, I have noted that counsel for Dairy (Simona Agnolucci) asked counsel for Milk Moovement whether there was any other basis for their accusation that Mr. Banderob was currently using the AEO information from the CDI-MM Contract other than the fact MMI had heard that Dairy had offered lower prices to customers. Counsel for Milk Moovement (Ms. Oakley) responded, according to my notes: "That's all we have because we've been denied discovery."

While Milk Moovement seems to characterize this as an admission that Dairy offered lower prices because of information obtained via the inadvertent disclosure, or that there is any evidence of this, it is clear from the declaration itself that Ms. Niehaus was asking about Milk Moovement's contentions, not admitting that Dairy did offer lower prices, and Milk does not clearly and affirmatively contend that lower prices were offered because of the disclosure.  There is simply no indication that additional depositions on the inadvertent disclosure would reveal new information or remediate any potential harm: it is simply unnecessary, and the court is disinclined to order wasteful additional discovery.

Plaintiff's counsel must take care to ensure that the terms of the protective order are scrupulously followed in the future.  Any future disclosures to the client of materials marked "Attorneys' Eyes Only" would support an inference of something other than inadvertence, and could subject Dairy to more severe sanctions.

**V.   CONCLUSION**

Defendant's motion for sanctions (ECF No. 151) is GRANTED insofar as the court finds that plaintiff's violation of the stipulated protective order warrants an award of attorney's fees, including fees related to bringing the motion at bar and fees related to determining the impact of the inadvertent disclosure, including meet and confer sessions. Defendant shall submit a request for fees, along with supporting affidavits and time sheets, within 14 days of this order. Plaintiff may object to the request within 7 days of defendant's filing. The court will issue a separate order regarding the fee award.

IT IS SO ORDERED.

DATED: December 28, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE