UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign corporation,<br><br>Defendant. | No.  2:21-cv-02233 WBS AC<br><br><br>ORDER |

Before the court are multiple discovery disputes between the parties, including two noticed motions to compel by plaintiff Dairy, LLC.  ECF Nos. 185, 189.  Due to the volume of discovery disagreements in this case, the parties agreed to resolve multiple disputes, including those contained in the noticed motions and those not presently noticed as motions, before the undersigned on shortened briefing and oral argument.  ECF No. 206.  A hearing was held on the merits of all such disputes on January 25, 2023 with all parties present.  ECF No. 214.[1]  The parties are familiar with the facts and relevant legal standards applicable to discovery in this case, and have each expressed a desire for expedited rulings on the merits of the discovery disputes

---

[1] On January 26, 2023, Milk submitted what amounts to an unauthorized surreply following the hearing.  ECF No. 218.  The court requested the text of RFPs in dispute but did not authorize additional briefing, so Milk's supplemental arguments are not considered.

1

presented. The court therefore omits background information and rules as follows.

## I.   ANALYSIS

A. Dairy's RFPs 14-16 (Documents Regarding Software Changes/FMMO Reports)

RFP No. 14:

> ALL DOCUMENTS, INCLUDING COMMUNICATIONS between YOU and YOUR customers and YOUR internal custodians, CONCERNING the ability or use of YOUR software to generate reports as required by a Federal Milk Marketing Order.

RFP No. 15:

> DOCUMENTS sufficient to show changes made to YOUR software between April 2021 and February 2022, including release notes, COMMUNICATIONS about new versions of YOUR software, and COMMUNICATIONS to YOUR customers regarding software changes.

RFP No. 16:

> ALL of YOUR internal COMMUNICATIONS CONCERNING changes made to YOUR software between April 2021 and February 2022, INCLUDING COMMUNICATIONS RELATING TO new features or functionality.

The court initially denied a motion to compel on RFPs 15-16, which seek documents related to "all" software updates and changes in functionality, without prejudice as impermissibly broad in scope. ECF No. 167 at 6-8. The court stated that "Dairy must narrow these requests to changes that could be plausibly related to something CDI might have disclosed." Id. at 9. The "plausibly related" language was intended to emphasize the extent of the overbreadth in the requests, not set a floor for what would constitute permissible discovery into Milk's software changes. Dairy has now identified multiple subjects from the discovery it already possesses that it asserts narrow these RFPs such that responses should be compelled. The court disagrees that the requests have been sufficiently narrowed. Dairy has not identified the program change or update it is seeking documentation about, but only broad categories that various program changes or updates might fall within. This overbreadth problem exists equally with FRP No. 14, which seeks a broad swath of documents not clearly related to any specific alleged misappropriation. The request to compel production is DENIED, without prejudice to Dairy issuing new, more narrowly tailored RFPs.

B. <u>Dairy's RFPs 33-35 (Equity Tracking Documents)</u>

RFP No. 33:

> DOCUMENTS sufficient to show how YOUR users can use YOUR software to track the equity of their member-owners.

RFP No. 34:

> DOCUMENTS sufficient to show when YOUR software added functionality designed to allow YOUR users to track the equity of their member-owners

RFP No. 35:

> DOCUMENTS sufficient to show how YOU developed functionality for YOUR software designed to allow YOUR users to track the equity of their member-owners.

Although the court has not specifically ruled on these RFPs before, they suffer from the same deficit as the RFPs discussed above: they are overbroad. It is not sufficient for Dairy to simply note that CDI and Milk have discussed a particular topic: Dairy needs to identify a particular trade secret that it believes was misappropriated to obtain related discovery. The RFPs, as drafted and based on the information presented to the court, are overbroad and responses will not be compelled.

C. <u>Dairy's RFPs 43-46 (Source Code Documents)</u>

RFP No. 43:

> To the extent not otherwise called for by another Request, ALL versions of the source code for YOUR software from January 1, 2021 to present.

RFP No. 44:

> To the extent not otherwise called for by another Request, ANY log or record of changes made to the source code for YOUR software, INCLUDING changelogs, from January 1, 2021 to present.

RFP No. 46:

> To the extent not otherwise called for by another Request, ALL DOCUMENTS RELATING TO YOUR software from January 1, 2021 to present, INCLUDING planning DOCUMENTS, requirements DOCUMENTS, design DOCUMENTS, collaboration DOCUMENTS, and testing and validation DOCUMENTS.

