1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                 ----oo0oo----

11

12   DAIRY, LLC, a Delaware Limited        No. 2:21-cv-02233 WBS AC
     Liability Company,

13
                    Plaintiff,

14                                          ORDER RE: REQUESTS TO SEAL
          v.

15
     MILK MOOVEMENT, INC., a foreign
16   Corporation, and MILK MOOVEMENT,
     LLC, a Delaware Limited

17   Liability Company,

18                  Defendants.

19

20                                 ----oo0oo----

21          Dairy, LLC initiated this action against Milk

22   Moovement, Inc. and Milk Moovement, LLC alleging trade secret

23   misappropriation under federal and California law, and

24   intentional interference with contractual relations.  (First Am.

25   Compl. (Docket No. 48).)  On February 14, 2023, the court denied

26   various requests to seal without prejudice.  (Docket No. 237.)

27   Before the court are (1) Dairy's renewed request to seal portions

28   of the parties' briefing related to Milk Moovement's motion for

                                      1

1    leave to amend counterclaims (Dairy Req. to Seal (Docket No.

2    248)), and (2) Milk Moovement's request to seal certain materials

3    filed in connection with its now filed Second Amended

4    Counterclaims (Milk Moovement Req. to Seal (Docket No. 250)).[1]

5         A party seeking to seal a judicial record bears the

6    burden of overcoming a strong presumption in favor of public

7    access.  Kamakana v. City & County of Honolulu, 447 F.3d 1172,

8    1178 (9th Cir. 2006).  The party must "articulate compelling

9    reasons supported by specific factual findings that outweigh the

10   general history of access and the public policies favoring

11   disclosure, such as the public interest in understanding the

12   judicial process."  Id. at 1178-79 (citation omitted); see also

13   Ctr for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1098-

14   99 (9th Cir. 2016) (explaining that the compelling reasons

15   standard should apply to all motions which are correlated to the

16   underlying cause of action).  In ruling on a motion to seal, the

17   court must balance the competing interests of the public and the

18   party seeking to keep records secret.  See Kamakana, 477 F.3d at

19   1179.

20        The Ninth Circuit has recognized that an example of a

21   compelling reason for sealing records includes "sources of

22   business information that might harm a litigant's competitive

23   standing."  Ctr. For Auto Safety, 809 F.3d at 1097 (quoting Nixon

24   v. Warner Commc'ns, Inc., 435 U.S. 539, 598 (1978)); see also

25   Smith v. United States, 2022 WL 3578568, *1 (E.D. Cal. Aug. 19,

26

27        [1]   On February 23, 2023, the court granted Milk
     Moovement's motion for leave to amend counterclaims.  (Docket No.
28   244.)

1    2022) (explaining that business information may include "pricing,

2    profit, and customer usage information kept confidential by a

3    company that could be used to the company's competitive

4    disadvantage").

5    I.   <u>Dairy's Renewed Request to Seal</u>

6              Dairy identifies three categories of information it

7    seeks to protect: (1) discussion of its "at-issue trade secrets";

8    (2) terms of business arrangements in confidential contracts with

9    United Dairymen of Arizona ("United Dairymen"), California

10   Dairies, Inc. ("California Dairies"), and Borden Dairy; and (3)

11   internal analyses and strategies.  (<u>See</u> Dairy Req. to Seal.)

12             To protect its alleged trade secrets, Dairy seeks to

13   seal portions of the declaration of Duane Banderbob, Dairy's

14   Chief Operating Officer, which is attached as exhibit N to the

15   Patchen declaration.[2] (Patchen Decl., Ex. N (Docket No. 224-15).)

16   (<u>See</u> Dairy Req. to Seal at 3-4.)  Specifically, Dairy seeks to

17   seal the portions of the declaration which "discuss the details

18   and functionality of Dairy's producer payroll application, its

19   pooling methodology, and a confidential report . . . that reveals

20   the logic of Dairy's pooling methodology."  (<u>Id.</u> at 4.)  The

21   request to seal appears to sufficiently show that sealing is

22   necessary to protect Dairy's alleged trade secrets.  Accordingly,

23   Dairy's request to seal the identified portions of exhibit N will

24   be granted.

25             To protect the terms of its business arrangements with

26

27        [2]   Dairy seeks to seal exhibit N at 71:19-23 fn.2, 72:3-
     13, 73:24-26, 74:1-12, 74:21-22, 78:1, and 79:1-13.  (Req. to
28   Seal at 2.)

                                   3

United Dairymen, California Dairies, and Borden Dairy, Dairy also seeks to seal seven documents in their entirety: (1) exhibit A to the Patchen declaration: the "Software Assignment and Grant-Back License Agreement" (the "Software Assignment Agreement") (Patchen Decl., Ex. A (Docket No. 224-2)); (2) exhibit B to the Patchen Declaration: the "Nondisclosure Agreement" (Patchen Decl., Ex. B (Docket No. 224-3)); (3) exhibit 10 to the Hagey Declaration: a letter sent from Dairy's CFO to United Dairymen's CEO (the "UDA Letter") (Hagey Decl., Ex. 10 (Docket No.204-12)); (4) exhibit 11 to the Hagey Declaration: an order form which contains descriptions of Dairy software solutions and confidential contract terms such as term length and monthly pricing (Hagey Decl., Ex. 11 (Docket No. 204-13)); (5) exhibit 13 to the Hagey Declaration: a user agreement between Dairy and CDI which governs Dairy's commercial relationship with CDI (Hagey Decl., Ex. 13 (Docket No. 204-15)); (6) exhibit 14 to the Hagey Declaration: a user agreement (Hagey Decl., Ex. 14 (Docket No. 204-16)); and (7) exhibit 15 to the Hagey Declaration: a service level agreement (Hagey Decl., Ex. 15 (Docket No. 204-17).)   (See Dairy Req. to Seal at 5-6.)

Dairy argues that, because these documents reflect Dairy's "business strategies, negotiating positions, and agreed-to commercial terms," Dairy argues that they could "harm Dairy's position vis-à-vis competitors and counterparties in future similar negotiations."  (Id.)

The request to seal exhibit 11 appears to sufficiently show that sealing is necessary to protect Dairy's business information.  Accordingly, Dairy's request to seal exhibit 11

1    will be granted.  By contrast, with the exceptions of the

2    purchase price and license fee in the Software Assignment

3    Agreement (see Ex. A at 2) and the term length in the

4    Nondisclosure Agreement (see Ex. B at 3), the other documents

5    appear to be standard, almost "boilerplate" contracts which would

6    not disclose any protected information and thus Dairy's concerns

7    do not outweigh the history of access and public policies

8    favoring disclosure to the public.  Therefore, the court must

9    deny Dairy's request to seal the entirety of the Software

10   Assignment Agreement, Nondisclosure Agreement, UDA Letter, and

11   exhibits 13, 14, and 15 without prejudice.  The court will

12   consider a more tailored request that seeks to seal only the

13   protected information within these documents, rather than the

14   entirety of the documents.

15          To protect its internal analyses and strategies, Dairy

16   also seeks to seal: (1) the entirety of an email from Dairy

17   investor, Banneker Partners, to Dairy's CEO, Scott Sexton, which

18   discusses Milk Moovement as a then new entrant to the market (the

19   "Banneker Email") (Hagey Decl., Ex. 1 at 65-66); (2) an internal

20   email in which a Dairy employee provides notes from a call with

21   CDI and makes recommendations to the Dairy team (Mot. for Leave

22   at 46:16-19 and 46:21-22); and (3) an internal email in which a

23   Dairy employee provides notes from a call with California Dairies

24   and recommended next-steps and strategies (Mot. for Leave at

25   46:25-27 and 47:1-10).  (See Dairy Req. to Seal at 6-8.)  The

26   request to seal these portions of Milk Moovement's motion appears

27   to sufficiently show that sealing is necessary to protect Dairy's

28   business information.  Accordingly, Dairy's request to seal

1  Exhibit 2 and the two emails will be granted.

2  II.  Milk Moovement's Request to Seal

3          Milk Moovement seeks to seal certain materials filed in

4  support of its Second Amended Counterclaims which were designated

5  as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES

6  ONLY" under the stipulated protective order (Docket Nos. 54 61).

7  (See Milk Moovement Req. to Seal at 1.)  As Milk Moovement

8  acknowledges, a confidentiality agreement between the parties

9  does not per se constitute a compelling reason to seal documents

10 outweighing the interests of public disclosure and access.  There

11 needs to be an independent basis for sealing or redacting a

12 document beyond the fact that material is within the purview of a

13 stipulated protective order.

14          While Milk Moovement does not provide an independent

15 basis, many of the materials it seeks to seal are the same as

16 those which Dairy seeks to seal.  Specifically, Milk Moovement

17 seeks to seal portions of its Second Amended Counterclaims as

18 well as the attached exhibits: exhibit 1 (the UDA Letter) and

19 exhibit 2 (the Banneker Email).  (Milk Moovement Req. to Seal at

20 1.)  For the same reasons discussed above, the request to seal

21 the Banneker Email and portions of the Second Amended

22 Counterclaims which reference Dairy's business information and

23 internal emails will be granted.  The request to seal the UDA

24 Letter and all other portions of the Second Amended Counterclaims

25 for which there is no independent basis for sealing will be

26 denied without prejudice.[3]

27 _____

28         [3]   This includes the request to seal the Second Amended
   Counterclaims at 30:20-23, 32:11, 33:16-19, 33:21-22, 33:25-27,

1            IT IS THEREFORE ORDERED that the requests to seal

2  (Docket Nos. 248, 250) be, and the same hereby are, GRANTED in

3  part and DENIED in part.  Milk Moovement's motion for leave to

4  amend counterclaims at 43:20-24, 46:16-19, 46:21-22, 46:25-27,

5  and 47:1-10 (Docket No. 204-1); exhibit 1 of the Hagey

6  Declaration at 65-66 (Docket No. 204-3); the entirety of exhibit

7  11 of the Hagey Declaration (Docket No. 204-13); exhibit N of the

8  Patchen Declaration at 71:19-23 fn.2, 72:3-13, 73:24-26, 74:1-12,

9  74:21-22, 78:1, and 79:1-13 (Docket No. 224-15); and the Second

10  Amended Counterclaims at 30:20-23, 32:11, 33:16-19, 33:21-22,

11  33:25-27, 34:1-9, 34:21-22, and exhibit 2 (Docket No. 249) are

12  ordered SEALED.

13            The requests to seal exhibits A and B of the Patchen

14  Declaration (Docket Nos. 224-2, 224-3); exhibits 10, 13, 14, and

15  15 of the Hagey Declaration (Docket Nos. 204-12, 204-15, 204-16,

16  204-17); Milk Moovement's motion for leave to amend counterclaims

17  at 6:19-23, 9:27, 11:11-13, 16:25-27, 17:1-3, and 18:24 (Docket

18  No. 204-1); exhibit 1 to the Hagey Declaration at 29:18-24,

19  45:11, 47:22-23, 48:21-28, 49:1-3, and 61-63 (Docket No. 204-3);

20  Dairy's opposition to the motion for leave at 9:22-24, 22:10-11,

21  24:8-9, 36:2-4, and 36:6-17 (Docket No. 224); Milk Moovement's

22  reply at 8:18-19 (Docket No. 233); and the Second Amended

23  Counterclaims at 16:18-26, 27:5-22, 28:6-8, 28:21-23, 32:9-10,

24  32:12-26, 33:1-15, 33:20, 33:23-24, 34:12-18, 35:21-27, 36:1-2,

25  36:7-16, and exhibit 2 (Docket No. 249) be, and the same hereby

26  are, DENIED WITHOUT PREJUDICE.

27

28  34:1-9, and 34:21-22.

Dated:   March 9, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE