UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVER.AG, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MILK MOOVEMENT, INC., a/k/a Milk Moovement, LLC, a foreign corporation,<br><br>　　　　　Defendant. | No.  2:21-cv-02233 WBS AC<br><br><br>ORDER and STANDING ORDER TO SHOW CAUSE |

A hearing was specially set to accommodate an "Ex Parte Application for Emergency OSC" brought by defendant Milk Moovement. ECF No. 387. The motion was subsequently ordered submitted on the papers. ECF No. 412. For the following reasons the motion is DENIED and Milk Moovement shall reimburse plaintiff for the fees and costs associated with litigation of the motion. Further, as explained further below, the parties are cautioned that the court will hereafter consider the issuance of monetary sanctions, payable to the court, against the losing party in any future orders on discovery related motions.

## I.  Ruling on Emergency Ex Parte Motion

On August 7, 2023, Milk Moovement brought an emergency motion "to seek relief from the Court to remedy an ongoing campaign orchestrated by Dairy and its counsel to directly contact, intimidate, and harass Milk Moovement investors, potential investors, board members, current customers, and potential customers regarding this litigation." ECF No. 387 at 3. Milk

1

1  Moovement asked the court to issue an Order to Show Cause to Ever.Ag, LLC ("Dairy") which
2  would "require that Dairy provide adequate prior written notice before engaging in further
3  communications with Milk Moovement's employees, board members, investors, and/or current or
4  potential customers about this litigation." Id.  The court notes that Milk's "emergency" ex parte
5  motion did not adequately address "why the regular noticed motion procedures must be
6  bypassed." Mission Power Eng'g Co. v. Cont'l. Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal.
7  1995).  The parties are cautioned that future "emergency motions" that ultimately amount to a
8  discovery dispute will be re-designated and a joint statement will be required.  With respect to
9  this motion, the motion was not heard on an ex parte basis, so the undersigned turns to the merits.

10      Milk does not identify any specific basis in the Federal Rules of Civil Procedure or within
11  applicable caselaw for its motion; instead, the motion ask the court to invoke its "inherent
12  authority to enter remedial orders 'when a party has acted in bad faith, vexatiously, wantonly, or
13  for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for
14  an improper purpose.'" ECF No. 387 at 8 (quoting Fink v. Gomez, 239 F.3d 989, 992 (9th Cir.
15  2001)).  Milk contends that Dairy board member Stephen Davis, who is also a controlling
16  investor in Dairy's parent company Banneker Partners, has been taking a "more direct" role in
17  this litigation since May 2023 by directly contacting individuals associated with Milk, including
18  Milk's minority investor Sean Broderick and Milk board member Carle Stenmark.  ECF No. 387
19  at 4.  At first these discussions "proceeded with the guidance of each party's counsel" but,
20  according to Milk, "it soon became apparent that Mr. Davis was less interested in constructive
21  discussions and more interested in threatening Milk Moovement and its investors." Id.  Mr.
22  Davis was asked to refrain from communicating directly with Milk investors and board members.
23  Id.  However, Davis emailed Stenmark and a colleague of Broderick's again in early July.  Id.
24  Milk contends this is impermissible and in violation of the California Bar Association's Rules of
25  Professional Conduct (which, Milk suggests, applies to Mr. Davis because at one time he was an
26  attorney licensed in the state of New York, though he no longer has an active license and is not a
27  practicing attorney.).  ECF No. 387 at 4, 9.
28  ////

Following Mr. Davis's communications, on or around July 13, 2023, Dairy issued 19 subpoenas to third-party Milk Moovement investors and potential investors, only one of whom was listed on any party's Rule 26 disclosures, and the subpoenas were served over the weekend and in some cases, during evening hours. ECF No. 387 at 6. These "subpoenas forced Milk Moovement and its counsel to field an array of anxious calls from investors who were understandably taken aback by receiving such overbroad and aggressively served discovery demands." Id. at 6. These subpoenas are the topic of a pending motion for a protective order. Id.; ECF No. 380. Milk further alleges that it learned that Dairy's sales executives were conducting pretextual "courtesy calls" to current and potential Milk customers to discuss issues in the litigation and disparage Milk Moovement. ECF No. 387 at 7. Finally, on August 2, 2023, Mr. Davis resumed his email campaign and contacted Milk's investors, this time making "tacit threats." Id. at 7-8.

Now, Milk asks the court to "enter a modest order to show cause (1) requiring Dairy's counsel to provide Milk Moovement's counsel with two business days' written notice before Dairy, its counsel, or persons acting on their behalf contact any Milk Moovement Parties regarding this litigation; (2) requiring Dairy's counsel to provide Milk Moovement's counsel with two business days' written notice before serving any subpoena under Rule 45 on any other Milk Moovement Parties, with notice to contain the proposed subpoena and a request whether Milk Moovement's counsel will accept service on behalf of such party; (3) requiring Dairy's counsel to provide an explanation stating whether any Dairy counsel reviewed, provided guidance for, and/or had advanced notice of Mr. Davis's communications with the Milk Moovement Parties regarding this litigation on or after Milk Moovement's notices to cease those communications; and (4) setting a briefing schedule concerning Milk Moovement's request for monetary and other sanctions, including admonishment, and any other relief the Court deems proper, pursuant to the Court's inherent authority." Id. at 10-11.

The court has reviewed the documents attached by Milk and finds no cause to invoke its inherent authority to issue the "modest" order suggested. There is no clear evidence of egregious or even untoward behavior. For example, Milk attaches an email chain in which Milk's counsel

writes to Dairy's counsel accusing them of "attempting, without notice, to further harass Milk Moovement's board members at home late last week and over the weekend with some form of subpoena." ECF No. 387-10 at 3.  Milk's counsel goes on to write, "Please provide copies of the subpoenas and we will coordinate acceptance of service.  In meantime, be advised that those are represented parties.  Please do not attempt to communicate with them directly about this case without our prior express written consent - something we already have advised you of in writing. We trust further attempts to stake out folks' homes over the weekend, etc, will cease.  If not, I am sure we can address with Judge Claire and seek appropriate relief." ECF No. 387-10 at 3. Counsel for Dairy replied, "Thanks for your message, Noah. We asked our process servers to serve the subpoenas, but were not asking them to show up at particular times, so if they showed up at night that was not due to any instruction of ours.  Note that your team was served with notices of all of the subpoenas before we started serving people using process servers.  No one told us they would accept service. . . .  Obviously, if you are accepting service, we can save everyone time, money, and annoyance by simply emailing all the subpoenas to you. Let us know." Id.  Despite this perfectly reasonable response from Dairy's counsel, Milk included allegations in the "emergency" motion that Dairy is serving subpoenas in a manner intended to intentionally harass recipients.  The accusation is negated by the available documents.

Further, Milk's attempt to apply the California Bar Association's Rules of Professional Conduct to Mr. Davis is perplexing, given that Milk acknowledges that Mr. Davis is not acting as an attorney in this case and is, in fact, no longer a licensed attorney in any jurisdiction.  Even if Mr. Davis were a licensed and/or practicing attorney, which he is not, Milk does not attempt to argue that Mr. Davis is acting as counsel in this case.  The applicable California Rule of Professional Conduct, Rule 4.2, states clearly in Comment 3 it "does not prevent represented persons from communicating directly with one another with respect to the subject of the representation, nor does it prohibit a lawyer from advising a client concerning such a communication.  A lawyer may also advise a client not to accept or engage in such communications."  It has always been clear that the Rule is "not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation." HTC

1   Corp. v. Tech. Properties Ltd., 715 F. Supp. 2d 968, 973 (N.D. Cal. 2010).  There is nothing
2   about Mr. Davis's communications that rises to the level of harassment or intimidation, and the
3   court finds no legal basis to warrant sanctions.
4       Finally, to the extent Milk argues that Dairy should not be able to contact its clients,
5   potential clients, investors, or potential investors because Dairy is engaging in abusive practices,
6   nothing in Milk's exhibits clearly demonstrates misbehavior.  Milk argues that "[t]hreatening or
7   attempting to influence or intimidated witnesses in order to affect their testimony amounts to
8   unlawful tampering," but there is no evidence that Dairy or any of its employees or
9   representatives has threatened or intimidated anyone.  The most allegedly harassing quotes from
10  Mr. Davis's emails amount to Mr. Davis saying that Milk and its counsel's behavior will
11  ultimately cause embarrassment.[1]  The tenor of these communications reflects the unfortunate
12  tenor that has characterized this case from the outset, but that does not make the Davis
13  communications abusive or intimidating.  The motion will be denied.

14      **II.    Fees and Costs**

15      The ex parte motion, brought before the court to be heard on an emergency basis, is
16  without a basis in law or fact.  Milk is accordingly required to reimburse Dairy for fees and costs
17  associated with the litigation of this meritless motion.

18      **III.    Notice of Affidavit Requirement and Consideration of Future Sanctions**

19      The parties in this case have consistently engaged in obstructive and overly litigious
20  discovery practices.  This case, which is not inherently complex from a discovery perspective, has
21  been pending for just over twenty-one months and has presented this court with a breathtaking
22  twenty-seven (27) discovery related motions in that time.  ECF Nos. 34, 66, 86, 93, 96, 117, 139,
23  141, 151, 152, 185, 189, 206, 242, 246, 260, 264, 268, 269, 272, 301, 302, 351, 352, 380
24  (pending), 387 (motion at bar), 405 (pending).  This number *does not include* the absolute glut of
25  associated motions for administrative relief and requests to seal documents.  The amount of

---

26  [1]  E.g., "As significant shareholders and/or board members, you are intimately involved and if
27  you don't take control of this matter you will be tainted by MM's and its counsel's actions";
    "Your counsel has basic facts wrong Shawn and it'll be embarrassing for him, MM and its
28  board."  ECF No. 387-11 at 2.

discovery related litigation in this case is absurd and bespeaks a fundamental breakdown of civil practice between the parties, a questionable willingness to drive up litigation costs, and an unacceptable overuse of the public resource that is the federal court system.

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). Under its inherent authority the court may issue "sanctions for bad faith, which includes a broad range of willful improper conduct." Id. at 992. Sanctions are permissible wherever a party has acted bad faith, or where there has been recklessness plus "something more – such as an improper purpose." "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)

Considering the pattern of vexatious discovery conduct in this case, the parties are hereby notified that the undersigned will review every forthcoming discovery motion for sanctionable conduct. Furthermore, it is ORDERED that this order shall operate as a STANDING ORDER TO SHOW CAUSE requiring each future discovery motion to be accompanied by an affidavit from counsel on each side, explaining why if their client loses the motion the court should not issue monetary sanctions in the amount of $10,000.00, payable to the court and in addition to fees and costs payable to the prevailing party. The parties are strongly encouraged to work cooperatively to resolve discovery disputes and, most importantly, to avoid discovery disputes by adhering to their own discovery obligations.

### IV.     Conclusion

Based on the foregoing, the court orders as follows:

1. The emergency ex parte motion filed at ECF No. 387 is DENIED;
2. Milk Moovement shall reimburse Dairy the fees and costs associated with the litigation of this motion. The parties are encouraged to file a stipulation as to the specific amount no

    later than August 28, 2023.  If the parties are unable to reach an agreement, Dairy may file a motion on August 28, 2023 and Milk may file an opposition no later than August 30, 2023;

3. The court hereby issues a STANDING ORDER TO SHOW CAUSE, as follows:  Each future discovery motion shall be accompanied by an affidavit from counsel on each side, showing cause why, if their client loses the motion, the court should not issue monetary sanctions in the amount of $10,000.00, payable to the court and in addition to fees and costs payable to the prevailing party, for improper discovery conduct and unreasonable multiplication of the proceedings.  These affidavits shall be limited to 5 pages, and must be free of attachments and exhibits.  They shall be filed independently of the joint statement and are due on the same date as the joint statement.

4. The pending discovery motions at ECF No. 380 and ECF No. 405 are hereby RE-SET for hearing on the papers, with Joint Statements due on September 13, 2023.  The parties should consider whether these motions should be withdrawn or narrowed in light of the foregoing.

IT IS SO ORDERED.

DATED: August 18, 2023

                                                  /s/ Allison Claire  
                                                  ALLISON CLAIRE  
                                                  UNITED STATES MAGISTRATE JUDGE