# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**Douglas S. Curran, Esq.**
Partner
curran@braunhagey.com

August 23, 2023

<u>VIA ECF</u>

The Honorable Allison Claire
U.S. District Court, Eastern District of California
Robert T. Matsui U.S. Courthouse
501 I Street, Courtroom No. 26, 8th Floor
Sacramento, CA 95814

Re:   Letter Motion for Partial Reconsideration
      *Dairy, LLC v. Milk Moovement, Inc., et al.*, Case No. 2:21-cv-02233-WBS-AC

Dear Judge Claire:

We represent Defendant and Counterclaim-Plaintiff Milk Moovement Inc. and Defendant Milk Moovement LLC (collectively, "Milk Moovement"). We write briefly pursuant to Local Rule 230(j) to respectfully request that the Court reconsider the portion of its order regarding fee-shifting in connection with Milk Moovement's motion addressing Dairy's communications with Milk Moovement's investors, customers, and board members. (ECF 387, 419.)

We fully understand that motions for reconsideration are disfavored and are typically denied, and we do not make this submission casually or to in any way multiply the proceedings or impose additional burdens on the parties or the Court. But we do believe it is incumbent on us as advocates for our client to respectfully ask the Court to consider this brief submission, or to instead set a videoconference hearing at the Court's convenience regarding the fee-shifting portion of its order, so that Milk Moovement may be heard. For the Court's information, Dairy has requested that Milk Moovement pay it more than $62,000.

Milk Moovement is a small Series A start-up company. It does not have the resources or wherewithal to fund long-term, scorched-earth litigation. Indeed, it is a reluctant litigant in this case, and it asserted its antitrust counterclaims despite the fact that it did not want to (and is not well-positioned to) litigate endlessly against Dairy, which is the largest industry participant by a wide margin. It instead asserted those counterclaims to defend against Dairy's wrongful trade-secrets allegations by addressing the heart of the matter: that Dairy has acted in a way that has unfairly caused real commercial harm to Milk Moovement and other industry participants.

This is why, for the last several months, Milk Moovement has repeatedly done what it can to suggest ways to streamline the process and create efficiencies—including by proposing a special master to make rapid decisions on discovery disputes, by exchanging "priority documents" with Dairy, and by seeking to negotiate out-of-Court deals that would avoid formal motion practice. Much of this friction predated present counsel's involvement, which is what prompted Milk Moovement to increase its efforts to break the logjam as much as possible.

      We nevertheless agree with the Court's view that the volume of discovery motions has been quite high, and we fully understand the Court's directive that the parties redouble their efforts to resolve any future disputes out of Court. So that the Court has the full context regarding Milk Moovement's recent motion (ECF 387), we respectfully provide the following additional information:

      When Dairy sent out its subpoenas and began contacting Milk Moovement's investors, customers, and board members by email and telephone, the blowback on Milk Moovement was (and is) substantial. Customers and investors expressed notable concern and surprise, which forced Milk Moovement into a position of crisis-management. As a small company, Milk Moovement must do absolutely everything it can to avoid jeopardizing those relationships, as it does not have the decades-long name-recognition or established reputation that Dairy enjoys.

      As a result, when customers that are in the process of transitioning from Dairy to Milk Moovement (among others) were told by Dairy that Milk Moovement is actively "dragging them into" the lawsuit, Milk Moovement had to take whatever steps it could to protect its relationships with those customers. Some of those customers even told Milk Moovement that the budding commercial relationship would be severely harmed if Milk Moovement did not find a way to excise them from the dispute—even though it was Dairy that had subpoenaed them.

      It is in this context that Milk Moovement respectfully sought the Court's assistance in navigating the difficulties that Dairy's out-of-Court conduct was creating. Milk Moovement did not file its motion for ulterior purposes, to unfairly limit Dairy's ability to conduct its own investigation, to create any litigation leverage, or in anything other than aboveboard good faith. Milk Moovement genuinely just wanted the chaos to stop so that the parties could litigate the dispute in Court and on the merits rather than through out-of-Court pressure.

      To Milk Moovement, the situation was (and is) a real emergency that needed Court attention. But at the same time, Milk Moovement fully agrees and understands that Dairy is entitled to take discovery and to develop its claims and defenses. That is why Milk Moovement sought to thread the needle and balance any burdens by seeking the limited relief articulated in that motion—namely, that Dairy give it advance notice of any intended outreach so that Milk Moovement could perform damage-control on the front end, before its investors and customers were given the impression that they were being unfairly "dragged into" the case.

      Milk Moovement understands the Court's judgment regarding the content of Dairy's communications and the nature of its discovery outreach; we do not seek to revisit those points. Milk Moovement will instead attempt to provide assurances and information to its investors and customers as best it can outside of Court. But we do respectfully ask that, in the circumstances, the Court reconsider its award of fees to Dairy.

      Respectfully submitted,

      */s/ Douglas S. Curran*
      Douglas S. Curran

Cc: Counsel of Record (via ECF)