3

Dairy represents that it has narrowed RFPs 43-46 to request source code and related software development documents with respect to changes made to Milk's software related to the functions of three modules in Dairy's platform: (1) the Producer Payroll Module, which includes (among other functions) pickup-level pooling, coop members' equity tracking, and milk accounting; (2) the Dispatch Module, also known as "Scheduling," which schedules milk transport; and (3) the Trading Exchange Module, sometimes referred to as "Commodities Scheduling," which allows users to buy and sell specific milk-based commodities. ECF No. 214 at 1.

The court will not compel production of source code at this time. While the court is aware that source code has been found discoverable in certain trade secret cases to determine whether there was misappropriation, there is no basis for source code discovery in this case where (1) there is no allegation that Milk has ever seen Dairy's source code, and (2) Dairy has not yet identified what specific source code they think has been misappropriated. Narrowing to the identified three modules is a step in the right direction but is not sufficient to justify source code discovery because the identified categories are still broad, and Dairy has not identified what it believes it will find or what exactly it is looking for. The fact that Milk discussed certain functionalities with Dairy's former customer is not sufficient to warrant Dairy's exploration into Milk's source code. Dairy will not be permitted to sift through Milk's source code in the hopes that it will find a match to its own code to support a trade secret misappropriation claim. On the facts and allegations presently before the court, it is apparent that source code discovery is not appropriate.

D. Dairy's RFPs 9, 21-25 (Damages Related Inquiries)

RFP No. 9:

> ALL of YOUR contracts with customers in the United States, including any statements of work or order forms

RFP No. 21:

> ALL DOCUMENTS sufficient to demonstrate YOUR financial status, INCLUDING revenues, profits, sales, projected sales, costs, expenses, market share and product or service pricing

4

RFP No. 22:

>YOUR annual financial statements, whether audited or unaudited, INCLUDING all balance sheets, profit and loss statements, income statements, cash flow statements, and statements of change in financial condition.

RFP No. 23:

>YOUR financial statement projections, profit and loss projections, business reports and plans, marketing plans, long-range business plans, forecasts, and DOCUMENTS CONCERNING business strategy planning for business YOU plan or have planned to conduct in the United States.

RFP No. 24:

>ALL DOCUMENTS RELATING TO any discussion, proposal or offer between YOU and a third-party regarding investment in YOU or acquisition of an interest in YOU or entry into a joint venture with YOU whether accepted or declined.

FRP No. 25:

>ALL DOCUMENTS YOU used to obtain funding in or around April 2021 to expand into the United States market.

These requests, as drafted, are overbroad and not reasonably calculated to lead to relevant discovery. While Dairy is certainly entitled to discovery on damages, these requests seek huge quantities of information not specifically tied to any of Dairy's claims. Damages discovery needs to be clearly related to the legal wrongdoing alleged in the complaint. Responses to these overbroad requests will not be compelled.

E. <u>Milk's Trade Secret Identification Interrogatory</u>

Milk reiterates its concern that Dairy has not sufficiently defined its trade secret claim, and that its failure to identify specific, protectable information that it alleges Milk has misappropriated has been used in discovery to justify "fishing expedition" tactics. While the court declines to compel Dairy to supplement interrogatories related to defining its trade secrets, the court intends this order to clarify that discovery requests related to trade secret claims must be narrowly tailored to actual alleged trade secret misappropriations and fishing expeditions will not be permitted. As is explained above, it will not be enough that Milk has discussed a topic with Dairy's former customer.

F. Milk's Request for Scott Sexton Documents

Milk requests documents in the custody of Scott Sexton, Dairy's CEO, whom Milk asserts had direct knowledge and ultimate responsibility over the issues that give rise to Dairy's complaint. The court has considered Milk's argument, which is largely filed under seal. Dairy contends that documents in the custody of Mr. Sexton are not relevant and, to the extent they are relevant, duplicative of documents that are in the custody of eight other Dairy custodians. The court agrees, based on the representations of counsel, that adding Mr. Sexton to the list of Dairy custodians is not proportional to the needs of the case. The court declines to compel Dairy to add Mr. Sexton to the list of custodians for production.

G. Milk's Requests Based on Affirmative Defenses

RFP No. 38:

> DOCUMENTS sufficient to support YOUR claims that YOU are the largest provider of dairy supply chain software in the United States, or that 80% of the dairy companies listed on the Dairy Foods' Top 100 are served by DAIRY.COM.

RFP No. 41:

> All reports, analyses, or other DOCUMENTS regarding the market share of YOUR software products in the market for dairy supply chain software used by dairy producers, processors, and haulers in the United States.

RFP No. 42:

> All reports, analyses, or other DOCUMENTS regarding the market share of YOUR software products in any market for software used in the dairy industry.

RFP No. 43:

> All reports, analyses, or other DOCUMENTS regarding YOUR competitors for YOUR software products in the market for dairy supply chain software used by dairy producers, processors, and haulers in the United States.

RFP No. 44:

> All reports, analyses, or other DOCUMENTS regarding YOUR competitors for YOUR software products in any market for software used in the dairy industry.

RFP No. 47:

> All DOCUMENTS and COMMUNICATIONS that RELATE TO actual or potential competition from MILK MOOVEMENT in the market for dairy supply chain software.

RFP No. 48:

> All DOCUMENTS and COMMUNICATIONS that RELATE TO actual or potential competition from MILK MOOVEMENT in any market for software used in the dairy industry.

Milk seeks to compel Dairy's responses to discovery requests regarding the market share of Dairy's software products and Dairy's competition for those products in the marketplace. Milk has a pending motion to amend counterclaims set for hearing before the District Judge on February 21, 2023. ECF No. 204. The currently operative counterclaims are at ECF No. 111. District Judge William B. Shubb dismissed with prejudice Milk's fifth counterclaim of sham litigation in violation of 15 U.S.C. § 2. ECF No. 134 at 8. Milk's affirmative defenses currently include, in relevant part, a defense of unclean hands alleging that while Dairy claims Milk misappropriated certain reports in transitioning Dairy's former customer CDI to Milk's platform, Dairy itself had received similar information from CDI when CDI was transitioning from its old service provider to Dairy. ECF No. 111 at 17. None of the RFPs identified above are related to the unclean hands defense as actually articulated in Milk's affirmative defenses. Id. Instead, each of these RFPs appear to relate to the now dismissed-with-prejudice sham litigation counterclaim. Responses will not be compelled as the RFPs are not relevant to any active claims or defenses.

H. Milk's Request for Aaron Keener Documents

Milk seeks documents related to Aaron Keener, a former employee of CDI and current employee of Dairy. ECF No. 206 at 11. While Dairy agrees that certain responsive documents related to Keener are relevant, it argues that production should be limited to documents dated prior to the filing of the lawsuit in December 2021. Milk argues there is no reason to believe that Keener stopped communicating with Dairy when the complaint was filed, and has proposed as a compromise that Dairy produce all of Keener's responsive documents through January 2022, the date that he returned to Dairy's employment, and thus no longer had access to potentially

sensitive documents at CDI.  ECF No. 206 at 11.  Dairy states that the position of the compromise is as follows: Dairy will produce (1) all responsive documents, from all Dairy custodians, related to Mr. Keener from January 2021 to December 2, 2021 (when Dairy filed suit); and (2) all responsive documents, from Mr. Banderob's custodial documents, related to Mr. Keener from December 2, 2021 through January 31, 2022.

Dairy explained the need to limit post-complaint documents to Mr. Banderob's custody: Dairy will need to perform an additional collection, the burden of which increases with the number of custodians; there is no reason to believe that there are any responsive, nonprivileged documents; and, if there are any such documents, Mr. Banderob's role as COO and his long-standing day-to-day involvement in the CDI/Dairy relationship makes him the most appropriate and reasonable custodian.  The court finds this rationale sufficient and that the proposed compromise proportional to the needs of the case.  Without specific rationale as to why limiting the custodial search to Mr. Banderob is insufficient, the court will not compel a more expansive scope of production.

## II.   PROCEDURE FOR FUTURE DISPUTES

At hearing, the parties each reaffirmed their commitment to working cooperatively and minimizing the need for intervention regarding discovery in this case.  The court appreciates and commends the parties' efforts at collaboration.  It is nonetheless apparent that discovery in this case is particularly fraught.  Thus, the court will set in advance two conferences during which the parties may bring forward any discovery disputes requiring resolution, and the court will attempt to resolve these disputes on an expedited basis.  The hearings will be set via Zoom.  Joint statements, limited to 10 pages exclusive of exhibits, shall be filed one week in advance of each hearing.  The full text of any discovery question at issue must be attached to the joint statement. The parties are highly encouraged to narrow their disputes as much as possible through collaborative efforts before presenting their disputes to the court for resolution.

## III.  CONCLUSION

The motions to compel at ECF No. 185 and 189 are DENEID.  The requests articulated in the joint discovery dispute letter brief (ECF No. 206) are also DENIED.  The parties are

scheduled for discovery conferences on March 13, 2023 at 11:00 A.M. and April 20, 2023 at 11:00 A.M. before the undersigned.  The hearings will be held via Zoom.  Joint statements, limited to 10 pages in length exclusive of attachments, shall be filed on the docket one week in advance of each hearing.  No paper copy for chambers is necessary.  This order resolves the motions and docket entries at ECF Nos. 185, 189, 206, and 215.

    IT IS SO ORDERED.

DATED: January 31, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE